UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| IN RE TESLA INC. STOCKHOLDER DERIVATIVE LITIGATION § § § § § § § § § § § § § § § | Lead Case No. 1:22-cv-00592-LY<br><br>(Consolidated with Case No. 1:22-cv-00611-LY)<br><br><br>DEMAND FOR JURY TRIAL |
| This Document Relates To:<br><br>All Cases | |

### DECLARATION OF SHANE P. SANDERS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS VERIFIED CONSOLIDATED DERIVATIVE COMPLAINT

I, Shane P. Sanders, hereby declare as follows:

1.   I am an attorney duly licensed to practice before all of the courts of California. I was admitted to practice *pro hac vice* before this Court on August 4, 2022. I am a partner at Robbins LLP, co-lead counsel for plaintiff Alvin Janklow in the above-captioned action. I submit this declaration in support of Plaintiff's Opposition to Defendants' Motion to Dismiss Verified Consolidated Derivative Complaint. I have knowledge of the matters stated herein and, should I be called upon, I could and would testify competently thereto.

2.   Attached as Exhibit A is true and correct copy of *Himstreet v. Scharf*, No. CGC-22-599223, slip op. (Cal. Super. Ct.-S.F. Cnty. Oct. 5, 2022) (unpublished).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 13th day of January, 2023.

*s/ Shane P. Sanders*
SHANE P. SANDERS (*pro hac vice*)

1606046

- 1 -

# EXHIBIT A

F I L E D
Superior Court of California
County of San Francisco

OCT 5 - 2022

CLERK OF THE COURT
BY: _____
        Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 613

| | |
|---|---|
| TIMOTHY HIMSTREET and MONTINI FAMILY TRUST, Derivatively on Behalf of WELLS FARGO & COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> CHARLES W. SCHARF; CHARLES H. NOSKI; DONALD M. JAMES; SUZANNE M. VAUTRINOT; RONALD L. SARGENT; JUAN A. PUJADAS; CELESTE A. CLARK; THEODORE F. CRAVER, JR.; MARIA R. MORRIS; WAYNE M. HEWETT; RICHARD B. PAYNE, JR.; TIMOTHY J. SLOAN; ELIZABETH A. DUKE; JOHN R. SHREWSBERRY; C. ALLEN PARKER; and DOES 1–25 inclusive, <br><br> Defendants, <br><br> and <br><br> WELLS FARGO & COMPANY, a Delaware Corporation, <br><br> Nominal Defendant. | Case No. CGC-22-599223 <br><br> ORDER OVERRULING DEMURRER TO COMPLAINT |

## INTRODUCTION

Before the Court is a demurrer to the complaint by Wells Fargo and individual defendants Charles W. Scharf, Charles H. Noski, Donald M. James, Suzanne M. Vautrinot, Ronald L. Sargent, Juan A. Pujadas, Celeste A. Clark, Theodore F. Craver, Jr., Maria R. Morris, Wayne M. Hewett, Richard B. Payne, Jr., Timothy J. Sloan, Elizabeth A. Duke, John R. Shrewsberry, and C. Allen Parker (collectively, "Defendants"). The demurrer came on for hearing on September 27, 2022, at 9:00 a.m. in Department 613, the Honorable Andrew Y.S. Cheng presiding. Emily Bishop (Robbins LLP) appeared for Plaintiffs. Brendan Cullen and Christopher Viapiano (Sullivan & Cromwell LLP) appeared for defendants Wells Fargo and Charles Scharf. Katherine Dubois (Cravath, Swaine & Moore LLP) appeared for defendant C. Allen Parker. Josh Cohen and Adam Shearer (Clarence Dyer & Cohen LLP) appeared for Timothy Sloan. Tiffany Lin, Todd Cosenza, and Charles Cording (Wilkie Farr & Gallagher LLP) appeared for individual defendants Charles Noski, Donald M. James, Suzanne M. Vautrinot, Ronald L. Sargent, Juan A. Pujadas, Celeste A. Clark, Theodore F. Craver, Jr., Maria R. Morris, Wayne M. Hewett, and Richard B. Payne. John Gueli (Shearman & Sterling LLP) appeared for defendant Elizabeth Duke. Ed Swanson (Swanson & McNamara LLP) appeared for defendant John Shrewsberry. Having considered the parties' written materials and oral arguments, the demurrer on the ground of a lack of capacity is **OVERRULED** and the demurrer on the ground of failure to state sufficient facts is **OVERRULED**.

