**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| IN RE TESLA INC. STOCKHOLDER DERIVATIVE LITIGATION | Lead Case No.: 1:22-cv-00592-LY<br><br>(Consolidated with Case No. 1:22-cv-00611-LY) |
| This Document Relates To:<br><br>All Cases | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
VERIFIED CONSOLIDATED DERIVATIVE COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ……………………………………………………………………….. 1

ARGUMENT ……………………………………………………………………………… 2

I.    PLAINTIFFS ATTEMPT TO LOWER THE PLEADING STANDARD ……………… 2

II.   PLAINTIFFS CANNOT REFUTE THAT A MAJORITY OF THE BOARD IS
      DISINTERESTED ………………………………………………………………………… 2

      A.    Plaintiffs Fail to Plead the Board Knowingly Violated Its Oversight
            Responsibility ………………………………………………………………………… 3

            1.    None of Plaintiffs' Allegations Amounts to "Red Flags" of
                  Misconduct ………………………………………………………………… 3

            2.    Unable to Plead Bad Faith, Plaintiffs Misstate Both Law and Facts ……… 5

      B.    Elon Musk Faces No Substantial Likelihood of Liability ……………………… 6

            1.    Tesla's Exculpatory Clause Applies to Mr. Musk ……………………… 7

            2.    Plaintiffs' Theory of Mr. Musk's Omniscience Is Unsupported ………… 7

      C.    Plaintiffs' Add-On Section 14(a) Claim Also Fails ……………………………… 9

            1.    Plaintiffs Fail to Plead Particularized Facts Showing Bad Faith ……….. 9

            2.    Plaintiffs Fail to Allege a Material Omission or Misstatement in
                  the Proxy ………………………………………………………………... 10

            3.    Plaintiffs Cite No Law to Argue that There Was an Essential Link ……. 11

III.  PLAINTIFFS FAIL TO SHOW THAT A MAJORITY OF THE BOARD LACKS
      INDEPENDENCE ……………………………………………………………………… 12

      A.    Mr. Musk Does Not Control Tesla's Board ……………………………………… 12

      B.    More Than Half the Board Is Independent ……………………………………... 13

CONCLUSION ………………………………………………………………………… 15

## TABLE OF AUTHORITIES

Page(s)

Cases

*In re Abbott Labs. Deriv. S'holders Litig.*,
 325 F.3d 795 (7th Cir. 2003) ……………………………………………………………… 4, 5

*In re Am. Apparel, Inc. S'holder Deriv. Litig.*,
 2012 U.S. Dist. LEXIS 146970 (C.D. Cal. July 31, 2012) ………………………………… 4

*In re Am. Int'l Grp., Inc.*
 965 A.2d 763 (Del. Ch. 2009) …………………………………………………….……… 9

*Arnold v. Soc'y for Sav. Bancorp, Inc.*,
 650 A.2d 1270 (Del. 1994) ……….……………………………………………………… 7

*In re Baker Hughes Inc. Merger Litig.*,
 2020 Del. Ch. LEXIS 321 (Oct. 27, 2020) ……………………………………………… 7

*Baker, Watts & Co. v. Miles & Stockbridge*,
 876 F.2d 1101 (4th Cir. 1989) ……….………………………………………………… 10

*Beam v. Stewart*,
 845 A.2d 1040 (Del. 2004) ………….…………………………………………………… 13

*Beck v. Dobrowski*,
 559 F.3d 680 (7th Cir. 2009) ……………..…………………………………………… 9

*In re Cabot Oil & Gas Corp. Deriv. Litig.*,
 596 F. Supp. 3d 755 (S.D. Tex. 2022) ……….……………………………………… 3

*In re Chemours Co. Deriv. Litig.*,
 2021 Del. Ch. LEXIS 258 (Nov. 1, 2021) …………………..………………………… 6

*In re Citigroup Inc. S'holder Deriv. Litig.*,
 964 A.2d 106 (Del. Ch. 2009) …………………………………………………………… 3

*City of Detroit Police & Fire Ret. Sys. v. Hamrock*,
 2021 U.S. Dist. LEXIS 43717 (D. Del. Mar. 9, 2021) …………………………………… 9

*City of Detroit Police & Fire Ret. Sys. v. Hamrock*,
 2022 Del. Ch. LEXIS 159 (June 30, 2022) …………………………………………….. 4

*Cohen v. Viray*,
 622 F.3d 188 (2d Cir. 2010) ……………………………………………………………... 10

Page(s)

*In re Crimson Exploration Inc. S'holder Litig.*,
  2014 WL 5449419 (Del. Ch. Oct. 24, 2014) ....................................................... 12

*In re Daou Systems, Inc.*,
  411 F.3d 1006 (9th Cir. 2005) ...................................................................... 8, 9

*In re DELL Deriv. Litig.*,
  2007 WL 9710279 (W.D. Tex. Oct. 9, 2007) ..................................................... 2

*In re Facebook, Inc. Section 220 Litig.*,
  2019 Del. Ch. LEXIS 197 (May 30, 2019) ........................................................ 6

*Freuler v. Parker*,
  803 F. Supp. 2d 630 (S.D. Tex. 2011) ....................................................... 1, 2, 4

*Gantler v. Stephens*,
  965 A.2d 695 (Del. 2009) .............................................................................. 8

*Gerstle v. Gamble-Skogmo, Inc.*,
  478 F.2d 1281 (2d Cir. 1973) ......................................................................... 9

*Goldfarb v. Barbier*,
  2012 U.S. Dist. LEXIS 200820 (W.D. Tex. Apr. 26, 2012) ................................ 15

*In re Goldman Sachs Grp., Inc. S'holder Litig.*,
  2011 Del. Ch. LEXIS 151 (Oct. 12, 2011) .............................................. 2, 14, 15

*Heinze v. Tesco Corp.*,
  971 F.3d 475 (5th Cir. 2020) ........................................................................ 10

*Herskowitz v. Nutri/System*,
  857 F.2d 179 (3d Cir. 1988) ........................................................................... 9

*Himstreet v. Scharf*,
  No. CGC-22-599223, slip op. (Cal. Super. Ct. Oct. 5, 2022) ......................... 5, 6, 11

*Hulliung v. Bolen*,
  548 F. Supp. 2d 336 (N.D. Tex. 2008) ............................................................ 11

