## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |  |
|---|---|---|
| SOLOMON CHAU, DERIVATIVELY ON BEHALF OF TESLA, INC.; *Plaintiff* <br><br> v. <br><br> ELON MUSK, ROBYN DENHOLM, KIMBAL MUSK, IRA EHRENPREIS, JAMES MURDOCH, LAWRENCE J. ELLISON, KATHLEEN WILSON-THOMPSON, HIROMICHI MIZUNO, ANTONIO J. GRACIAS, STEPHEN T. JURVETSON, BRAD W. BUSS, LINDA JOHNSON RICE, *Defendants* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | No.  1:22-CV-0592-DAE <br> Member Case: 1:22-CV-0611-DAE |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE DAVID A. EZRA
      UNITED STATES DISTRICT JUDGE

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Verified Consolidated Derivative Complaint, Dkt. 46; and all related briefing. After reviewing these filings and the relevant case law, the undersigned recommends that the District Court grant the motion.

### I.      BACKGROUND

In this shareholder derivative suit, Plaintiffs Solomon Chau and Alan Janklow bring causes of action for breach of fiduciary duty, unjust enrichment, and violation of Securities and Exchange Commission Rule 14(a) regarding false or misleading

1

proxy statements on behalf of nominal Defendant Tesla, Inc. against Tesla's officers and directors. Dkt. 33, at 110-13.[1] Plaintiffs claim that "Tesla has created a toxic workplace grounded in racist and sexist abuse and discrimination" which "has caused financial harm and irreparable damage to the Company's reputation." *Id.* at 5. These harms include numerous costly lawsuits and increased regulatory scrutiny. *Id.* at 6. Plaintiffs claim that "Tesla's Board of Directors and executive officers have known about, allowed, and even encouraged this workplace culture." *Id.* Plaintiffs allege that "even when presented with widespread claims of sexual harassment and racial discrimination at its manufacturing facilities," particularly at Tesla's factory in Fremont, California, "[Tesla founder and board member Elon Musk] and the rest of the Board failed to address the misconduct." *Id.* This inaction has allegedly "exposed the Company to enormous and ongoing liability." *Id.*

Nominal Defendant Tesla moves to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 23.1 for failure to make a pre-litigation demand, and therefore lack of standing, and pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) for failure to state a claim. Dkt. 46, at 9.

---

[1] Janklow and Chau each initially filed separate lawsuits (*Chau v. Musk, et al.*, No. 1:22-cv-00592-LY, and *Janklow v. Musk, et al.*, No. 1:22-cv-00611- LY), and then moved to consolidate their complaints. *See* Dkts. 22, 23. The live consolidated complaint is Plaintiffs' Verified Consolidated Stockholder Derivative Complaint, at Dkt. 33.

## II.      LEGAL STANDARDS

### A.      12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and

matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### B.     23.1(b)

Federal Rule of Civil Procedure 23.1, addressing pleading requirements for derivative actions, imposes a higher pleading standard than Rule 12(b)(6) and requires that the complaint must be verified and must:

> (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

> (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack, and

> (3) state with particularity:

> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

> (B) the reasons for not obtaining the action or not making the effort.

4

Fed. R. Civ. P. 23.1(b). Because Rule 23.1 does not specify the applicable substantive standards, the particularity of a plaintiff's pleadings will be determined by the standards in the state of the company's incorporation, here, Delaware. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 92-99, 108-09 (1991).

Under Delaware law, the decision to pursue a lawsuit on behalf of the corporation is left to the board of directors, recognizing that "directors, rather than shareholders, manage the business and affairs of the corporation." *In re Citigroup Inc. Shareholder Deriv. Litig.,* 964 A.2d 106, 120 (Del. Ch. 2009) (internal quotation omitted). "[T]he right of a stockholder to prosecute a derivative suit is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation." *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993).

