# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| IN RE TESLA INC. STOCKHOLDER DERIVATIVE LITIGATION | Lead Case No.: 1:22-cv-00592-DAE<br><br>(Consolidated with Case No. 1:22-cv-00611-DAE) |
| This Document Relates To:<br><br>All Cases | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTION TO THE
REPORT AND RECOMMENDATION TO THE HON. DAVID A. EZRA**

**TABLE OF CONTENTS**

INTRODUCTION ………………………………………………………………………….. 1

ARGUMENT ……………………………………………………………………………… 2

I.   ELON MUSK DOES NOT FACE A SUBSTANTIAL LIKELIHOOD OF LIABILITY …………………………………………………………………….... 3

    A.   Judge Howell Correctly Held that Plaintiffs Cannot Allege that Mr. Musk Acted Disloyally towards Tesla …………………………………………… 3

    B.   Plaintiffs Cannot Circumvent Tesla's Exculpatory Clause by Claiming that Mr. Musk Was Acting as an Officer ………………………………….………. 5

    C.   Plaintiffs Fail to Allege that Mr. Musk Breached His Duty of Care …………. 6

        1.   Plaintiffs Cannot Plead that Mr. Musk Failed in His Oversight Responsibilities ……………………………………………………….… 6

        2.   Plaintiffs Fail to Allege Mr. Musk Breached Section 14(a) of the Exchange Act ………………………………………………………….... 8

II.  BECAUSE NO DIRECTOR FACES A SUBSTANTIAL LIKELIHOOD OF LIABILITY, INDEPENDENCE IS IRRELEVANT …………………………………… 10

III. PLAINTIFFS' REQUEST FOR LEAVE TO AMEND IGNORES FIFTH CIRCUIT PRECEDENT AND THIS DISTRICT'S LOCAL RULES …………………………. 11

CONCLUSION …………………………………………………………………………… 13

## TABLE OF AUTHORITIES

Page(s)

Cases

*Albert v. Alex. Brown Mgmt. Servs., Inc.*,
    2005 Del. Ch. LEXIS 133 (Aug. 26, 2005) ....................................................................... 7, 8

*Ald Soc. LLC v. Google LLC*,
    2023 U.S. Dist. LEXIS 76283 (W.D. Tex. Mar. 17, 2023).......................................... 11, 12

*Arnold v. Soc'y for Sav. Bancorp, Inc.*,
    650 A.2d 1270 (Del. 1994)................................................................................................... 5

*In re Boeing Co. Deriv. Litig.*,
    2021 Del. Ch. LEXIS 197 (Sept. 7, 2021)............................................................................ 4

*In re Cabot Oil & Gas Corp. Deriv. Litig.*,
    596 F. Supp. 3d 755 (S.D. Tex. Mar. 31, 2022) ................................................................... 6

*In re Cap. One Deriv. S'holder Litig.*,
    979 F. Supp. 2d 682 (E.D. Va. 2013)................................................................................... 6

*Cruz v. Compu-Link Corp.*,
    2023 U.S. Dist. LEXIS 122919 (S.D. Tex. May 9, 2023).................................................. 13

*Desimone v. Barrows*,
    924 A.2d 908 (Del. Ch. 2007)...............................................................................................4

*Diaz v. Tesla, Inc. d/b/a Tesla Motors, Inc.*,
    No. 3:17-cv-06748-WHO (N.D. Cal. May 9, 2023), ECF No. 479...................................12

*In re Dow Chem. Co. Deriv. Litig.*,
    2010 Del. Ch. LEXIS 2 (Jan. 11, 2010)................................................................................4

*Erie County Emps. Ret. Sys. v. Isenberg*,
    2012 U.S. Dist. LEXIS 105519 (S.D. Tex. July 30, 2012).......................................... 11, 12

*Freuler v. Parker*,
    803 F. Supp. 2d 630 (S.D. Tex. 2011), *aff'd*, 517 Fed. App'x 227 (5th Cir. 2013).............3

*Goodwin v. Live Ent., Inc.*,
    1999 Del. Ch. LEXIS 5 (Jan. 22, 1999), *aff'd*, 741 A.2d 16 (Del. 1999)........................... 5

*Guitierrez v. Logan*,
    2005 U.S. Dist. LEXIS 51543 (S.D. Tex. Aug. 31, 2005)....................................................1