## BACKGROUND

Timothy Himstreet and the Montini Family Trust[1] (collectively, "Plaintiffs") commenced this shareholder derivative action on behalf of Wells Fargo. They assert causes of action for (1) breach of fiduciary duty, (2) waste of corporate assets, and (3) unjust enrichment based on instances of alleged mismanagement with respect to Wells Fargo's consumer banking and commercial lending lines of business.

First, Plaintiffs allege repeated instances of mismanagement and noncompliance with a series of consent orders with federal regulators—including the Federal Reserve, Consumer Financial Protection

---

[1] A trust is not an entity like a corporation; it is a fiduciary relationship with respect to property. (*Boshernitsan v. Bach* (2021) 61 Cal.App.5th 883, 891.) Consequently, the trustee—not the trust—is ordinarily the real party in interest with the power to prosecute or defend actions in the name of the trust. (*Ibid.*) Here, the Court refers simply to the Montini Family Trust as Plaintiffs have not otherwise identified the trustee in their pleading.

Bureau, and Office of the Comptroller of the Currency—arising from a number of scandals related to its consumer banking practices (*e.g.*, opening accounts without authorization, racial discrimination, charging improper fees). (Compl., ¶¶ 73–122.) Plaintiffs' complaint details how Wells Fargo, by and through its board of directors and executive management, repeatedly failed to comply with the various consent orders requiring that it develop and implement a regulator-approved framework and plan for risk management in light of the numerous unlawful practices discovered to be occurring in its consumer banking line of business. The bank's non-compliance was documented by the OCC who assessed a $250 million penalty in September 2021 based on the failure to timely implement a corrective action plan for risk management as required under its 2018 consent order. (Compl., ¶ 122.) Plaintiffs also allege that representatives of Wells Fargo, including certain of the individual defendants here, made false and misleading statements to the public, investors, and Congress, regarding Wells Fargo's progress in complying with the consent orders. (Compl., ¶¶ 123–154.)

Second, Plaintiffs base their claims on alleged misrepresentations made about the performance of Wells Fargo's commercial lending line of business. (Compl., ¶¶ 155–209.) The crux of Plaintiffs' dispute is that Wells Fargo claimed between October 2017 and October 2020 that its commercial lending business was performing well and had low credit risk due to disciplined underwriting and due diligence practices when, in fact, there was a heightened risk of default that ultimately materialized in the form of substantial losses due to delinquencies and loan defaults as well as related losses in share price. (Compl., ¶¶ 217–25.)

Plaintiffs did not make a pre-lawsuit demand and allege that they were excused from doing so based on the doctrine of demand futility. At the time Plaintiffs filed their complaint on April 19, 2022, Wells Fargo's board consisted of 11 directors, particularly: Scharf (CEO and President), Clark, Craver, Hewett, Morris, Payne, Pujadas, Sargent, Vautrinot—named as defendants here—in addition to non-parties Steven D. Black and Mark A. Chancy. (Compl., ¶ 243.) Plaintiffs allege that the members of the board who are named as defendants here lacked independence and faced a substantial likelihood of liability, thereby rendering any prelawsuit demand futile, because of their involvement in the alleged misfeasance upon which Plaintiffs' claims are based. (Compl., ¶¶ 244–273.) Defendants now dispute whether Plaintiffs were excused from making a pre-lawsuit demand and demur to each cause of action in

the complaint on the grounds of lack of capacity and failure to state facts sufficient to constitute a cause of action (Code Civ. Proc., § 430.10, subds. (a) & (e)). The Court focuses on whether the pleading states facts sufficient to constitute a cause of action as Defendants do not establish a lack of capacity to sue.[2]