*Jones v. Jenkins*,
  503 F. Supp. 2d 1325 (D. Ariz. 2007) .............................................................. 8

*Kandell v. Niv*,
  2017 Del. Ch. LEXIS 640 (Sept. 29, 2017) ...................................................... 12

Page(s)

*In re KBR, Inc. Secs. Litig.*,
    2018 U.S. Dist. LEXIS 221137 (S.D. Tex. Aug. 31, 2018) ……………………………….. 11

*Kiger v. Mollenkopf*,
    2021 U.S. Dist. LEXIS 220509 (D. Del. Nov. 15, 2021) …………………………………… 2

*Knox v. Rosenberg*,
    1999 U.S. Dist. LEXIS 23724 (S.D. Tex. Sept. 27, 1999) ………………………… 13, 14

*In re Kraft Heinz Co. Deriv. Litig.*,
    2021 Del. Ch. LEXIS 295 (Dec. 15, 2021) …………………………………………….. 14, 15

*Kurr v. Orbital ATK, Inc.*,
    276 F. Supp. 3d 527 (E.D. Va. 2017) …………………………………………………... 9

*Leb. Cnty. Emps. Ret. Fund v. Collis*,
    2022 Del. Ch. LEXIS 358 (Dec. 22, 2022) …………………………………………….. 4

*In re Lendingclub Corp. Deriv. Litig.*,
    2019 Del. Ch. LEXS 1347 (Oct. 31, 2019) …………………………………………… 14

*Loudon v. Archer-Daniels-Midland Co.*,
    700 A.2d 135 (Del. 1997) …………………………………………………………….. 10

*In re Massey Energy Co. Deriv. & Class Action Litig.*,
    2011 Del. Ch. LEXIS 83 (May 31, 2011) …………………………………………… 5

*In re MetLife Inc. Derivative Litig.*,
    2020 Del. Ch. LEXIS 265 (Aug. 17, 2020) …………………………………………… 3, 4

*In re Mindbody, Inc.*,
    2020 Del. Ch. LEXIS 307 (Oct. 2, 2020) …………………………………………… 7, 12

*Morrison v. Berry*,
    2019 Del. Ch. LEXIS 1412 (Dec. 31, 2019) ………………………………………… 12

*In re Oracle Corp. Deriv. Litig.*,
    2018 Del. Ch. LEXIS 92 (Mar. 19, 2018) …………………………………………… 6, 14

*Owens v. Mayleben*,
    2020 Del. Ch. LEXIS 59 (Feb. 13, 2020) …………………..………….…………….. 14

*Panella v. Tesco Corp.*,
    2019 U.S. Dist. LEXIS 65844 (S.D. Tex. Mar. 29, 2019) ………………………….… 10

Page(s)

*In re PNB Holding Co. S'holders Litig.*,
    2006 Del. Ch. LEXIS 158 (Aug. 18, 2006) ……………………………………………... 15

*Reiter v. Fairbank*,
    2016 Del. Ch. LEXIS 158 (Oct. 18, 2016) ……………………………………………….. 5

*Rosky v. Farha*,
    2009 U.S. Dist. LEXIS 107531 (M.D. Fla. Mar. 30, 2009) ………………………………. 6

*In re SCANA Corp. Deriv. Litig.*,
    2018 U.S. Dist. LEXIS 107042 (D.S.C. June 27, 2018) ………………………………….. 6

*Shapiro v. UJB Fin. Corp.*,
    964 F.2d 272 (3d Cir. 1992) (May 28, 1992) ……………………………………………. 11

*Smith v. Tartar*,
    305 F.Supp. 3d 733 (E.D. Ky. 2018) ...…………………………………………………... 15

*In re Synthes, Inc. S'holder Litig.*,
    50 A.3d 1022 (Del. Ch. 2012) …………………………………………………………… 13

*In re Tesla Motors, Inc. S'holder Litig.*,
    2018 Del. Ch. LEXIS 102 (Mar. 28, 2018) …………………………………………... 12, 13

*In re Tesla Motors, Inc. S'holder Litig.*,
    2022 Del. Ch. LEXIS 94 (Apr. 27, 2022) …………………………………………….. 12

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
    906 A.2d 168 (Del. Ch. 2006) …………………………………………………………… 10

*United Food & Commer. Workers Union v. Zuckerberg*,
    262 A.3d 1034 (Del. 2021) …………………………………………………………… 3, 14

*United States v. Causey*,
    2005 U.S. Dist. LEXIS 48841 (S.D. Tex. Oct. 17, 2005) ………………………………… 11

*In re Veeco Instruments, Inc. Sec. Litig.*,
    434 F. Supp. 2d 267 (S.D.N.Y. 2006) ……………………………………………………. 6

*Voigt v. Metcalf*,
    2020 Del. Ch. LEXIS 55 (Feb. 10, 2020) ………………………………………………… 2

*In re Walt Disney Co. Deriv. Litig.*,
    906 A.2d 27 (Del. 2006) …………………………………………………………….. 1, 10

Page(s)

*Wilson v. Great Am. Indus., Inc.*,
    855 F.2d 987 (2d Cir. 1988) …….…………………………………………………... 9

<u>Statutes</u>

8 *Del. C.* § 141(e) ……………………………………………………………….….. 3

<u>Other Authorities</u>

R. Franklin Balotti & Jesse A. Finkelstein, *Delaware Law of Corp. & Business Org.* § 4.19
(Supp. 1992) ……………………………………………………………………….….... 7

Tesla, Inc., Annual Report (Form 10-K) (Feb. 19, 2019), <u>https://www.sec.gov/Archives/edgar/</u>
<u>data/1318605/000156459019003165/tsla-10k_20181231.htm</u> ……………….…………………… 7

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| ¶ _ or Complaint | Verified Consolidated Stockholder Derivative Complaint for Breach of Fiduciary Duty, Unjust Enrichment, and Violation of Securities Law, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-LY (W.D. Tex. Sept. 6, 2022), ECF No. 33. |
| DFEH | Department of Fair Employment and Housing[1] |
| Ex. _ | Exhibits to the Declaration of Gary Ewell in Support of Defendants' Motion to Dismiss Plaintiffs' Verified Consolidated Derivative Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-LY (W.D. Tex. Nov. 7, 2022), ECF No. 46-1 |
| MTD | Defendants' Motion to Dismiss Plaintiffs' Verified Consolidated Derivative Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-LY (W.D. Tex. Nov. 7, 2022), ECF No. 47 |
| Opp. | Plaintiffs' Opposition to Defendants' Motion to Dismiss Verified Consolidated Derivative Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-LY (W.D. Tex. Jan. 13, 2023), ECF No. 58 |
| Tesla or the Company | Tesla, Inc. |
| *Tesla Motors I* | *In re Tesla Motors, Inc. S'holder Litig.*, 2018 Del. Ch. LEXIS 102 (Mar. 28, 2018) |
| TSLA-Janklow _ | Bates-stamped documents in Tesla's books and records production to Plaintiffs pursuant to Section 220 of the Delaware General Corporation Law |

---

[1] DFEH has been renamed the "Civil Rights Department" as of July 1, 2022.