The demand requirement states that shareholder-derivative plaintiffs must first make a demand on the board of directors in all but the most "extraordinary" of circumstances. *See Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 96 (1991). Where, as here, the Plaintiffs are arguing that the required demand would be futile and is thus excused, courts consider whether if the facts pleaded, taken as true, show that the majority of the directors either: (1) "face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand"; or (2) "lack[] independence from someone who … would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand." *United Food & Com.*

5

*Workers Union v. Zuckerberg*, 262 A.3d 1034, 1058 (Del. 2021). The burden rests on the plaintiff to show that demand upon the board of directors at the time of the filing of the complaint would have been futile. *In re InfoUSA, Inc. Shareholder Litig.,* 953 A.2d 963, 985 (Del. Ch. 2007).

## III.    DISCUSSION

Defendants move to dismiss Plaintiffs' claims on the grounds that Plaintiffs have not made a demand on Tesla's Board and have not adequately pleaded futility of demand and, therefore, lack standing to bring their claims. Dkt. 46, at 9-10. Plaintiffs concede that they have "not made any demand on the present Board to institute [their] action because such a demand would be a futile, wasteful, and useless act" given that the "majority of the board faces a substantial likelihood of liability for misconduct" and "a majority of the board lacks independence" from Tesla founder and board member, Elon Musk. Dkt. 33, at 100-01, 105.

### A.    Whether a Majority of the Board Faces a Substantial Likelihood of Liability

Plaintiffs' complaint states that "a majority of the Board faces a substantial likelihood of liability for their misconduct" because they "breached their fiduciary duty of loyalty by consciously permitting, or otherwise failing to act, stop, and remedy the systemic discrimination, harassment, and retaliation at Tesla, despite numerous warnings and indications." *Id.* at 101. Tesla responds that Plaintiffs have not met their burden of demonstrating that a majority of the board faces a substantial likelihood of liability, because (1) Tesla's Certificate of Incorporation exculpates directors from liability for "all but breaches of fiduciary duty" requiring a bad faith

6

finding, and, in any event, (2) Plaintiffs have not adequately pleaded their claim for misconduct related to fostering a toxic workplace, nor their § 14(a) claim regarding false or misleading proxy statements. Dkt. 46, at 17, 24.

A substantial likelihood of liability can be demonstrated by pleading with particularity that a director or officer acted in bad faith or otherwise breached the fiduciary duty of loyalty. *In re Baker Hughes Inc. Merger Litig.*, No. 2019-0638-AGB, 2020 WL 6281427, at \*15 (Del. Ch. Oct. 27, 2020); *Gantler v. Stephens*, 965 A.2d 695, 708-09 (Del. 2009). Directors serve as guardians who are accountable for subjecting the company to "corporate traumas," including "business losses[] and innumerable other potential calamities." *La. Mun. Police Employees' Ret. Sys. v. Pyott*, 46 A.3d 313, 340 (Del. Ch. 2012), *rev'd on other grounds*, 74 A.3d 612 (Del. 2013) (noting "[t]he list of corporate traumas … is long and ever expanding …"). "Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith." *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006); *see Ryan v. Gifford*, 918 A.2d 341, 357 (Del. Ch. 2007) (fiduciary acts in bad faith when he fails to take action to protect corporate interests). Demand is, thus, futile where a "board consciously failed to act after learning about evidence of illegality—the proverbial 'red flag.'" *Pyott,* 46 A.3d at 341; *see Teamsters Loc. 443 Health Servs. & Ins. Plan v. Chou*, No. 2019-0816-SG, 2020 WL 5028065, at \*17 (Del. Ch. Aug. 24, 2020) (demand is futile where plaintiffs "plead particularized facts that [directors] knew of red flags, but acted in bad faith by consciously

7

disregarding their duty to address the misconduct"); *In re Massey Energy Co.*, No. 5430-VCS, 2011 WL 2176479, at *21 (Del. Ch. May 31, 2011) ("For fiduciaries of Delaware corporations, there is no room to flout the law governing the corporation's affairs.").