*In re KBR, Inc. Sec. Litig.*,
    2018 U.S. Dist. LEXIS 221137 (S.D. Tex. Aug. 31, 2018) ................................................. 8

*Lee v. Fisher,*
    70 F.4th 1129, 1135 (9th Cir. 2023) ..................................................................................... 9

*Marchand v. Barnhill*,
    212 A.3d 805 (Del. 2019) ..................................................................................................... 4

*In re McDonald's Corp. S'holder Deriv. Litig.*,
    289 A.3d 343 (Del. Ch. 2023) .............................................................................................. 6

*Okla. Firefighters Pension & Ret. Sys. v. Corbat*,
    2017 Del. Ch. LEXIS 848 (Dec. 18, 2017) .......................................................................... 4

*Ontario Provincial Council of Carpenters' Pension Tr. Fund v. Walton*,
    2023 Del. Ch. LEXIS 92 (Apr. 26, 2023) ......................................................................... 4, 7

*In re Oracle Corp. Deriv. Litig.*,
    2011 U.S. Dist. LEXIS 129765 (N.D. Cal. Nov. 9, 2011) ............................................ 10, 11

*Round Rock Indep. Sch. Dist. v. Amy M.*,
    2022 U.S. Dist. LEXIS 181924 (W.D. Tex. Aug. 22, 2022) (Ezra, J.) .............................. 10

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) .................................................................................................. 3, 7

*United Food & Commer. Workers Union v. Zuckerberg*,
    262 A.3d 1034 (Del. 2021) ............................................................................................. 2, 10

*U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc.*,
    336 F.3d 375 (5th Cir. 2003) .............................................................................................. 11

Rules

W.D. Tex. Loc. R., App'x C, R. 4(b) ................................................................................................ 4

W.D. Tex. Loc. R. CV-7(b) ............................................................................................................ 11

Other Authorities

Tesla Form 8-K, at Exh. 3.2 at Art. XI, SEC (Feb. 1, 2017), https://www.sec.gov/
Archives/edgar/data/1318605/000156459017000802/tsla-ex32_8.htm ......................................... 9

Tesla Form 10-Q, at 20, SEC (July 24, 2023), https://www.sec.gov/Archives/edgar/data/
1318605/000095017023033872/tsla-20230630.htm ..................................................................... 12

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| ¶ _ or Complaint | Verified Consolidated Stockholder Derivative Complaint for Breach of Fiduciary Duty, Unjust Enrichment, and Violation of Securities Law, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-LY (W.D. Tex. Sept. 6, 2022), ECF No. 33. |
| DFEH | Department of Fair Employment and Housing[1] |
| Ex. _ | Exhibits to the Declaration of Gary Ewell in Support of Defendants' Motion to Dismiss Plaintiffs' Verified Consolidated Derivative Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-LY (W.D. Tex. Nov. 7, 2022), ECF No. 46-1 |
| MTD | Defendants' Motion to Dismiss Plaintiffs' Verified Consolidated Derivative Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-LY (W.D. Tex. Nov. 7, 2022), ECF No. 45 |
| Obj. | Plaintiffs' Objection to the Report and Recommendation, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. Aug. 4, 2023), ECF No. 68 |
| Opp. | Plaintiffs' Opposition to Defendants' Motion to Dismiss Verified Consolidated Derivative Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-LY (W.D. Tex. Jan. 13, 2023), ECF No. 57 |
| Reply | Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Verified Consolidated Derivative Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-LY (W.D. Tex. Feb. 17, 2023), ECF No. 62 |
| R&R | Report and Recommendation of the United States Magistrate Judge, No. 1:22-cv-00592-DAE (W.D. Tex. July 21, 2023), ECF No. 67 |
| Tesla or the Company | Tesla, Inc. |

---

[1] DFEH has been renamed the "Civil Rights Department" as of July 1, 2022.

## INTRODUCTION

Judge Howell got it right. Delaware law requires that this shareholder derivative lawsuit be dismissed. R&R at 23. Delaware law entrusts the running of a company to its elected board. MTD at 2. To displace the business judgment of the board, a shareholder faces a steep climb: it must show that demand would be *futile*, either because a majority of the board is self-interested or because they are controlled by someone who is. R&R at 5–6; MTD at 8.