## LEGAL STANDARD

A demurrer on the ground of failure to state facts sufficient to constitute a cause of action tests the legal sufficiency of the pleading. (*Berg & Berg Enterprises LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034.) For purposes of a demurrer, a court accepts the factual allegations as true and considers whether the allegations are sufficient to state a cause of action. (*Ibid.*) A court does not consider whether the plaintiff can prove the allegations on demurrer. (*Ibid.*) A court may also consider matters properly subject to judicial notice. (Code Civ. Proc., § 430.30, subd. (a).)

## REQUEST FOR JUDICIAL NOTICE

Defendants request judicial notice of court records, government records, corporate records, and a press release issued by Wells Fargo. Plaintiffs filed an opposition to this request stating that they do not oppose the Court taking judicial notice of the existence, date, and facial contents of the documents but do oppose Defendants' request to the extent it encompasses the truth of facts in the documents. Plaintiffs do not actually raise any specific dispute as to the contents of the documents.

Defendants' request for judicial notice of court records from Plaintiffs' previously filed federal action, including the complaint and opposition to a motion to dismiss, is **GRANTED** pursuant to Evidence Code section 452, subdivision (d).

Defendants' request for judicial notice of the consent orders issued by federal regulators is **GRANTED** as the orders are relevant, discussed at length in Plaintiffs' complaint, and within the scope of Evidence Code section 452, subdivision (c). (*See, e.g., Bullock v. Super. Ct.* (2020) 51 Cal.App.5th 134, 141.)

Defendants' request for judicial notice of Wells Fargo's certificate of incorporation is **GRANTED** only as to the official copy on file with Delaware's Secretary of State. Documents prepared by private

---

[2] Defendants do not provide legal analysis to support their demurrer on the ground of a lack of capacity. Additionally, Defendants appear to conflate capacity to sue with standing. (*See generally Friendly Vill. Cmty. Assn., Inc. v. Silva & Hill Constr. Co.* (1973) 31 Cal.App.3d 220, 224.) The issue is not whether Plaintiffs lack capacity because, for example, they are minors. Rather, the issue is whether they have standing to assert claims derivatively on behalf of Wells Fargo.

- 4 -

*Timothy Himstreet, et al. v. Charles W. Scharf, et al.*, CGC-22-599223 Order Overruling Demurrer to Complaint

parties, rather than an agency, are not always subject to judicial notice under Evidence Code section 452, subdivision (c) simply because they have been filed or submitted to an agency like the SEC. (*See People v. Thacker* (1985) 175 Cal.App.3d 594, 598–99.) California courts have taken judicial notice of certificates and articles of incorporation maintained with the office of a secretary of state, particularly where the document is undisputed. (*See, e.g., Jones v. Goodman* (2020) 57 Cal.App.5th 521, 528, n. 6.) Here, there is no dispute as to what is set forth in Wells Fargo's certificate of incorporation. Consequently, the Court takes judicial notice of the official certified copy of the certificate from the Delaware Secretary of State. The Court disregards the additional copy from an SEC filing.

Defendants' request for judicial notice of Wells Fargo's press release is **DENIED**. The document is not a news article prepared by a third party; it is Wells Fargo's own press release. Additionally, Defendants do not appear to be offering the news release merely to show that it exists; rather, Defendants appear to offer the news release for its truth. For these reasons, Defendants' cited authorities do not support its request for judicial notice. A court may not take judicial notice of information simply because it is published on a website, particularly the website of a private entity. (*Searles Valley Mineral Operations, Inc. v. State Bd. of Equalization* (2008) 160 Cal.App.4th 514, 519.) And the press release does not qualify under Evidence Code section 452, subdivision (h), which encompasses "facts which are widely accepted as established by experts and specialists in the natural, physical, and social sciences which can be verified by reference to treatises, encyclopedias, almanacs and the like or by persons learned in the subject matter." (*Gould v. Maryland Sound Indus., Inc.* (1995) 31 Cal.App.4th 1137, 1145.)