**INTRODUCTION**

Bad faith is the key ingredient that Delaware law requires to hold corporate directors personally liable in shareholder derivative lawsuits. MTD at 8-9. This is true both for Plaintiffs' fiduciary duty claim under Delaware law and for their Section 14(a) claim under the federal securities laws—both are asserted derivatively on behalf of Tesla. *Id.* at 18.

Recognizing that their Complaint comes nowhere close to meeting this exacting standard, Plaintiffs use their Opposition to mischaracterize the applicable law. Just a few examples:

- Unable to plead bad faith, Plaintiffs take the unprecedented step of arguing that charter provisions exculpating directors for conduct less than bad faith are contrary to public policy. Opp. at 28-29. On the contrary, the Delaware Supreme Court held that the statute permitting exculpation "evidences the intent of the Delaware General Assembly to afford significant protections to directors[.]" *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 66 (Del. 2006).

- Lacking the particularized facts required by Rule 23.1, Plaintiffs cite cases decided under the lesser plausibility standard. Opp. at 8-9. Plaintiffs neglect to mention that their authorities are not even *derivative lawsuits* and were therefore decided under Rule 12(b)(6), not Rule 23.1.

- Next, Plaintiffs argue that Defendants must "refute a pleading stage inference of bad faith." Opp. at 18. But there is no such inference. The opposite is true: "Under Delaware law, directors are entitled to the presumption that they were faithful to their fiduciary duties." *Freuler v. Parker*, 803 F. Supp. 2d 630, 637 (S.D. Tex. 2011).

- In an attempt to paint Mr. Musk as controlling Tesla's Board, Plaintiffs rely on an early-stage Chancery ruling in an unrelated Tesla lawsuit, where defendants did not even challenge demand futility. Plaintiffs disregarded the Court's ultimate conclusion that the "**The Tesla Board was Not 'Dominated' By Elon [Musk].**" *Infra* at 12.

That Plaintiffs take liberties with both law and fact shows that they are aware of the many weaknesses of this meritless lawsuit. Plaintiffs should not attempt to circumvent Delaware's requirement that shareholders make demand on the Board before filing a lawsuit. Instead, they should pursue the proper path for raising intracorporate concerns and make demand on the Board.

Meanwhile, because Plaintiffs lack standing for their lawsuit, the Court should dismiss this action with prejudice.

**ARGUMENT**

## I.  PLAINTIFFS ATTEMPT TO LOWER THE PLEADING STANDARD

Plaintiffs cannot meet the "stringent requirements of factual particularity" that Delaware law imposes on derivative cases. *Freuler*, 803 F. Supp. 2d at 636. Plaintiffs' Opposition cites to inapposite authorities, which are not even derivative cases and were decided under the lesser plausibility standard. *See* Opp. at 8-9. As the Court of Chancery explained, "Rule 12(b)(6) is designed to ensure a decision on the merits of any potentially valid claim, excluding only clearly meritless claims; Rule 23.1 is designed to vindicate the authority of the corporate board[.]" *In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 Del. Ch. LEXIS 151, at *18-19 (Oct. 12, 2011).

Plaintiffs also seek to prevent the Court from considering the full text of the books and records cited in the Complaint. Opp. at 9 n.9. But as Plaintiffs' own cases recognize, the Court need not defer to Plaintiffs' interpretations, and must "review the actual documents to ensure that the plaintiff has not misrepresented their contents and that any inference the plaintiff seeks to have drawn is a reasonable one." *Voigt v. Metcalf*, 2020 Del. Ch. LEXIS 55, at *26 (Feb. 10, 2020).

As discussed below, Plaintiffs fail to plead particularized facts showing that demand on Tesla's Board would have been futile. MTD at 8. They cannot show that a majority of the Board either (1) faces a "substantial likelihood of liability" or (2) "lack[s] independence from" an interested party. *Kiger v. Mollenkopf*, 2021 U.S. Dist. LEXIS 220509, at *14-15 (D. Del. Nov. 15, 2021). Plaintiffs offer "conclusory allegations [and] legal conclusions masquerading as factual conclusions[,]" none of which "suffice to prevent a motion to dismiss." *In re DELL Deriv. Litig.*, 2007 WL 9710279, at *2 (W.D. Tex. Oct. 9, 2007).

## II.  PLAINTIFFS CANNOT REFUTE THAT A MAJORITY OF THE BOARD IS DISINTERESTED

Plaintiffs are required to plead on a "director-by-director basis" that a majority of the Board

"would face a substantial likelihood of liability" for the claims alleged. *United Food & Commer. Workers Union v. Zuckerberg*, 262 A.3d 1034, 1058 (Del. 2021). To do so, Plaintiffs must allege directorial bad faith—all other conduct being exculpated under Tesla's charter. *See* MTD at 9, 18.

## A.    Plaintiffs Fail to Plead the Board Knowingly Violated Its Oversight Responsibility

Plaintiffs do not allege that Tesla lacked internal controls. *See* MTD at 9. Instead, they claim that the Board ignored "red flags" of misconduct at the Company. Opp. at 15. But what Plaintiffs describe as "red flags" were good faith procedures that show a Board actively engaged in exercising oversight. MTD at 11. Nothing in the Complaint suggests that the Board received "sufficient notice of corporate non-compliance with law such that their failure to remediate amounts to bad faith." *In re Cabot Oil & Gas Corp. Deriv. Litig.*, 596 F. Supp. 3d 755, 774 (S.D. Tex. 2022).