       1.    Exculpatory provision

As a preliminary matter, the undersigned must consider how the exculpatory provision in Tesla's Certificate of Incorporation affects the demand-futility analysis. According to Defendants, Plaintiffs face an additional obstacle in excusing demand based on the Director Defendants' potential liability: the exculpatory provisions contained in Tesla's Certificate of Incorporation. *See* Dkt. 46-1, at 10; *see also, e.g.*, *In re Baxter Int'l Inc. S'holders Deriv. Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995) ("The court may take judicial notice of the certificate in deciding a motion to dismiss."). Essentially, Defendants argue there is not a substantial likelihood of liability because the breaches for which the Defendant Directors could be found liable require bad faith, and Plaintiffs have failed to adequately plead that the Defendant Directors acted with bad faith. Dkt. 46, at 17, 24.

Where directors are protected by an exculpatory provision of the sort authorized by 8 Del. Ch. § 102(b)(7), the risk of liability is diminished; thus, to excuse demand, the complaint must contain particularized allegations of facts which allow the court to conclude that there is a substantial likelihood the challenged conduct falls outside the provision. *In re Baxter Int'l*, 654 A.2d at 1270. For example, in *In re Healthways, Inc. Derivative Litig re Healthways*, the court held, consistent with

Delaware law, the practical effect of the exculpatory provision in a company's Articles of Incorporation was to require the plaintiff to allege conduct that rises to the level of bad faith, intentional misconduct, or a knowing violation of law. No. M2009-02623-COA-R3-CV, 2011 WL 882448, at *4 (Tenn. Ct. App. Mar. 14, 2011). The court noted it would not excuse demand if the complaint states claims that arise solely out of the duty of care but may excuse demand where there are particularized allegations that the directors breached their duties of loyalty or good faith. *Id.*

To surmount the exculpatory provision, Plaintiffs must allege more than mere negligence or even gross negligence. *See McPadden v. Sidhu*, 964 A.2d 1262, 1274-75 (Del. Ch. 2008) (dismissing derivative claims against directors who were alleged only to have acted with gross negligence). Under Delaware law, where directors are exculpated, "a plaintiff must also plead particularized facts that demonstrate that the directors acted with scienter, *i.e.*, that they had 'actual or constructive knowledge' that their conduct was legally improper." *In re Citigroup*, 964 A.2d at 125 (quoting *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008)); *but see In re Think3, Inc.*, 529 B.R. 147, 183 (Bankr. W.D. Tex. 2015) (noting federal courts in Delaware, interpreting Delaware law, have held that corporate directors who assert an exculpatory provision defense under § 102(b)(7) are raising an "affirmative defense," and therefore, those corporate directors cannot obtain dismissal of duty of care claims under Rule 12(b)(6)).

With this law in mind, the undersigned considers whether there are particularized allegations in Plaintiffs' complaint which show a majority of the

Defendant Directors breached their duties of loyalty or good faith in connection with both the workplace-oversight claims and the SEC Rule 14(a) Proxy Statement claims.

### 2.    Discriminatory workplace oversight claims

Plaintiffs' complaint states that "Director Defendants abdicated their responsibility to exercise proper oversight of Tesla" by not addressing "systemic, discriminatory policies" and that "even when presented with widespread claims of sexual harassment and racial discrimination at its manufacturing facilities, E. Musk and the rest of the Board failed to address the misconduct." Dkt. 33, at 6, 87. Specifically, Plaintiffs raise the Board's review of the Company's compliance with both the Civil Rights Act of 1866 (prohibiting racial discrimination) and California Government Code § 12920 (prohibiting employment discrimination on account of race, national origin, sex, gender, or sexual orientation) as well as efforts to remediate non-compliance with law once reported. Dkt 33, at 18.