Plaintiffs brought this lawsuit on a most extraordinary theory: that Tesla's Board knowingly ignored its duty of loyalty to the Company and knowingly allowed alleged discrimination to occur in one of Tesla's factories in California. *See* Obj. at 3. Judge Howell correctly held that such an assertion must be backed, as Delaware law requires, by particularized facts commensurate with the extraordinary theory Plaintiffs advance. R&R at 7–9; MTD at 9. But the facts, as pleaded, show the exact opposite. They reveal a Board that scrupulously ensured a system of internal controls and reporting within the Company, received periodic reports on compliance, and took measures to enhance the Company's response to any instances of discrimination. R&R at 18; MTD at 4–7, 9–11.

In their Objection, Plaintiffs concede that seven out of Tesla's eight directors at the time of this lawsuit were disinterested. Obj. at 6–8 (failing to argue that any director other than Elon Musk faces a substantial likelihood of liability). Instead, Plaintiffs argue that three directors were beholden to Elon Musk, who—at least in Plaintiffs' telling—breached his duty of loyalty to Tesla by failing to somehow prevent instances of discrimination that allegedly occurred years ago. *See* Obj. at 6.

Plaintiffs' latest theory is absurd. Apart from the fact that, as Tesla's largest shareholder, Mr. Musk has no incentive to knowingly harm the Company, Mr. Musk actually expressly condemned—and then took action to prevent—discrimination of any kind. MTD at 13 n.3. Plaintiffs' assertion that Mr. Musk's status as a Tesla officer exposes him to liability is equally

infirm: First, the argument fails because Plaintiffs do not allege any wrongdoing undertaken solely in Mr. Musk's role as officer (*see* i*nfra* at 5–6); and second, because Delaware law does not impose personal liability on CEOs for wrongful acts of employees at the company. *See* MTD at 12. In short, there is no basis to find that Mr. Musk breached any fiduciary duty to the Company he heads.

Plaintiffs also quibble about a counting error they claim Judge Howell made when considering the composition of Tesla's Board. But since no directors face any liability, the number of directors is irrelevant. Such miscounting would be a harmless error, easily remedied. Judge Howell's ultimate conclusion and recommendation should be upheld and this lawsuit dismissed. Further, because Plaintiffs fail to show how they could augment their deficient lawsuit, dismissal should be with prejudice.

## ARGUMENT

This shareholder derivative suit was brought without first making demand on the Board, as required by Delaware law. "'A cardinal precept' of Delaware law is 'that directors, rather than shareholders, manage the business and affairs of the corporation.'" *United Food & Commer. Workers Union v. Zuckerberg*, 262 A.3d 1034, 1047 (Del. 2021). The only exception to the demand requirement is if the shareholder can plead particularized facts to show that a majority of directors either (1) are self-interested because they "face[] a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand" or (2) "lack[] independence from" an interested party. MTD at 8; R&R at 5. Plaintiff has done neither.

Plaintiffs concede that a majority of Tesla's Board (seven out of eight directors) do not face a substantial likelihood of liability in connection with the Complaint's allegations. Obj. at 6; R&R at 14, 20. Instead, Plaintiffs argue, their failure to make demand should be excused because three directors are allegedly beholden to someone who does face a substantial likelihood of liability: Elon

-2-

Musk. Obj. at 6–7. As Judge Howell correctly concluded, Plaintiffs are wrong as a matter of law. R&R at 22–23. Pursuant to Judge Howell's recommendation, this lawsuit should be dismissed.

## I. ELON MUSK DOES NOT FACE A SUBSTANTIAL LIKELIHOOD OF LIABILITY

Plaintiffs' Objection is premised on the same error as their opposition to Tesla's motion to dismiss. *See* Reply at 2. Their entire case revolves around the purported personal liability of Elon Musk. Obj. at 6–7. Plaintiffs blame Mr. Musk for alleged events he did not control, and in fact actively condemned and sought to remedy. MTD at 13–14 & n.3; Reply at 7–9. Plaintiffs are unable to meet the requirements of Delaware law and plead particularized facts showing that Mr. Musk acted disloyally towards Tesla. MTD at 11–15; Reply at 7–9. Without a showing of a substantial likelihood of liability for Mr. Musk, the Objection (and the Complaint) collapses.