## DISCUSSION

Defendants argue that the complaint is subject to demurrer because Plaintiffs fail to plead facts with particularity showing they were excused from presenting a pre-litigation demand to Wells Fargo based on the doctrine of demand futility. For the reasons that follow, the Court finds Plaintiffs' allegations are sufficient as to some of the theories upon which each cause of action is based.

It is elemental that directors rather than shareholders manage the affairs of a corporation. (*United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*

(2021) 262 A.3d 1034, 1047.)[3] "The board's authority to govern corporate affairs extends to decisions about what remedial actions a corporation should take after being harmed, including whether the corporation should file a lawsuit against its directors, its officers, its controller, or an outsider." (*Ibid.*) Thus, by its very nature, a shareholder derivative action in which a shareholder asserts the corporation's claims on its behalf essentially deprives the board of its authority and managerial control. (*Ibid.*) It is precisely because of this deviation from ordinary principles of corporate management that a shareholder seeking "to divest the directors of their authority to control the litigation asset and bring a derivative action on behalf of the corporation" is required to first "(1) make a demand on the company's board of directors or (2) show that demand would be futile" before filing a derivative lawsuit. (*Ibid.*) "The demand requirement is a substantive requirement that " '[e]nsure[s] that a stockholder exhausts his intracorporate remedies,' 'provide[s] a safeguard against strike suits,' and 'assure[s] that the stockholder affords the corporation the opportunity to address an alleged wrong without litigation and to control any litigation which does occur.' [Citations.]" (*Ibid.*) Here, because Plaintiffs did not make a pre-lawsuit demand, the legal sufficiency of their complaint rests on the adequacy of demand futility allegations excusing them from this prerequisite.

Under the modern *Zuckerberg* standard—a three-part test that reconciles the historic *Rales* and *Aronson* lines of analysis—"courts should ask the following three questions on a director-by-director basis when evaluating allegations of demand futility: [¶] (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand; [¶] (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the

---

[3] It is undisputed that Delaware substantive law governs the Court's analysis of demand futility here based on the internal affairs doctrine. Arguably, however, there is a distinction between the substantive standard for demand futility under Delaware law and procedural rules. Defendants do not address this distinction in arguing that Delaware law and a heightened pleading standard should apply. Nevertheless, Plaintiffs do not dispute that Delaware law and the heightened pleading standard requiring particularity apply. Accordingly, the Court applies the Delaware pleading standard espoused by Defendants. (*See, e.g., Bader v. Anderson* (2009) 179 Cal.App.4th 775, 782; *Tola v. Bryant* (2022) 76 Cal.App.5th 746, 749, 753.) Incidentally, particularity is required under California law as well. (*Apple, Inc. v. Super. Ct.* (2017) 18 Cal.App.5th 222, 232; Corp. Code, § 800, subd. (b)(2).)

litigation demand." (*Zuckerberg, supra*, 262 A.3d at p. 1059.) "If the answer to any of the questions is 'yes' for at least half of the members of the demand board, then demand is excused as futile." (*Ibid.*)

The facts establishing demand futility under the test above must be pleaded with particularity. (*Tola, supra*, 76 Cal.App.5th at p. 753; *Zuckerberg, supra*, 262 A.3d at p. 1048.) While the pleading standard for demand futility is heightened, a court evaluating the sufficiency of such allegations "must accept as true all of the complaint's particularized and well-pleaded allegations, and must draw all reasonable inferences in the plaintiff's favor." (*Zuckerberg, supra*, 262 A.3d at p. 1048.) Plaintiffs principally rely on the second Zuckerberg factor above, whether the directors face a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand.