### 1.    None of Plaintiffs' Allegations Amounts to "Red Flags" of Misconduct

**Frequent Board Updates.** Plaintiffs claim that presentations to the Board were red flags because they identified instances of harassment and discrimination. Opp. at 15-16. But Plaintiffs' selective citation to books and records fails to address *any* of management's responsive actions. *See* MTD at 14-15. Plaintiffs' conclusory characterization of management's measures as "shallow" or "one-off" does not meet the standard of "particularized factual allegations" showing the Board knowingly ignored "red flags" of misconduct. *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 126-28 (Del. Ch. 2009). Far from being "one-off," the Board received numerous updates on steps management was taking to confront workplace misconduct allegations head-on. MTD at 10.

**Good Faith Reliance on Management Action.** Plaintiffs have no answer to Defendants' authority establishing that directors are "fully protected in relying in good faith" on management reports. 8 *Del. C.* § 141(e); MTD at 12-13. Instead, they assert that these reports were *themselves* red flags. Opp. at 15-17. Plaintiffs' own authorities contradict them. They cite *In re MetLife Inc.*

*Derivative Litigation* for the (correct) proposition that "red flags are only useful when they are either waved in one's face or displayed so that they are visible to the careful observer," but ignore that *MetLife* rejected the argument that reports to the board and an external investigation constituted red flags. 2020 Del. Ch. LEXIS 265, at *35, 43-44 (Aug. 17, 2020) (an Internal Auditor Report identifying "control weaknesses" and a Department of Labor investigation were not red flags).[2] Tesla's Board's awareness of workplace issues is "evidence that the reporting system in place is working as it should." *Hamrock*, 2022 Del. Ch. LEXIS 159, at *62; MTD at 12.

**Pleading Stage Inference of Good Faith.** Plaintiffs argue that the Board's ameliorative actions do "not refute a pleading stage inference of bad faith." Opp. at 18. But *there is no "pleading stage inference of bad faith"* under Delaware law. The opposite is true: "Under Delaware law, directors are entitled to the presumption that they were faithful to their fiduciary duties." *Freuler*, 803 F. Supp. 2d at 637. The authorities Plaintiffs invoke are irrelevant, non-binding, or both. Unlike in *Abbott Labs.*,[3] where the board "fail[ed] to take any action for such an inordinate amount of time result[ing] in substantial corporate losses[,]" Tesla's books and records show that the Company took

---

[2] Plaintiffs' other authorities further illustrate the gulf between their allegations and what courts have determined to be actual red flags. In *Collis*, "the complaint identifie[d] over seventy examples of subpoenas, settlements, civil litigation, congressional reports, and analyses of regulatory risks" as well as over 1,800 federal court cases and 270 state court cases. *Leb. Cnty. Emps. Ret. Fund v. Collis*, 2022 Del. Ch. LEXIS 358, at *48 (Dec. 22, 2022). In *Abbott Labs.*, there were "six years of noncompliance, inspections, 483s, Warning Letters, and notice in the press, all of which then resulted in the largest civil fine ever imposed by the FDA and the destruction and suspension of products which accounted for approximately $250 million in corporate assets[.]" *In re Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d 795, 809 (7th Cir. 2003). *Hamrock* exemplifies the high bar for finding red flags: the court found that no red flags alerted the Board to the risk of a deadly gas explosion despite knowledge of almost 900 existing safety violations, rampant recordkeeping deficiencies, and a prior gas explosion. *City of Detroit Policy & Fire Ret. Sys. v. Hamrock*, 2022 Del. Ch. LEXIS 159, at *53-56 (June 30, 2022).

[3] Federal courts have declined to follow *Abbott Labs.*, which involved "Illinois as opposed to Delaware law." *In re Am. Apparel, Inc. S'holder Deriv. Litig.*, 2012 U.S. Dist. LEXIS 146970, at *80 (C.D. Cal. July 31, 2012) (collecting cases).

concrete steps to confront discrimination and harassment.  325 F.3d at 808-09; MTD at 5-7.  In

*Massey*, defendants merely went "through the motions" to remedy safety violations, even after the

company "had pled guilty to criminal charges, had suffered other serious judgments and settlements

as a result of violations of law, had been caught trying to hide violations of law and suppress

material evidence, and had miners suffer death and serious injuries at its facilities."  *In re Massey*

*Energy Co. Deriv. & Class Action Litig.*, 2011 Del. Ch. LEXIS 83, at *76 (May 31, 2011); *accord*

*Himstreet v. Scharf*, No. CGC-22-599223, slip op. at 3 (Cal. Super. Ct. Oct. 5, 2022) (unpublished)

($250 million penalty for board failing to implement risk plan as required by consent order).

### 2.    Unable to Plead Bad Faith, Plaintiffs Misstate Both Law and Facts

Plaintiffs' limited attempts to distinguish Defendants' cases fail.  Defendants established that

Board-level reports are not red flags unless they state "that the Company's [compliance] controls and

procedures actually had been found to violate statutory requirements[.]"  MTD at 11-12 (citing

*Reiter v. Fairbank*, 2016 Del. Ch. LEXIS 158, at *38 (Oct. 18, 2016)).  Plaintiffs claim *Reiter* is

inapplicable because "the 220 documents in *Reiter* did not show 'that anyone within Capital One had

engaged in . . . illegal conduct.'"  Opp. at 17.  Plaintiffs' argument is based on a misreading of *Reiter*

and unsupported allegations.  As in *Reiter*, "the reports the directors received did not place them on

notice that management had refused to act or displayed an indifference to complying with" Tesla's

anti-discrimination and harassment obligations.  2016 Del. Ch. LEXIS 158, at *39.  Rather, the

Board reports "described the Company's heightened compliance risk" and "simultaneously

explained to the directors in considerable detail on a regular basis the initiatives management was

taking to address those problems[.]"  *Id*.  The same is true here.  MTD at 9-10.

Similarly, Plaintiffs' bare assertion that the Board knew that "members of senior management

[ ] were engaged in unlawful harassment and discrimination," Opp. at 17, is premised solely on a

presentation categorizing certain misconduct complaints as "allegations against people leaders[.]" TSLA-Janklow 220-000728; ¶ 280. Plaintiffs merely speculate that "people leaders" were unnamed "senior management." *In re Chemours Co. Deriv. Litig.*, 2021 Del. Ch. LEXIS 258, at *55 (Nov. 1, 2021) (dismissing plaintiffs' "bare [factual] conclusion" that directors sought indemnification as "speculation that is not supported by any particularized allegations").