Plaintiffs' complaint alleges egregious acts of racial and sexist discrimination, harassment, and retaliation committed by HR representatives, managers, and employees at Tesla's Fremont, California factory, uncovered in part by the State of California's Department of Fair Employment and Housing ("DFEH") investigation. *Id.* at 21-82. However, the undersigned's review, for the sake of determining whether demand would have been futile, is limited to the extent to which Plaintiffs have adequately alleged that the majority of the Board faces a substantial likelihood of liability. Here, board liability arises only with respect to board-level review of

compliance with anti-discrimination laws, and remedial actions once Directors have been provided with sufficient notice of non-compliance.

Plaintiffs claim that Elon Musk faces liability because he personally "encouraged and permitted the pervasive culture of discrimination, harassment, and retaliation that exists at Tesla." *Id.* at 83. Plaintiffs characterize Musk as deeply involved with the day-to-day operations of Tesla's factories and state that he personally reviewed a Freemont factory employee's casefile related to his action against Tesla for racial and sexual harassment. *Id.* at 85. After reviewing the file, Musk reportedly stated that "change [was] needed." *Id.* Plaintiffs state that Musk, however, "reinforce[d] the status quo" and wrote to employees advising them: "in fairness, if someone is a jerk to you, but sincerely apologizes, it is important to be thick skinned and accept that apology." *Id.* Musk is also alleged to have "made multiple public statements that female complainants cite as [a] direct influence on the culture of sexual harassment that persisted at Tesla." *Id.* at 86. These public statements consist of Twitter posts containing sexual innuendo such as Musk's explanation that "Tesla's line of vehicles, the models S, 3, X, and Y, together spell out the word 'SEXY.'" *Id.* Complainants stated that these communications did not set a good example for factory workers who would repeat their contents. *Id.* at 86-87. Plaintiffs state that Musk "was well aware of the DFEH's investigation" and that he and other members of the Board signed a form disclosing that the DFEH had notified Tesla that "based upon its investigation it believed it had grounds to file a civil complaint." *Id.* at 84.

Plaintiffs do not address the remaining individual Board members' potential for liability, and instead generally allege that "the Board reviewed and permitted the unlawful [workplace discrimination] practices to continue" and "abdicated their responsibility to exercise proper oversight of Tesla." *Id.* at 87. For example, Plaintiffs state that in March 2019, Board members Robyn Denholm, Elon Musk, Kimbal Musk (Elon's brother), Brad Buss, Ira Ehrenpreis, Antonio Gracias, Linda Johnson Rice, James Murdoch, Lawrence J. Ellison, and Kathleen Wilson-Thompson were made aware of hundreds of alleged employee-relations issues at Tesla facilities in Fremont and in Nevada. *Id.* at 88. Then, in February 2020, Ehrenpreis, Denholm, Wilson-Thompson, Murdoch, Ellison, Gracias, Stephen Jurvetson, and Elon and Kimbal Musk received an update on Tesla's employee relations which further emphasized the need to address allegations of generalized and sexual harassment in order to reduce risk and costs associated with those issues. *Id.* at 89. The related presentation slide also contained a list of steps taken by Tesla, but allegedly did not suggest much in terms of systemic policy changes. *Id.* Plaintiffs further allege that the Defendant Directors received quarterly updates like these through 2021. *Id.* at 90. And Plaintiffs' point to increased regulatory scrutiny allegedly tied to claims of harassment and discrimination. *Id.* at 90-92.

Claims that defendant directors failed to adequately oversee corporate activities are commonly known as *Caremark* claims. *See In re Caremark Int'l Inc. Deriv. Litig.,* 698 A.2d 959 (Del. Ch. 1996). It is more difficult to plead demand futility for a *Caremark* claim than in any other type of derivative case. *Id.* at 967 (describing

a director oversight liability claim as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment"); *In re Citigroup*, 964 A.2d at 125 (noting director oversight claims "place an extremely high burden on a plaintiff"). Under Delaware law, to successfully plead demand futility for a *Caremark* claim like Plaintiffs', the shareholders "must allege with particularity facts that imply that the directors utterly failed to provide a corporate reporting system to permit board-level review of compliance with law, or that the directors were provided sufficient notice of corporate non-compliance with law such that their failure to remediate amounts to bad faith." *Teamsters Loc. 443*, 2020 WL 5028065, at *1. "Plaintiffs must identify what, if anything, in the course of [their] reviews or discussions should have been a 'red flag' to the [Board] triggering a duty to further investigate." *In re Dell Derivative Litig.*, No. 1:06-CA-839-SS, 2007 WL 9710279, at *6 (W.D. Tex. Oct. 9, 2007); *see Citigroup*, 964 A.2d at 128.