### A. Judge Howell Correctly Held that Plaintiffs Cannot Allege that Mr. Musk Acted Disloyally towards Tesla

Tesla's corporate charter exculpates directors from liability for all but breaches of the duty of loyalty under Section 102(b)(7) of the Delaware General Corporation Law. MTD at 8–9; R&R at 8–9. To breach his duty of loyalty to Tesla, Mr. Musk would have to act in bad faith, inimically to the best interests of his own company. MTD at 9, 18. Such egregious conduct is rare and, with good reason, Delaware law places a heavy burden on a shareholder asserting such a claim. *Freuler v. Parker*, 803 F. Supp. 2d 630, 639 (S.D. Tex. 2011) (noting such a claim "is possibly the most difficult [claim] . . . in corporation law upon which a plaintiff might hope to win a judgment"), *aff'd*, 517 Fed. App'x 227 (5th Cir. 2013); *accord Stone v. Ritter*, 911 A.2d 362, 372–73 (Del. 2006); *see also* MTD at 9; R&R at 8–9.

Judge Howell correctly concluded that Plaintiffs failed to allege that Mr. Musk breached his duty of loyalty to Tesla. R&R at 14. A breach of the duty of loyalty under Delaware law requires a "fail[ure] to act in the face of a known duty to act, thereby demonstrating a conscious disregard for

-3-

their responsibilities[.]" *Okla. Firefighters Pension & Ret. Sys. v. Corbat*, 2017 Del. Ch. LEXIS 848, at *45–46 (Dec. 18, 2017). Such breaches are established only in rare circumstances of serious and conscious wrongdoing. *See, e.g.*, *Marchand v. Barnhill*, 212 A.3d 805, 822 (Del. 2019) (board of an ice cream company knowingly failed to establish *any* food safety oversight, resulting in customer deaths); *In re Boeing Co. Deriv. Litig.*, 2021 Del. Ch. LEXIS 197, at *67–69 (Sept. 7, 2021) (board utterly failed to establish safety oversight and consciously ignored red flags, leading to two deadly airplane crashes); *Ontario Provincial Council of Carpenters' Pension Tr. Fund v. Walton*, 2023 Del. Ch. LEXIS 92, at *97–98, 121–24 (Apr. 26, 2023) (board knowingly failed to comply with DEA settlement and continued opioid sales practices in violation of the Controlled Substances Act).

Plaintiffs' allegations fall well short of this standard, as Judge Howell recognized. R&R at 12–14. The Objection does nothing to change that. The Objection's allusion to "[t]he collective weight" of Plaintiffs' allegations, Obj. at 6–7, fails to "specifically identify" their reasons for challenging Judge Howell's Report and Recommendation, as required in this District. W.D. Tex. Loc. R., App'x C, R. 4(b). Nor can Plaintiffs allege or explain *why* Mr. Musk would act disloyally to Tesla. Mr. Musk is the largest shareholder of Tesla, its public face, and its driving force. His "interests are aligned with [Tesla] and presumably [he] is able to make decisions in the best interests of the company." *In re Dow Chem. Co. Deriv. Litig.*, 2010 Del. Ch. LEXIS 2, at *30, 33 (Jan. 11, 2010) ("[W]here a director is beholden to the *company* there is no reason to doubt her loyalty to that company[.]") (emphasis in original). Any injury to Tesla—and by extension, its stockholders—would be an injury to Mr. Musk. *See Desimone v. Barrows*, 924 A.2d 908, 946 (Del. Ch. 2007) (because two directors owned about one-third of company stock, "it is difficult to infer any motive on their part to enrich Sycamore's executive officers at the expense of its stockholders"). Given Mr. Musk's holdings in Tesla, he would be the first one harmed by any action against the

Company. Plaintiffs have not properly objected to Judge Howell's recommendation, nor have they otherwise provided reason to doubt Mr. Musk's loyalty to Tesla.

### B. Plaintiffs Cannot Circumvent Tesla's Exculpatory Clause by Claiming that Mr. Musk Was Acting as an Officer

To circumvent the exculpatory clause of Tesla's charter, Plaintiffs argue that Mr. Musk also serves as an officer, and officers—unlike directors—also face liability for breaches of the duty of care. Obj. at 6–7. Plaintiffs are wrong. The Delaware Supreme Court has stated that "where a defendant is a director and officer, only those actions taken solely in the defendant's capacity as an officer are outside the purview of Section 102(b)(7)." *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1288 (Del. 1994) (citation omitted); *see also* Reply at 7. Nowhere in the Complaint, Opposition, or Objection do Plaintiffs "highlight any specific actions [Mr. Musk] undertook as an officer (as distinct from actions as a director)[.]" *Arnold*, 650 A.2d at 1288. Rather, Plaintiffs explicitly blend together allegations about Mr. Musk, arguing that "both [as] a director and [an] officer of Tesla," he faces liability for *the same set of purported conduct*. Obj. at 6.