Defendants argue that because Wells Fargo immunizes directors from certain liability consistent with Delaware Code section 102, subdivision (b)(7)—including breaches of the duty of care—that Plaintiffs must plead, and ultimately, fail to plead facts showing bad faith conduct giving rise to a substantial likelihood of liability for a majority of Wells Fargo's board. In opposition, Plaintiffs assert in a footnote that directors who are also officers are not protected by the exculpatory provision and that they are not asserting breaches of the duty of care but rather asserting breaches of the duty of loyalty and other claims. In other words, Plaintiffs maintain that the exculpatory provision is entirely irrelevant to the Court's analysis. The Court disagrees.[4] Plaintiffs do not ultimately dispute that a bad faith standard applies; their opposition is devoted to establishing how the facts alleged show bad faith. Significantly, bad faith is often used to describe conduct that would either fall outside the scope of an exculpated breach of the duty of care or constitute a breach of the duty of loyalty under a *Caremark* theory. (*See Stone ex rel. AmSouth Bancorp. v. Ritter* (2006) 911 A.2d 362, 369–70 [discussing doctrinal terms, like good faith, relative to fiduciary duties, like the duty of loyalty and the duty of care].) Consequently, the Court focuses its analysis on whether the allegations in the complaint plead a sufficient level of knowing misconduct—bad faith—to support demand futility based on a substantial likelihood of director liability for the various breaches alleged here. (*See Tola, supra*, 76 Cal.App.5th at p. 753.)

---

[4] Plaintiffs do, indeed, allege breaches of the duty of care in addition to the duty of loyalty. (*See generally Orman v. Cullman* (2002) 794 A.2d 5, 21–24.)

- 7 -

Turning first to *Caremark*, "[a] *Caremark* claim contends that the directors set in motion or 'allowed a situation to develop and continue which exposed the corporation to enormous legal liability and that in doing so they violated a duty to be active monitors of corporate performance.'" (*South v. Baker* (2012) 62 A.3d 1, 14, abrogated on another ground by *Griffith v. Stein on behalf of Goldman Sachs Grp., Inc.* (Del. Sup. 2022) __ A.3d __, 2022 WL 3365025, quoting *In re Caremark Intern. Inc. Derivative Litigation* (1996) 698 A.2d 959, 967.) "The 'imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations. Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith.'" (*Leyte-Vidal v. Semel* (2013) 220 Cal.App.4th 1001, 1014, quoting *Stone, supra*, 911 A.2d at p. 370.)

"Because sophisticated and well-advised individuals like corporate directors do not customarily concede violations of positive law, a plaintiff must plead facts and circumstances sufficient for a court to infer that the directors knowingly did so." (*South, supra*, 62 A.3d at p. 15.) A plaintiff might "plead that the board consciously failed to act after learning about evidence of illegality—the proverbial 'red flag.'" (*Ibid.*) Such allegations rest upon the premise that "[a] board that fails to act in the face of such information makes a conscious decision, and the decision not to act is just as much of a decision as a decision to act." (*Ibid.*) Similarly, when directors are exculpated from liability for breaches of the duty of care, excepting bad faith or similar intentional misconduct (Del. Code, § 102, subd. (7)(b)), "a plaintiff must [ ] plead particularized facts that demonstrate that the directors acted with scienter, *i.e.*, that they had 'actual or constructive knowledge' that their conduct was legally improper." (*Wood v. Baum* (2008) 953 A.2d 136, 141.)