This is not Plaintiffs' only misstatement. The Opposition claims that the DFEH sued Tesla "based on extrinsic evidence that . . . management *and the Board, in particular*, failed to take steps to prevent unlawful discrimination, harassment, and retaliation against Black employees." Opp. at 3 (emphasis added). But the Complaint contains no allegations that DFEH made *any* findings about the Board. Contrast this with Plaintiffs' authority: Wells Fargo paid a $250 million penalty for breaching a consent order where "[c]ertain of the consent orders expressly discuss[ed] the particular responsibility of the board in complying with the consent orders[.]" *Himstreet*, slip op. at 9.[4]

### B.    Elon Musk Faces No Substantial Likelihood of Liability

Plaintiffs' claims about Mr. Musk fare no better than those aimed at the rest of the Board.

### 1.    Tesla's Exculpatory Clause Applies to Mr. Musk

---

[4] Plaintiffs' remaining cases fail to support the argument that any member of the Board faces a substantial likelihood of liability for knowingly overlooking red flags. *Rosky* purports to apply Delaware law, but makes no mention of Rule 23.1 and instead applies the lower Rule 12(b)(6) standard. *Rosky v. Farha*, 2009 U.S. Dist. LEXIS 107531, at *5-7 (M.D. Fla. Mar. 30, 2009). Facebook is a books and records demand, which is decided under the "credible basis" standard, "the lowest burden of proof known in [Delaware] law[.]" *In re Facebook, Inc. Section 220 Litig.*, 2019 Del. Ch. LEXIS 197, at *5 (May 30, 2019). In *Veeco*, the defendant company admitted in an SEC filing that "a deficiency existed in [its] internal controls over financial reporting" and the board "took no action for more than a year" after that admission. *In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 277 (S.D.N.Y. 2006). In *SCANA*, the court merely restates the plaintiffs' arguments and concludes—without analysis—that there is a reasonable doubt as to the defendants' liability. *In re SCANA Corp. Deriv. Litig.*, 2018 U.S. Dist. LEXIS 107042, at *15-18 (D.S.C. June 27, 2018). And in *Oracle*, the Court of Chancery concluded the opposite of what Plaintiffs allege here, finding that "a majority of the Board does not face a substantial likelihood of liability[.]" *In re Oracle Corp. Deriv. Litig.*, 2018 Del. Ch. LEXIS 92, at *32 (Mar. 19, 2018).

Plaintiffs are wrong that Tesla's exculpation clause does not apply to Mr. Musk due to a purported exception to Section 102(b)(7) of the Delaware General Corporation Law.  Opp. at 14-15. Tesla exculpates Mr. Musk as "a director of the corporation" from all but breaches of the duty of loyalty.  S*ee* MTD at 8-9.  Crucially, Plaintiffs "failed to highlight any specific actions [he] undertook as an officer (as distinct from actions as a director) that fall within the two pertinent exceptions to Section 102(b)(7)."  *Arnold v. Soc'y for Sav. Bancorp, Inc*., 650 A.2d 1270, 1288 (Del. 1994) (citing R. Franklin Balotti & Jesse A. Finkelstein, *Delaware Law of Corp. & Business Org.* § 4.19, at 4-335 (Supp. 1992) ("where a defendant is a director and officer, only those actions taken solely in the defendant's capacity as an officer are outside the purview of Section 102(b)(7)").

Plaintiffs' own authorities confirm this.  *Baker Hughes* dismissed fiduciary duty claims against officers because the allegations concerned decisions they had made *as directors*.  *In re Baker Hughes Inc. Merger Litig.*, 2020 Del. Ch. LEXIS 321, at *46 (Oct. 27, 2020) ("The oddity of Count I is that each of these contentions concern a *Board*-level decision to take action (or refrain from taking action). . . . They do not concern decisions [defendants] were authorized to make as officers."). Similarly, the defendant in *Mindbody* "was Mindbody's CFO and COO" who "did not serve on the Board."  *In re Mindbody, Inc.*, 2020 Del. Ch. LEXIS 307, at *71 (Oct. 2, 2020).

### 2.    Plaintiffs' Theory of Mr. Musk's Omniscience Is Unsupported

Plaintiffs paint a picture of Mr. Musk as a floor-level production manager who is all-knowing and all-seeing in a 5.5 million square-foot factory of more than 20,000 employees.  *See* ¶ 2.[5]  This theory is based on conclusory allegations that fail to connect Mr. Musk to any wrongdoing:

- Plaintiffs allege that Mr. Musk spoke with a Tesla employee and, afterwards, a different employee was fired, but do not identify the timing and content of the conversation, ¶ 130;

---

[5] Tesla, Inc., Annual Report (Form 10-K), at 38 (Feb. 19, 2019),
https://www.sec.gov/Archives/edgar/data/1318605/000156459019003165/tsla-10k_20181231.htm.

● Plaintiffs allege that two employees complained about Mr. Musk's tweets via Tesla's Integrity Hotline, but do not allege that the tweets were unlawful, or that Mr. Musk knew about those complaints or was at all involved in their resolution, ¶ 257;

● Plaintiffs allege, based on a second-hand report, that Mr. Musk reviewed a former employee's discrimination claims and declined to endorse some unspecified change, ¶ 266.

Plaintiffs also attempt to police Mr. Musk's personal speech by claiming his Twitter account is an "official Company channel." Opp. at 6-7. But Plaintiffs fail to connect Mr. Musk's tweets to his directorial oversight responsibilities. *See Jones v. Jenkins*, 503 F. Supp. 2d 1325, 1337 (D. Ariz. 2007) ("It would be difficult to find a more general or conclusory pleading than director liability based on failing to set a proper 'tone at the top.'") (applying Delaware law). Finally, they offer a myopic reading of Mr. Musk's denunciation of discrimination, focusing on his colloquial language but ignoring his clear directive to employees that they must not "ever intentionally allow someone to feel excluded, uncomfortable or unfairly treated" and must "consider[ ] how someone might feel who is part of a historically less represented group." Ex. 12 at 64; *see* MTD at 13 n.3.