Here, Plaintiffs proceed via the second path of pleading demand futility under *Caremark*—that the directors were provided sufficient notice of corporate non-compliance with law such that their failure to remediate amounts to bad faith. Plaintiffs' pleadings as to sufficient notice and failure to remediate are based almost entirely on information received by the Board from Tesla's Employee Relations and Legal departments through regular presentations on employee relations complaints and regulatory investigations. However, regular reports to the Board are not red flags that might give rise to a bad faith inference. *City of Detroit Police & Fire Ret. Sys. on Behalf of NiSource, Inc. v. Hamrock*, No. CV 2021-0370-KSJM, 2022 WL 2387653, at

*17 (Del. Ch. June 30, 2022) (board knowledge of pipeline safety violations and a prior gas explosion not red flags of risk of another explosion); *Fisher on Behalf of LendingClub Corp. v. Sanborn*, No. CV 2019-0631-AGB, 2021 WL 1197577, at *11 (Del. Ch. Mar. 30, 2021) (board's receipt of thousands of complaints regarding technical bug was not a "red flag" of consumer protection violations). Further, Delaware law provides that directors are "fully protected in relying in good faith" on "information, opinions, reports or statements presented to the corporation by any of the corporation's officers or employees." 8 Del. C. § 141(e); *see also Citigroup*, 964 A.2d at 135 (directors may "rely[ ] in good faith on the opinions and statements of the corporation's officers and employees").

The undersigned finds that Plaintiffs have failed establish that a majority of the Defendant Directors face a substantial likelihood of liability as to Plaintiffs' *Caremark* claim related to oversight of corporate activities. Accordingly, Plaintiffs have not established that demand upon the Board as to that claim would have been futile, and, thus, have not met their burden as to demand futility on the discriminatory workplace oversight claim.

### 3. Proxy statement

Plaintiffs' SEC Rule 14(a) claim is that the Defendant Directors "knowingly or recklessly" issued a Proxy Statement "containing false statements regarding the culture of discrimination and harassment at Tesla." Dkt. 33, at 93, 95. The statement, in part, claimed "Tesla has designed our workplace and policies to provide all employees with a respectful and safe working environment by not tolerating any

discrimination, harassment, retaliation, or any other mistreatment at work, whether based on a legally protected status or otherwise." *Id.* at 93-94. Plaintiffs claim the statement is false, because, in fact, Tesla allegedly tolerated harassment and discrimination, and even encouraged it through its inaction, as demonstrated by the regulatory scrutiny mentioned above. *Id.* at 94. The alleged misstatements in the Proxy Statement led to the denial of two stockholder proposals regarding reporting on employee arbitration and "assigning responsibility for strategic oversight of human capital management to an independent Board-level committee … ensuring that Tesla's human capital issues remained undisclosed and unaddressed, further harming the Company." *Id.* at 93, 99.

Defendants argue that demand was not futile as to the Proxy Statement claim because there is no substantial likelihood of liability for violation of SEC Rule 14(a) because (1) Plaintiffs have failed to state a claim for violation of Rule 14(a) as a matter of law, and (2) Plaintiffs cannot establish that the Board acted in bad faith in issuing the statement. Dkt. 46, at 23. The questions before the undersigned are whether Plaintiffs have sufficiently pleaded their SEC Rule 14(a) claim and whether a majority of the Board faces a substantial likelihood of liability for the claim. Since the Defendant Directors will not face liability for the claim if Plaintiffs have not properly pleaded their claim, the inquiry must start at the sufficiency of pleading. If Plaintiffs have not sufficiently pleaded their claim, there is no need to examine whether a majority of the Board faces a substantial likelihood of liability.