Plaintiffs' only attempt to assert liability for actions undertaken (but not exclusively) as an officer is the allegation that "as an officer of Tesla" Mr. Musk "personally made statements directed at Tesla employees and the public at large that permitted or encouraged the culture of discrimination, harassment, and retaliation at the Company." ¶ 315. Yet Plaintiffs cannot explain how this amorphous statement is "distinct from actions [he took] as a director" such that Tesla's exculpation provision no longer applies. *Arnold*, 650 A.2d at 1288; *see also Goodwin v. Live Ent., Inc.*, 1999 Del. Ch. LEXIS 5, at *16 n.3 (Jan. 22, 1999) (exculpatory provision applied where, "[o]ther than cursorily asserting that [defendants] negotiated commercial transactions with Pioneer as officers not directors, Goodwin [did] not allege improper actions Burlage and Cushey took as officers, not directors."), *aff'd*, 741 A.2d 16 (Del. 1999); *In re Cap. One Deriv. S'holder Litig.*, 979 F. Supp. 2d

682, 692 (E.D. Va. 2013) (dismissing action when "plaintiffs have neither pled facts, nor forecasted facts, that would support an inference that [defendant] acted in bad faith or that he was acting *solely* in his capacity as an officer when he acted or failed to act as alleged" (emphasis in original)).

### C. Plaintiffs Fail to Allege that Mr. Musk Breached His Duty of Care

Plaintiffs also fail to allege a breach of the duty of care by Mr. Musk. "To state a care-based claim, a plaintiff would have to plead and later prove that the oversight failure resulted from gross negligence. For purposes of Delaware entity law, a showing of gross negligence requires conduct akin to recklessness." *In re McDonald's Corp. S'holder Deriv. Litig.*, 289 A.3d 343, 371–72 (Del. Ch. 2023). This is no easy matter: "Delaware entity law protects fiduciaries by requiring a greater showing for liability than what is required in other areas of civil law, as well as an ***even greater showing than*** what is required to obtain a conviction for ***criminal negligence***." *Id.* at 372 n.17 (emphasis added).

None of Plaintiffs' allegations of purported wrongdoing show Mr. Musk acted with gross negligence or recklessness in violation of his duty of care. They make two claims; each fails.

#### 1. Plaintiffs Cannot Plead that Mr. Musk Failed in His Oversight Responsibilities

First, Plaintiffs argue that Mr. Musk failed in his oversight responsibilities. Known as a *Caremark* claim, this cause of action demands that Plaintiffs allege either (1) "that the directors utterly failed to provide a corporate reporting system to permit board-level review of compliance with law," *or* (2) "that the directors were provided sufficient notice of corporate non-compliance with law such that their failure to remediate amounts to bad faith." *In re Cabot Oil & Gas Corp. Deriv. Litig.*, 596 F. Supp. 3d 755, 774 (S.D. Tex. Mar. 31, 2022) (citations omitted); MTD at 9. Plaintiffs concede that Tesla had ample internal controls. Obj. at 6; R&R at 13; MTD at 5–7. That leaves the second prong: that Mr. Musk allegedly ignored wrongdoing.

As an initial matter, as the Court of Chancery has repeatedly reiterated, a *Caremark* claim such as this can only be premised on bad faith conduct—not a mere breach of a duty of care. Vice Chancellor Laster recently emphasized this point, explaining that "a breach of the duty of oversight always derives from the duty of loyalty, with no room for care." *Walton*, 2023 Del. Ch. LEXIS 92, at *88. As such, "a breach of the duty of loyalty, such as action in bad faith, is a 'necessary condition to liability[]'" under either prong of *Caremark*. *Id*. (quoting *Stone*, 911 A.2d at 369–70). Plaintiffs ignore this requirement and wrongly state that they need only plead that Mr. Musk acted with "reckless indifference[.]" Obj. at 6–7. In doing so, they fail to adduce any particularized factual allegations of bad faith. MTD at 11-15; Reply at 7–9. As Vice Chancellor Laster underscored, and as Judge Howell correctly held, this is not enough. *Walton*, 2023 Del. Ch. LEXIS 92, at *87–88; R&R at 9.