With respect to Plaintiffs' theory regarding compliance with the consent orders, the Court disagrees with Defendants' characterization of the allegations as simply alleging that a bad outcome happened to have occurred while the directors named here happened to be members of the board. (*See* Mem. of Pts. & Auth. at p. 2.) Plaintiffs are not just alleging that scandals occurred on Defendants' watch. Rather, Plaintiffs' allegations about the consent orders are more than adequate to plead the existence of red flags and knowledge on the part of the board as to a duty to act and remediate the issues

- 8 -
*Timothy Himstreet, et al. v. Charles W. Scharf, et al.*, CGC-22-599223 Order Overruling Demurrer to Complaint

complained of by Plaintiffs and addressed in the consent orders. Certain of the consent orders expressly discuss the particular responsibility of the board in complying with the consent orders and reviewing submittals to federal regulators. Thus, the issue is whether Plaintiffs adequately plead facts with specificity showing that the board did not act appropriately in the face of this knowledge.

The allegations in the complaint do not reflect that, technically speaking, the board took no action whatsoever in response to the consent orders. Defendants' position for the purposes of this demurrer is hindered by the September 2021 consent order and fine establishing Wells Fargo's non-compliance with the 2018 OCC consent order.[5] It is possible to infer from the totality of the allegations, including the duration of Wells Fargo's failure to comply and the repeated deficiencies in its performance (Compl., ¶¶ 99–120), that the board's conduct more closely resembled sustained, knowing inaction as distinguished from good faith efforts that happened to fall short of regulators' expectations. (*Compare Teamsters Local 443 Health Services & Insurance Plan v. Chou* (Del. Ch. Aug. 24, 2020) 2020 WL 5028065 *with Richardson v. Clark* (Del. Ch. Dec. 31, 2020) 2020 WL 7861335.) This is to say that the alleged deficiencies in the board's efforts were so significant and sustained—including as documented by federal regulators—that such efforts cannot fairly be characterized as good faith or meaningful attempts to comply. The Court finds that the complaint contains particularized facts sufficient to plead a substantial likelihood of liability by a majority of the board to the extent Plaintiffs' claims concern noncompliance with the federal consent orders.[6]

---

[5] It is true that at least one Delaware court has declined to find bad faith inaction on the basis of a consent order establishing noncompliance. (*Oklahoma Firefighters Pension & Retirement System v. Corbat* (Del. Ch. Mar. 12, 2018) 2018 WL 1254958 [declining to reopen judgment and change conclusion on demand futility where consent order did not contain express findings that noncompliance was knowing and intentional].) But this court does not find the reasoning of *Oklahoma Firefighters* persuasive and consistent with the weight of authority to the extent that the chancery court concluded that noncompliance was not knowing or intentional based purely on the absence of such an express finding in the consent order. Additionally, the particular procedural posture of the motion before the chancery court may have influenced its decision, which circumstance is not present here. And, our facts are distinguishable in light of OCC's commentary on Wells Fargo's compliance progress, which provides context for the 2021 consent order. (*See* Compl., ¶¶ 92–120.)

[6] The Court's assessment is based on the board as composed at the time the complaint was filed. (*See generally Zuckerberg*, *supra*, 262 A.3d at pp. 1059–60.) Defendants do not provide a persuasive argument to support the conclusion that the board that would have considered a demand is the expanded 14-member board, which composition change occurred after the complaint was filed. Given a demand is ordinarily presented prior to filing, Defendants' reasoning that the post-filing board would constitute the demand board is unpersuasive. Further, *Park Employees' & Retirement Board Employees' Annuity & Benefit Fund of Chicago v. Smith* (Del. Chanc. Feb. 12, 2016) 2016 WL 3223395 is distinguishable due to the more significant change in composition that occurred and the particular facts of that case. While Defendants claim that there are three new directors on the board, the number of board seats expanded; it is not the case that there was substantial turnover on the board

- 9 -

In reaching this conclusion, the Court acknowledges that Plaintiffs' demand futility allegations are quite uniform as to each director (*see* Compl., ¶¶ 244–72.) Plaintiffs do not include significant allegations about individual directors' meeting attendance, meeting contributions, or voting record (as might have been gleaned from a books and records request), although Defendants do not cite authority for the proposition that such granular information is required in all circumstances.  Bsecause Wells Fargo's compliance was the subject of public oversight (including investigation by the House Financial Services Committee), Plaintiffs have been able to include more particular facts about the board's conduct based on public records, including records of meetings and communications between federal regulators and the board. Thus, notwithstanding the uniformity of Plaintiffs' allegations in paragraphs 244 to 272, the Court finds that the complaint as a whole contains factual allegations that are sufficiently specific.