None of the cases that Plaintiffs cite supports their claims. Plaintiffs do not accuse Mr. Musk of "sabotaging" Tesla's anti-discrimination or anti-harassment measures. *See Gantler v. Stephens*, 965 A.2d 695, 708-09 (Del. 2009) (CEO and CFO directly responsible for due diligence "sabotag[ed]" that process). Their claim that Mr. Musk is "involved in every detail of the company" and "monitored portions of the company's [relevant business areas]," and therefore must have been aware of production floor-level interactions among more than 100,000 global employees defies common sense. Opp. at 12 n.11 (quoting *In re Daou Systems, Inc.,* 411 F.3d 1006, 1022 (9th Cir. 2005)). *Daou* included "specific allegations of direct involvement in the production of false accounting statements" (the misconduct at issue), whereas Plaintiffs do not allege that Mr. Musk

himself engaged in discrimination or harassment. *Daou*, 411 F.3d at 1023. Nor do Plaintiffs' cases support the "reasonable inference" that Mr. Musk ignored wrongdoing at Tesla. Opp. at 13 (quoting *In re Am. Int'l Grp.*, *Inc.*, 965 A.2d 763, 805 (Del. Ch. 2009)). In *Am. Int'l Grp.*, the court held that an executive knew of a fraudulent $500 million sale based on "over thirty pages [ ] describing the ins and outs of the [ ] transaction and the conspiracy that allegedly existed to make [it] appear legitimate." *Id.* There are no such particularized factual allegations here.

### C.    Plaintiffs' Add-On Section 14(a) Claim Also Fails

Plaintiffs fail to show that any Board member faces a substantial likelihood of liability under Section 14(a)—a claim brought solely to generate federal jurisdiction. Plaintiffs plead none of the the elements required to bring a derivative Section 14(a) claim: (1) bad faith; (2) a material false statement in a proxy; and (3) an essential link between the falsehood and corporate harm.

### 1.    Plaintiffs Fail to Plead Particularized Facts Showing Bad Faith

"[H]aving failed to allege 'bad faith, intentional misconduct, knowing violation of the law, or any other conduct for which the directors may be liable,' Plaintiffs ha[ve] 'not alleged Section 14(a) damages for which the individual Defendants could be personally liable such that the claims for relief against the Defendants are pleaded with particularity.'" *City of Detroit Police & Fire. Ret. Sys. v. Hamrock*, 2021 U.S. Dist. LEXIS 43717, at *13 (D. Del. Mar. 9, 2021) (applying exculpatory clause under 8 *Del. C.* § 102(b)(7)). Plaintiffs confuse the standard for *direct* rather than *derivative* Section 14(a) claims. Opp. at 27 n.21. Their authorities are either direct Section 14(a) claims[6] or were not decided under Rule 23.1,[7] and none considered Section 14(a) and exculpatory clauses. *See*

---

[6] *Kurr v. Orbital ATK, Inc.*, 276 F. Supp. 3d 527, 531 (E.D. Va. 2017) (direct § 14(a) claim in securities class action); *Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987, 991 (2d Cir. 1988) (same); *Herskowitz v. Nutri/System*, 857 F.2d 179, 182 (3d Cir. 1988) (same); *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1283-84 (2d Cir. 1973) (same).

[7] *Beck v. Dobrowski*, 559 F.3d 680, 687 (7th Cir. 2009) (not analyzing futility of demand).

Opp. at 27.

Unable to plead the bad faith required under Tesla's exculpatory clause, Plaintiffs take the desperate step of arguing that exculpatory clauses violate public policy. Opp. at 28. On the contrary, the statute permitting exculpation "evidences the intent of the Delaware General Assembly to afford significant protections to directors[.]" *Walt Disney*, 906 A.2d at 66; *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 194 (Del. Ch. 2006) (discussing "the important public policy reflected in 8 *Del. C.* § 102(b)(7)"). Artful ellipses in the Opposition obscure that Plaintiffs' authorities are inapplicable. *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1108 (4th Cir. 1989) (federal securities law preempted remedies under Maryland law); *Cohen v. Viray*, 622 F.3d 188, 194 (2d Cir. 2010) (Sarbanes-Oxley Act prevents indemnification of officers).

        **2.**       **Plaintiffs Fail to Allege a Material Omission or Misstatement in the Proxy**

        **No Actionable Omission.** Contrary to Plaintiffs' suggestions, Opp. at 28, federal securities laws do not impose a duty to disclose all material information. In the Fifth Circuit (as in *all* federal circuits), there is "no duty to disclose in the [proxy] all information material to the [proxy.]" *Panella v. Tesco Corp.*, 2019 U.S. Dist. LEXIS 65844, at *9-10 (S.D. Tex. Mar. 29, 2019), *aff'd sub nom. Heinze v. Tesco Corp.*, 971 F.3d 475 (5th Cir. 2020). Rather:

> Complaints that amount to 'tell me more' pleadings do not state a Section 14(a) claim because if the standard of materiality were so low, not only may the corporation and its management be subjected to liability for insignificant omissions or misstatements, but also management's fear of exposing itself to substantial liability may cause it simply to bury the shareholders in an avalanche of trivial information a result that is hardly conducive to informed decisionmaking.

*Panella*, 2019 U.S. Dist. LEXIS 65844, at *4. Plaintiffs confuse the applicable law: federal disclosure duties are governed by federal, not Delaware law. *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 141 n.18 (Del. 1997) ("the federal scheme of disclosure is not replicated in Delaware law"). Because Section 14(a) involves the *federal* duty of disclosure, Plaintiffs' cases

invoking Delaware disclosure obligations are inapplicable. *See* Opp. at 28.

      **Proxy Contains No False Statement.** Plaintiffs challenge the Proxy's descriptions of

Tesla's commitment to "do[ing] the right thing" and upholding principles of diversity, equity, and

inclusion, ¶¶ 288, 292, yet ignore the wealth of case law holding that these statements are "not

actionable under the federal securities laws," because they "are aspirational [and] incapable of

objective verification[.]" *In re KBR, Inc. Secs. Litig.*, 2018 U.S. Dist. LEXIS 221137, at *16 (S.D.