An SEC Rule 14(a) claim requires Plaintiffs to show that: "(1) defendants misrepresented or omitted a material fact in a proxy statement; (2) defendants acted at least negligently in distributing the proxy statement; and (3) the false or misleading proxy statement was an essential link in causing the corporate actions." *In re Browning-Ferris Indus., Inc. S'holder Deriv. Litig.*, 830 F. Supp. 361, 365 (S.D. Tex. 1993), *aff'd*, *Cohen v. Ruckelshaus*, 20 F.3d 465 (5th Cir. 1994). Further, for a statement to be actionable under SEC Rule 14a-9, it must be "material." *See* 17 C.F.R. § 240.14a-9(a). A statement is material only if "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090 (1991) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

Plaintiffs must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." *Heinze v. Tesco Corp.*, 971 F.3d 475, 480 (5th Cir. 2020). "[V]ague allegations about the gestalt of a proxy statement will not suffice." *Id.* Plaintiffs first cite the following excerpt of the Proxy Statement as the basis of their claim:

> In the case of Tesla, our mission is to accelerate the world's transition to sustainable energy. Implicit in our mission is a mandate to not only follow the law, but to do the right thing. As we have pledged in our annual Impact Report, Tesla has designed our workplace and policies to provide all employees with a respectful and safe working environment by not tolerating any discrimination, harassment, retaliation, or any other mistreatment at work, whether based on a legally protected status or otherwise. Therefore, we reiterate that Tesla, its employees and its stockholders would be better served by continuing to execute on our mission and tangible workplace goals rather than devote attention and resources to reporting on an issue as to which the proponent has

16

inaccurately characterized the fundamental premise and which is a pretext for its narrowly-focused goal.

Dkt. 33, at 94.

Plaintiffs claim the statement was false because at the time the statement was issued, Tesla (1) tolerated and even encouraged harassment through its inaction, and (2) DFEH reported that Tesla's mandatory arbitration agreement policy was part of an effort "to avoid responsibility over its workers." *Id.* Plaintiffs next cite this excerpt from the Proxy Statement:

> The Board already has independent committees in place with oversight over the issues identified by the proponent. For example, the Compensation Committee of the Board plays a key role in overseeing human capital management at Tesla…. [T]he Compensation Committee reviews, considers and provides to management guidance related to workforce management, equity and inclusion, and compensation, recruiting and retention efforts for employees other than executive officers. As part of its broad oversight of Tesla's material risks and compliance burdens, the Audit Committee of the Board also regularly receives updates from and provides feedback to management relating to various workforce issues including environmental, health and safety incident metrics and enterprise risk assessments pertaining to human resources. As such, the responsibilities requested by the proponent for an independent board-level committee are already generally being performed by independent committees of the Board.

> Therefore, we believe we are already well-equipped to address human capital management issues, including with the support of an independent committee of the Board.

*Id.* at 95. Plaintiffs allege that these statements were "false and misleading" because: (1) the "Board's oversight over its human capital issues was inadequate"; (2) the Company was not, as it claimed, meaningfully adopting diversity, equity, and inclusion [DEI] principles into its corporate culture; (3) the Audit Committee and Compensation Committee were "failing to meaningfully address these issues despite

17

being repeatedly made aware of their scope and severity." *Id.* at 96. Plaintiffs further contend that despite its awareness of Tesla's human capital and employee relations issues, "the Board misleadingly recommended that stockholders vote against the proposal to institute a sorely needed independent Board-level committee that could focus solely on Tesla's rapidly growing human capital issues." *Id.*

Plaintiffs' claims concerning the Proxy Statement do not adequately plead the existence of actionable false or misleading statements. The statements identified by Plaintiffs are "are aspirational [and] incapable of objective verification." *In re KBR, Inc. Sec. Litig.*, No. CV H-17-1375, 2018 WL 4208681, at *6 (S.D. Tex. Aug. 31, 2018); *Kiger v. Mollenkopf*, No. 21-409-RGA, 2021 WL 5299581, at *3 (D. Del. Nov. 15, 2021) (statements about diversity goals are "inactionable puffery, as multiple courts have held"; applying Delaware law); *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 626 (S.D. Tex. 2018) (same); *see Heinze,* 971 F.3d at 480 (proxy statement describing investment return as "significant" held to be immaterial).