Regardless of whether his actions are evaluated under the duty of care or duty of loyalty standard, Mr. Musk actively condemned the very wrongdoing of which Plaintiffs complain. That is the opposite of bad faith and the opposite of recklessness. Plaintiffs cannot explain, for example, how Mr. Musk's exhortation to Tesla's workforce that they shouldn't "ever intentionally allow someone to feel excluded, uncomfortable or unfairly treated[,]" and that they should "do what would make your parents proud[,]" Ex. 12 at 64, somehow shows him adopting a "devil-may-care attitude or indifference to duty amounting to recklessness." *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 Del. Ch. LEXIS 133, at *14 (Aug. 26, 2005).

Nor can Plaintiffs reconcile their portrait of Mr. Musk as a "nano-manager" with someone who was reckless as to his fiduciary duties. Opp. at 5. Plaintiffs' allegation that Mr. Musk "personally oversaw ground-level production line issues and managed production-level associates on the Fremont factory floor himself[,]" *id.*, stands in stark contrast to cases accepting allegations of a

breach of the duty of care.  For example, in *Albert*, Vice Chancellor Lamb credited allegations that the defendants breached their duty of care by having an "almost nonexistent" response to financial crisis and "meeting less than once a year," all while their organization was "faced with exceptional challenges, first by the sharply rising value of the securities that made up the Funds, and second by the rapid fall in value of those same securities." 2005 Del. Ch. LEXIS 133, at *19–20.  Yet even there—where the defendants took "almost *no* action over the course of several years to protect the unitholders' investments"—Vice Chancellor Lamb concluded that "the[] alleged facts d[id] (just barely) raise a duty of care claim."  *Id.* (emphasis in original).  As *Albert* illustrates, the duty of care under Delaware law is not a low bar that an officer can easily trip over.  A breach requires gross negligence or recklessness, neither of which Plaintiffs have established here.

## 2. Plaintiffs Fail to Allege Mr. Musk Breached Section 14(a) of the Exchange Act

Second, Plaintiffs also claim Tesla violated Section 14(a) of the federal Securities Exchange Act of 1934.  Obj. at 6; MTD at 15–19.  The statements they allege were false come from Tesla's annual Proxy.  ¶¶ 288, 292.  They are unremarkable and concern:

- Tesla's commitment to "do[ing] the right thing" and upholding principles of diversity, equity, and inclusion, *see* ¶¶ 288, 292; and
- "Board oversight over human capital issues."  ¶ 292.

As Judge Howell correctly held, the statements Plaintiffs challenge are "are aspirational [and] incapable of objective verification."  R&R at 18 (quoting *In re KBR, Inc. Sec. Litig.*, 2018 U.S. Dist. LEXIS 221137, at *16 (S.D. Tex. Aug. 31, 2018)); MTD at 16–17.  Plaintiffs' Objection fails to explain how Judge Howell erred in observing that "Plaintiffs cite no authority to support the position that disagreement with the Board's characterization of its abilities rises to the level of false or

misleading statements for the purposes of its Rule 14(a) claim." R&R at 19. Once again, Plaintiffs lack any authority to support their position. Nor do they plead what role, *if any*, Mr. Musk had in drafting those statements, or why he might have acted recklessly in doing so.

If Plaintiffs' Section 14(a) allegations seem half-hearted, it is because they are. Tesla's charter requires shareholder derivative lawsuits to be filed in the Delaware Court of Chancery.[2] To evade this requirement, Plaintiffs sought to plead a federal "jurisdictional hook" that would allow this lawsuit to be filed outside the scrutiny of the Court of Chancery. Because the Exchange Act confers exclusive jurisdiction of claims under the Act to federal courts, Plaintiffs asserted this token Section 14(a) claim.

Such tactics have been recently rejected by the Ninth Circuit Court of Appeals. In *Lee v. Fisher*, a three-judge panel and then an *en banc* panel both upheld dismissal of a derivative Section 14(a) claim that the shareholder filed in federal court in violation of the defendant company's Delaware Court of Chancery exclusive forum selection provision. 70 F.4th 1129, 1135 (9th Cir. 2023) (en banc). The Court rejected the argument that such a provision is unenforceable under federal law, holding that "because [the plaintiff's] action to enforce the substantive obligations imposed by § 14(a) and Rule 14a-9 can be brought as a direct action, there is no basis for her argument that [the] forum-selection clause (which, by its terms, has no impact on direct actions) effects a functional waiver of compliance" with the federal securities laws. *Id*. at 1140. In fact, the Ninth Circuit expressed significant skepticism that Section 14(a) claims can even be pleaded as a derivative claim. *Id.* at 1149 (observing that "the Supreme Court's jurisprudence has evolved in a way that calls into question [federal] derivative § 14(a) actions" in part because "the Court now