Turning to the misrepresentation allegations, the Court is not persuaded that Plaintiffs have adequately pleaded particularized facts showing a majority of directors are likely liable for making misrepresentations about either compliance with consent orders or commercial lending practices. With respect to alleged misrepresentations about compliance with consent orders, Plaintiffs principally focus on public statements made by Shrewsberry (an executive only) and Sloan (an executive and board member). (Compl., ¶¶ 123–50.) Otherwise, in an attempt to reach a majority of the board, Plaintiffs rely on the fact that Clark, Craver, James, Morris, Pujadas, Sargent, Sloan, and Vautrinot "caused" the filing of a 2018 proxy statement with a vague statement about Wells Fargo's commitment to complying with the Federal Reserve's consent order and strengthening corporate culture. (Compl., ¶¶ 124–25.) The Court agrees with the district court's analysis regarding the insufficiency of the vague and aspirational statement in the proxy filing for the purposes of establishing a substantial likelihood of liability. (*See In re Wells Fargo & Company Stockholder Derivative Litigation* (N.D. Cal. Feb. 4, 2022, 20-CV-08750-MMC) 2020 WL 345066, at *6.) Moreover, Plaintiffs' allegations are too conclusory to establish a likelihood of liability on the part of the directors that "caused" the proxy statement to be filed. (*See, e.g., In re Citigroup Inc. Shareholder Derivative Litigation* (2009) 964 A.2d 106, 134–35.) The Court finds Plaintiffs' allegations with respect to alleged misrepresentations about commercial lending to be similarly inadequate. (*Ibid.*)

---

such that many of the directors alleged to be liable were removed from the board or replaced. Consequently, the Court does not treat the expanded board as the demand board.

Plaintiffs again rely primarily on public statements by Shrewsberry and Sloan coupled with more conclusory allegations that there is director liability due to inaccuracies in SEC filings, such as 10-Ks. The Court cannot conclude or infer from the allegations here that a majority of the board knowingly made misrepresentations about commercial lending and are subject to a substantial likelihood of liability as a result.

In sum, Plaintiffs adequately plead demand futility to the extent their claims concern compliance with the consent orders, but Plaintiffs' allegations are insufficient to the extent they allege misrepresentations with respect to the consent orders and commercial credit. Ultimately, because a demurrer does not lie to a portion of a cause of action, it must be overruled. (*PH II, Inc.* v. *Super. Ct.* (1995) 33 Cal.App.4th 1680, 1682–83).)

## CONCLUSION

The Court **OVERRULES** Defendants' demurrer as to each cause of action.

IT IS SO ORDERED.

Dated: October 5, 2022

ANDREW Y.S. CHENG
Judge of the Superior Court

- 11 -

*Timothy Himstreet, et al. v. Charles W. Scharf, et al.*, CGC-22-599223 Order Overruling Demurrer to Complaint

# CERTIFICATE OF ELECTRONIC SERVICE
(CCP 1010.6(6) & CRC 2.251)

    I, CLARK BANAYAD, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

    On October 5, 2022, I electronically served the ATTACHED DOCUMENT(S) via File&ServeXpress on the recipients designated on the Transaction Receipt located on the File&ServeXpress website.

Dated: October 5, 2022

                        Mark Caulkin, Interim Clerk

                    By: _____
                              CLARK BANAYAD, Deputy Clerk