Tex. Aug. 31, 2018); *see* MTD at 16-17. By contrast, Plaintiffs cite inapt authority concerning

objectively verifiable statements about corporations' loan loss reserves. Opp. at 26-27.[8] *Himstreet*

(Plaintiffs' own authority) undermines their position, acknowledging "the insufficiency of the vague

and aspirational statement in the proxy filing for the purposes of establishing a substantial likelihood

of liability." *Himstreet*, slip op. at 10.

      **3.    Plaintiffs Cite No Law to Argue that There Was an Essential Link**

      Citing no law to support their argument that there was an essential link between the Proxy

and the alleged harm, Plaintiffs simply misread Defendants' authority. *Hulliung* dismissed claims

against *former* officers who did not sign the proxies, as well as claims against *current* directors who

did sign the proxies because there was no link between the contents of the proxy and the harm

alleged. *Hulliung v. Bolen*, 548 F. Supp. 2d 336, 341 (N.D. Tex. 2008).[9]

---

[8] *See United States v. Causey*, 2005 U.S. Dist. LEXIS 48841, at *15-29 (S.D. Tex. Oct. 17, 2005)
(e.g., description of loss allowances as "adequate" was actionable where defendants knew they had
understated possible losses by $750 million); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 281 (3d Cir.
1992) ("[A] reasonable investor would be influenced significantly by knowledge that a bank has
knowingly or recklessly hidden its true financial status by deliberately misstating its level of
non-performing loans[.]")

[9] Plaintiffs' new argument that Mr. Musk signed the Proxy in his capacity as an officer has no basis
in any facts alleged in the Complaint. *See* ¶¶ 286 ("the Board, including . . . E. Musk . . . had Tesla
file with the SEC its Proxy Statement"), 300 ("the Board caused the Company to issue the false and
misleading 2021 Proxy"). Even if they had alleged that Mr. Musk signed as an officer, Plaintiffs fail
to allege "conduct that constitutes reckless indifference or actions that are without the bounds of

III.    **PLAINTIFFS FAIL TO SHOW THAT A MAJORITY OF THE BOARD LACKS INDEPENDENCE**

Because no directors face liability, the Court's inquiry can stop here.  MTD at 19.  In any event, Plaintiffs also fail to plead "specific factual allegations detailing the manner in which [Mr. Musk] supposedly exerted control over [the Board]."  *Kandell v. Niv*, 2017 Del. Ch. LEXIS 640, at *45 (Sept. 29, 2017).  Plaintiffs again try to salvage their allegations by resorting to the inapplicable "reasonably conceivable" standard.  *See* Opp. at 20-21 (citing *In re Crimson Exploration Inc. S'holder Litig.*, 2014 WL 5449419, at *2 (Del. Ch. Oct. 24, 2014)).  Plaintiffs neglect to mention that *Crimson* was decided under Delaware's 12(b)(6) standard, not Rule 23.1.

A.    **Mr. Musk Does Not Control Tesla's Board**

Plaintiffs' control theory centers on the notion that Mr. Musk is "the face of Tesla[.]"  *In re Tesla Motors, Inc. S'holder Litig.*, 2018 Del. Ch. LEXIS 102, at *35-39 (Mar. 28, 2018); Opp. at 21.  This argument suffers from three fatal flaws.

First, Plaintiffs' reliance on so-called "*Tesla Motors I*" (concerning Tesla's 2016 acquisition of SolarCity) ignores that, in that case, Vice Chancellor Slights ruled *in favor of Tesla's directors*, finding that the Board, which included Ms. Denholm, Mr. K. Musk, and Mr. Ehrenpreis, "meaningfully vetted the [SolarCity] Acquisition, and Elon did not stand in its way."  *In re Tesla Motors, Inc. S'holder Litig.*, 2022 Del. Ch. LEXIS 94, at *6 (Apr. 27, 2022); MTD at 23.  The Vice Chancellor stated: "<u>**The Tesla Board was Not 'Dominated' By Elon**</u>. . . . [The] facts suggest an ultimately productive board dynamic that protected the interests of stockholders, despite Elon's assumed 'managerial supremacy' and the assumed board-level conflicts."  *Id.* at *66-67 (emphasis

---

reason."  *Mindbody*, 2020 Del. Ch. LEXIS 307, at *71 (Oct. 2, 2020); *see also Morrison v. Berry*, 2019 Del. Ch. LEXIS 1412, at *63 (Dec. 31, 2019) ("Because fiduciaries . . . must take risks and make difficult decisions about what is material to disclose, they are exposed to liability for breach of fiduciary duty only if their breach of the duty of care is extreme.").  Beyond a signature, Plaintiffs make no allegations of Mr. Musk's involvement in preparing the Proxy.

added).  Should Plaintiffs wish to invoke "*Tesla Motors I*," then they cannot ignore its verdict, nor

that the allegations were only tested under the permissive 12(b)(6) standard.  2018 Del. Ch. LEXIS

102, at *28 n.193, 30 (defendants did "not move to dismiss under Court of Chancery Rule 23.1").

Second, in "*Tesla Motors I*," immediately after referring to Mr. Musk as the "face of Tesla,"

the Vice Chancellor acknowledged that "[t]his fact alone, however, is not dispositive of the

Controller question."  *Id.* at *37.  Plaintiffs cannot change this reality by conclusory allegations, such

as that "E. Musk 'has demonstrated a willingness to facilitate the ouster of senior management when

displaced[.]'"  Opp. at 21.  Under Tesla's Charter, only shareholders, not Mr. Musk, are empowered

to remove directors from office.  Ex. 1 at 9 ("a director may be removed from office by the

stockholders of the corporation only for cause"); *see also Knox v. Rosenberg*, 1999 U.S. Dist. LEXIS

23724, at *50 (S.D. Tex. Sept. 27, 1999) (dismissing complaint; "Plaintiffs do not allege that

[defendant] removed past directors for exercising independent judgment.").

Third, while Plaintiffs insist Mr. E. Musk retains an "effective blocking position" due to

certain supermajority requirements for *shareholder* votes at Tesla, Opp. at 21, that requirement does

not apply to litigation demands, which are decided by the *Board* and are not among the limited

supermajority scenarios.  Ex. 1 at 8-10.  Even if it did, the Delaware Supreme Court rejects the

theory that owning a controlling stake of a company's stock equates to control of the board.  *See*

*Beam v. Stewart*, 845 A.2d 1040, 1044 (Del. 2004) (affirming dismissal despite director owning

94.4% of voting shares).  Indeed, controlling shareholders (which Mr. Musk is not, MTD at 20)

"have a right to vote their shares in their own interest."  *In re Synthes, Inc. S'holder Litig.*, 50 A.3d

1022, 1041 (Del. Ch. 2012).  Plaintiffs fail to plead that Mr. Musk controls Tesla's Board.