Further, Plaintiffs do not refute the majority of the content of the excerpted statements. For example, Plaintiffs don't refute that the Compensation Committee played a role in overseeing human capital management at Tesla, or that the Audit Committee regularly received updates from management, or that Board-level committees were performing duties related to the oversight of human capital management issues. Instead, Plaintiffs' arguments concerning the false or misleading nature of the statements is based on Plaintiffs' assessment that the Board's management of Tesla's human capital and employee relations issues was

"inadequate"; that the Board was not truly integrating DEI principles and that the Board was "failing to meaningfully" address the issues before it. Dkt. 33, at 97. Plaintiffs apparently take issue with the Board's estimation that its existing committees were "well equipped" or that Tesla would be "better served by continuing to execute on its mission" rather than initiating a new committee. *Id.* at 94-95. But Plaintiffs cite no authority to support the position that disagreement with the Board's characterization of its abilities rises to the level of false or misleading statements for the purposes of its Rule 14(a) claim. This is just the sort of "inactionable puffery" that courts have rejected as immaterial.

Without a viable claim alleging that the Proxy Statement was false or misleading, Plaintiffs are left with only a pure-omission theory that is untethered to any specific false or misleading representation in the statement. Such pure-omission claims are not cognizable. The text SEC Rule 14a-9 does not provide a freestanding cause of action to challenge any and all material omissions from proxy statements. Instead, it allows an omission-based claim only if the proxy statement "omits to state any material fact necessary in order to make the *statements therein* not false or misleading." 17 C.F.R. § 240.14a-9(a) (emphasis added). Without an affirmatively false or misleading statement "therein," there can be no claim. *See, e.g., Montanio v. Keurig Green Mountain, Inc.*, 237 F. Supp. 3d 163, 178 (D. Vt. 2017) ("Merely asking for more detail or background regarding a particular decision is insufficient."); *Greenthal v. Joyce*, No. 4:16-CV-41, 2016 WL 362312, at *5 (S.D. Tex. Jan. 29, 2016) ("Here, Plaintiff does not allege that the information in the proxy statement is

misleading; Plaintiff simply requests additional information."); *Hysong v. Encore Energy Partners LP*, No. 11-781, 2011 WL 5509100, at *8 (D. Del. Nov. 10, 2011) ("A plaintiff's desire to know information that may be material, as the plaintiff repeatedly seeks in his Complaint, is not enough to state a claim under Section 14(a) under ordinary pleading requirements."); *cf. Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp.*, 537 F.3d 527, 541-42 (5th Cir. 2008) (holding pure-omission claims likewise are not actionable under Section 10(b) of the 1934 Act and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5).

The undersigned finds that Plaintiffs have not adequately pleaded the existence of actionable false or misleading statements in the Board's Proxy Statement for the purposes of its SEC Rule 14(a) claim. Plaintiff's SEC Rule 14(a) claim should be dismissed. Accordingly, since Plaintiffs' have failed to adequately plead a violation of Rule SEC Rule 14(a), and the undersigned has recommended that the claim be dismissed, the undersigned finds that Plaintiffs cannot establish that a majority of the Board faces a substantial likelihood of liability for the purposes of demand futility. Plaintiffs have not met their burden of establishing demand futility on this prong.