---

[2] *See* Tesla Form 8-K, at Exh. 3.2 at Art. XI, SEC (Feb. 1, 2017), https://www.sec.gov/Archives/edgar/data/1318605/000156459017000802/tsla-ex32_8.htm (exclusive forum provision of Amended & Restated Bylaws of Tesla).

looks to state law rather than federal common law to fill in gaps relating to federal securities claims, and under Delaware law, a § 14(a) action is direct, not derivative.").

In short, Plaintiffs fail to plead that Mr. Musk faces any substantial likelihood of liability either for breach of fiduciary duty under Delaware law or under Section 14(a).

## II.   BECAUSE NO DIRECTOR FACES A SUBSTANTIAL LIKELIHOOD OF LIABILITY, INDEPENDENCE IS IRRELEVANT

Plaintiffs also complain that Judge Howell miscounted the directors on Tesla's Board. Obj. at 4–5. This miscounting did not inform Judge Howell's ultimate conclusion and recommendation of dismissal. Under Delaware law, courts must determine whether a director "lack[s] independence from someone who . . . would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand." *Zuckerberg*, 262 A.3d at 1059. If no director faces a substantial likelihood of liability for any claim, then the question of independence is moot. *In re Oracle Corp. Deriv. Litig.*, 2011 U.S. Dist. LEXIS 129765, at *19 (N.D. Cal. Nov. 9, 2011) (dismissing complaint). Because Plaintiffs failed to allege that Mr. Musk is self-interested in the outcome of their claims, their arguments about directorial independence from him are irrelevant.

The miscounting of directors is therefore a harmless error and "does not . . . undermine the Magistrate Judge's ultimate recommendation[.]" *Round Rock Indep. Sch. Dist. v. Amy M.*, 2022 U.S. Dist. LEXIS 181924, at *8 (W.D. Tex. Aug. 22, 2022) (Ezra, J.) (adopting report and recommendation despite factual error). Moreover, this harmless error is easily remedied: following Judge Howell's statement that "Plaintiffs' complaint states that a majority of the board, specifically Elon and Kimbal Musk, Ehrenpreis, Ellison, Denholm, Mizuno, and Murdoch lack independence from Elon Musk, and that demand upon the board is therefore futile[,]" R&R at 22, this Court can replace the last paragraph with this statement from *Oracle*: "In the absence of a showing that one or more board members is disqualified as interested, there is no reason to evaluate whether any

remaining board member would be so beholden to that person or persons as to be unable to exercise independent judgment." 2011 U.S. Dist. LEXIS 129765, at *20 (dismissing complaint).

### III.     PLAINTIFFS' REQUEST FOR LEAVE TO AMEND IGNORES FIFTH CIRCUIT PRECEDENT AND THIS DISTRICT'S LOCAL RULES

Contrary to Plaintiffs' characterizations, in "the Fifth Circuit . . . leave to amend under Rule 15 is by no means automatic[.]" *Guitierrez v. Logan*, 2005 U.S. Dist. LEXIS 51543, at *34 (S.D. Tex. Aug. 31, 2005). Rather, "[t]he Fifth Circuit Court of Appeals has explained that a 'bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a).'" *Ald Soc. LLC v. Google LLC*, 2023 U.S. Dist. LEXIS 76283, at *15 (W.D. Tex. Mar. 17, 2023) (dismissing original complaint with prejudice) (quoting *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)); *Erie County Emps. Ret. Sys. v. Isenberg*, 2012 U.S. Dist. LEXIS 105519, at *33 (S.D. Tex. July 30, 2012) (dismissing original derivative complaint where plaintiffs made only "[a] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought"). "Plaintiff[s'] request for leave is just 'tacked' to the end of its opposition to [Tesla's] motion to dismiss and mirrors language the Fifth Circuit has rejected as a proper request for leave to amend." *Ald Soc.*, 2023 U.S. Dist. LEXIS 76283 at *15; Opp. at 30. Such a cursory request is insufficient in this Circuit.

Plaintiffs also request leave to amend in violation of Local Rule CV-7(b), which requires that "[w]hen a motion for leave to file a pleading, motion, or other submission is required, an executed copy of the proposed pleading, motion, or other submission shall be filed as an exhibit to the motion for leave." W.D. Tex. Loc. R. CV-7(b). Because Plaintiffs "fail[ed] to provide the Court with a proposed amended complaint or explain how the potential amendment would cure the defects identified in [Tesla's] motion[,]" *Ald Soc.*, 2023 U.S. Dist. LEXIS 76283, at *16, this Court has no

insight into *how* they would "address any perceived deficiencies identified by the Court." Obj. at 9.

It is not surprising that Plaintiffs are unable to articulate how they would remedy the deficiencies in their allegations. Plaintiffs have already "offered support for [their] theories in extensive briefing in opposition to Defendants' Motion to Dismiss" and attempted to state their claims in a 112-page complaint. *Isenberg*, 2012 U.S. Dist. LEXIS 105519, at *33–34 (denying leave to amend derivative complaint that the court described as "a well crafted and detailed pleading of 38 pages"). Nor are there new factual allegations for Plaintiffs to add. Plaintiffs have not received any additional corporate books and records from Tesla, and none of the legal proceedings they rely on have drawn the missing connection between Plaintiffs' allegations of wrongdoing and purported bad faith on the part of Tesla's directors. In *Diaz v. Tesla*, the only case on which Plaintiffs rely that has been tried, *see* ¶¶ 71–90, the damages awarded against Tesla were reduced from an initial $136.9 million (October 4, 2021) down to $15 million (April 13, 2022), and then further down to $3.175 million (April 3, 2023).[3] Tesla has since moved to reduce damages further, in line with constitutional limits on punitive damages. *See* Defendant Tesla, Inc.'s Motion Under Rule 59(e) to Alter or Amend the Judgment, *Diaz v. Tesla, Inc. d/b/a Tesla Motors, Inc.*, No. 3:17-cv-06748-WHO (N.D. Cal. May 9, 2023), ECF No. 479. The DFEH's civil complaint against Tesla remains pending and Tesla has filed a cross-complaint challenging the underlying investigation. Tesla 10-Q, at 20. Tesla had also engaged in mediation with the Equal Employment Opportunity Commission in relation to its assertions about the Company. *Id.* As such, "permitting Plaintiff[s] to amend [their] claims would be futile because even if Plaintiff[s] added more factual allegations, Plaintiff[s'] complaint would still fail to state a claim upon which relief can be granted." *Cruz v. Compu-Link Corp.*, 2023 U.S. Dist. LEXIS 122919, at *20 (S.D. Tex. May 9, 2023) (denying leave to dismiss

---

[3] Tesla Form 10-Q, at 20, SEC (July 24, 2023), https://www.sec.gov/Archives/edgar/data/1318605/000095017023033872/tsla-20230630.htm ("Tesla 10-Q").

original complaint).

## CONCLUSION

The Court should reject Plaintiffs' objections to Judge Howell's Report and Recommendation, deny Plaintiffs' request for leave to amend, and grant Defendants' motion to dismiss with prejudice.

Dated: August 18, 2023

Respectfully submitted,

/s/Gary Ewell
Gary Ewell (SBN: 06752800)
Alithea Z. Sullivan (SBN: 24072376)

EWELL, BROWN, BLANKE & KNIGHT LLP
111 Congress Avenue, Suite 2800
Austin, Texas 78701
Telephone: (512) 770-4000
Facsimile: (877) 851-6384
E-mail: gewell@ebbklaw.com
          asullivan@ebbklaw.com

/s/Boris Feldman
Boris Feldman *(pro hac vice)*
Doru Gavril *(pro hac vice)*
Jennifer Loeb *(pro hac vice)*
Rebecca Lockert *(pro hac vice)*
Olivia Rosen *(pro hac vice)*

FRESHFIELDS BRUCKHAUS DERINGER US LLP
855 Main Street
Redwood City, California 94063
Telephone: (650) 421-8200
Facsimile: (212) 277-4001
E-mail: boris.feldman@freshfields.com
          doru.gavril@freshfields.com
          jennifer.loeb@freshfields.com
          rebecca.lockert@freshfields.com

-14-

olivia.rosen@freshfields.com

*Attorneys for Defendants*

-15-

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of this motion upon each attorney of record and the original upon the Clerk of Court on this the 18th day of August, 2023.

/s/Boris Feldman
Boris Feldman (*pro hac vice*)