## B.    More Than Half the Board Is Independent

Plaintiffs abandon their allegations aimed at Ms. Denholm, Mr. Mizuno, and Mr. Murdoch,

Opp. at 25-26 n.19, and thus concede their independence.  *See In re Lendingclub Corp. Deriv. Litig.*,
2019 Del. Ch. LEXS 1347, at *38 (Oct. 31, 2019) ("failing to assert argument" as to directors
conceded independence).  Plaintiffs also ignore 14 of Defendants' 18 authorities.  Unsurprisingly,
Plaintiffs' arguments also fail with respect to the rest of the Board.

     ***Mr. Ellison.***  Plaintiffs fail to allege a single fact that Mr. Musk actually controls Mr. Ellison.
Rather, Plaintiffs' own authority shows how *unlikely* it is that Mr. Ellison would be beholden to
anyone such that his "discretion would be sterilized."  *Zuckerberg*, 262 A.3d at 1060; *see Oracle*,
2018 Del. Ch. LEXIS 92, at *10 (Mr. Ellison does "not tolerate . . . dissent").  Plaintiffs nowhere
plead that the returns from Mr. Ellison's investments in Mr. Musk's companies "***depend upon*** [Mr.
Musk's] approval of [his] actions as [Tesla] directors."  *Knox*, 1999 U.S. Dist. LEXIS 23724, at *51
(emphasis added); *see also In re Kraft Heinz Co. Deriv. Litig.*, 2021 Del. Ch. LEXIS 295, at *20
(Dec. 15, 2021) ("no particularized allegations supporting a conclusion that [directors] felt subject to
[25% shareholder's] dominion" despite $25 billion co-investments).  Nor can they identify a single
case holding that a return on investment renders a director unable to consider demand.  "If it were
enough to plead director interestedness [or independence] merely by alleging that the director's
holdings *might be* devalued as a result of derivative litigation, it is difficult to imagine how a
plaintiff would not carry his *heightened* burden to plead demand futility in nearly every derivative
case."  *Owens v. Mayleben*, 2020 Del. Ch. LEXIS 59, at *25 (Feb. 13, 2020).  As Defendants
showed, Mr. Ellison is one of the richest men in the world.  MTD at 25 n.8.  Plaintiffs plead no
particularized facts "demonstrating that the amount would be material" to his net worth.  *See
Goldman*, 2011 Del. Ch. LEXIS 151, at *29 (dismissing complaint with prejudice).

     ***Mr. Ehrenpreis.***  Tesla's former contract with Mapbox, where Mr. Ehrenpreis is also a
director, does not render him controlled by Mr. Musk.  Opp. at 24.  Plaintiffs ignore Defendants'

cases holding that directors were independent despite having interlocking interests among multiple companies.  MTD at 22; *Goldman*, 2011 Del. Ch. LEXIS 151, at *34 (director was independent even where her "livelihood . . . directly depend[ed] on her fundraising abilities").  At most, Plaintiffs' allegations about Mr. Ehrenpreis's business pursuits exemplify the "broad freedom to pursue opportunity on behalf of the corporation . . . that has made the corporate structure a supremely effective engine for the production of wealth."  *Goldman*, 2011 Del. Ch. LEXIS 151, at *2.

    ***Mr. Kimbal Musk.***  Plaintiffs would strip Kimbal Musk of his autonomy and business judgment solely because of his name.  But Plaintiffs' own authority rejects the assertion that "any [Tesla] stockholder with the same name and some of the same blood as a [Tesla] director must be deemed one and the same with them."  *In re PNB Holding Co. S'holders Litig.*, 2006 Del. Ch. LEXIS 158, at *37 (Aug. 18, 2006); *Smith v. Tartar*, 305 F.Supp. 3d 733, 741-42 (E.D. Ky. 2018) (sibling relationship insufficient to plead control).  Plaintiffs must plead particularized facts that "there is a reason to believe that the familial relationship . . . is so thick that the stockholders should be treated as essentially a voting group."  *PNB*, 2006 Del. Ch. LEXIS 158, at *37-38.  Plaintiffs do not do so here.  This Court "gives little weight to [Plaintiffs'] allegation that [Tesla] admitted, in its proxy statement, that [Mr. K. Musk] lacked independence."  *Goldfarb v. Barbier*, 2012 U.S. Dist. LEXIS 200820, at *20 (W.D. Tex. Apr. 26, 2012); *Kraft Heinz*, 2021 Del. Ch. LEXIS 295, at *24-25 ("independence determination under stock exchange rules . . . 'does not operate as a surrogate for'" independence for demand futility).

## CONCLUSION

    The Court should dismiss Plaintiffs' lawsuit for failure to make demand.

Dated: February 17, 2023

Respectfully submitted,

/s/Boris Feldman
Boris Feldman (*pro hac vice*)
Doru Gavril (*pro hac vice*)
Jennifer Loeb (*pro hac vice*)
Rebecca Lockert (*pro hac vice*)
Olivia Rosen (*pro hac vice*)

FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, California 94063
Telephone: (650) 421-8200
Facsimile: (212) 277-4001
E-mail: boris.feldman@freshfields.com
        doru.gavril@freshfields.com
        jennifer.loeb@freshfields.com
        rebecca.lockert@freshfields.com
        olivia.rosen@freshfields.com

Gary Ewell (SBN: 06752800)
Alithea Z. Sullivan (SBN: 24072376)
EWELL, BROWN, BLANKE & KNIGHT LLP
111 Congress Avenue, Suite 2800
Austin, Texas 78701
Telephone: (512) 770-4000
Facsimile: (877) 851-6384
E-mail:  gewell@ebbklaw.com
        asullivan@ebbklaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a true and correct copy of this motion upon each attorney of record and the original upon the Clerk of Court on this the 17th day of February, 2023.

s/Boris Feldman_____
Boris Feldman (*pro hac vice*)