## B.   Whether a Majority of the Board is Disinterested and Independent

Plaintiffs may nonetheless have a viable claim if the Court determines that a majority of the directors were interested or lacked independence at the time the suit was filed, such that the directors would have been incapable of making an impartial decision had Plaintiffs demanded they make a corporate claim. *Rales,* 634 A.2d at 932. If so, their interest would eliminate the requirement of a demand. *See Beam v.*

*Stewart*, 845 A.2d 1040, 1046 n.8 (Del. 2004) (stating for the court to find demand is futile due to director interest or lack of independence, a majority of the board of directors must be interested or lack independence). To be disinterested, "directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds*, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). "Such benefit must be alleged to be material to that director." *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002) (citing *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 363 (Del. 1993)). "Materiality means that the alleged benefit was significant enough 'in the context of the director's economic circumstances, as to have made it improbable that the director could perform her fiduciary duties to the … shareholders without being influenced by her overriding personal interest.'" *Id.* (quoting *In re Gen. Motors Class H Shareholders Litig.*, 734 A.2d 611, 617 (Del. Ch. 1999)).

"Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson,* 473 A.2d at 816. "A plaintiff may … challenge a director's independence by putting forward allegations that raise a reasonable inference that a given director is dominated through a 'close personal or familial relationship or through force of will,' or is so beholden to an interested director that his or her 'discretion would be sterilized.'" *In re InfoUSA,* 953 A.2d at 985 (quoting *Orman,* 794 A.2d at 25 n.50, and *Beam*, 845 A.2d at 1050, respectively). "To demonstrate that a

given director is beholden to a dominant director, plaintiffs must show that the beholden director receives a benefit 'upon which the director is so dependent or is of such subjective material importance that its threatened loss might create a reason to question whether the director is able to consider the corporate merits of the challenged transaction objectively.'" *Id.* (quoting *Telxon Corp. v. Meyerson,* 802 A.2d 257, 264 (Del. 2002)).

The Board at the time of filing of the complaint consisted of Elon and Kimbal Musk, Robyn Denholm, Ira Ehrenpreis, James Murdoch, Kathleen Wilson-Thompson, Hiromichi Mizuno, Antonio Gracias, Stephen Jurvetson, Brad Buss, Linda Johnson Rice, and Lawrence J. Ellison, totaling 12 individuals. Dkt. 33, at 7-13. Plaintiffs' complaint states that a majority of the board, specifically Elon and Kimbal Musk, Ehrenpreis, Ellison, Denholm, Mizuno, and Murdoch lack independence from Elon Musk, and that demand upon the board is therefore futile. *Id.* at 102-107.

Defendants' motion to dismiss attacked the alleged lack of independence for each of these board members. Dkt. 46, at 27-33. Plaintiffs did not respond to Defendants' arguments concerning the independence of Denholm, Mizuno, or Murdoch, but maintain there is "reason to doubt the independence of at least three directors." Dkt. 57, at 27. Plaintiffs' failure to respond to this argument amounts to a concession of these directors' independence. *In re LendingClub Corp. Derivative Litig.,* No. CV 12984-VCM, 2019 WL 5678578, at *17 (Del. Ch. Oct. 31, 2019) ("failing to assert argument" as to directors conceded independence). As there are now only

four directors (Elon and Kimbal Musk, Ellison, and Ehrenreich) whose interest and lack of independence are at issue, Plaintiffs cannot show that majority of the 12-person Board is interested or lacks independence making demand futile.

## IV.     RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendant Directors' Motion to Dismiss Plaintiffs' Verified Consolidated Derivative Complaint, Dkt. 46, and **DISMISS WITHOUT PREJUDICE** Plaintiffs' shareholder derivative lawsuit for breach of fiduciary duty and unjust enrichment related to the Board's management of issues related to discrimination, harassment, and retaliation for failure to make a demand. The undersigned **FURTHER RECOMMENDS** that the District Court **DISMISS WITHOUT PREJUDICE** Plaintiffs' SEC Rule 14(a) claims for failure to state a claim.

## V.     WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and,

except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED July 21, 2023.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE