UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE TESLA INC. STOCKHOLDER DERIVATIVE LITIGATION | § § § | Lead Case No. 1:22-CV-00592-DAE |
| | § | (Consolidated with Case No. 1:22-CV-00611-DAE) |
| This Document Relates to: | § | |
| | § | |
| ALL ACTIONS. | § | |
| _____ | § § | |

ORDER ADOPTING IN PART, VACATING IN PART U.S. MAGISTRATE
JUDGE HOWELL'S REPORT AND RECOMMENDATION AND GRANTING
DEFENDANTS' MOTION TO DISMISS

Before the Court is U.S. Magistrate Judge Howell's Report and

Recommendation ("Report"), issued on July 21, 2023, concerning Defendants'

Motion to Dismiss.  (Dkt. # 67.)  Plaintiff Alan Janklow ("Plaintiff," and together

with Solomon Chau, "Plaintiffs")[1] filed objections on August 4, 2023.  (Dkt. # 68.)

Defendants responded to Plaintiff's objections on August 18, 2023.  (Dkt. # 69.)

The Court finds this matter suitable for disposition without a hearing.

After careful consideration, the Court—for the reasons that follow—**ADOPTS IN**

---

[1] Plaintiffs initially filed separate lawsuits: Chau v. Musk, et al., No. 1:22-cv-00592, and Janklow v. Musk, et al., No. 1:22-cv-00611.  On July 22, 2022, United States District Judge Lee Yeakel granted Plaintiffs' Unopposed Motion to Consolidate Related Actions and Appoint Co-Lead Counsel.  (Dkt. # 25.)  The live complaint is Plaintiffs' Verified Consolidated Stockholder Derivative Complaint.  (Dkt. # 33.) This case was later transferred to the undersigned on April 27, 2023.  (Dkt. # 66.)

**PART** and **VACATES IN PART** Judge Howell's Report and **GRANTS**

Defendants' Motion to Dismiss.  (Dkts. ## 67, 46.)

<u>BACKGROUND</u>

In this shareholder derivative lawsuit, Plaintiffs assert claims on

behalf of Tesla, Inc. ("Tesla") for breaches of fiduciary duty, unjust enrichment,

and violations of Section 14(a) of the Securities Exchange Act of 1934.  (Dkt. # 33

¶¶ 335–50.)  According to Plaintiffs, Tesla's Board of Directors (the "Board") and

executive officers "have known about, allowed, and even encouraged" a "toxic

workplace culture grounded in racist and sexist abuse and discrimination."  (<u>Id.</u>

¶¶ 3, 6.)  This has resulted in "financial harm and irreparable damage" to Tesla's

reputation, with "enormous and ongoing liability."  (<u>Id.</u>)  Numerous former Tesla

employees have filed suit against Tesla, and Tesla's treatment of its employees has

been the subject of investigations by California's Department of Fair Employment

and Housing ("DFEH") and the U.S. Equal Employment Opportunity Commission.

(<u>Id.</u> ¶¶ 4, 5.)  On February 9, 2022, DFEH filed a lawsuit against Tesla after its

three-year investigation "found that Black workers at Tesla are subjected to racial

slurs and discriminated against as to job assignments, discipline, pay, and

promotion."  (<u>Id.</u> ¶ 4.)

Nominal Defendant Tesla moves to dismiss Plaintiffs' Verified

Consolidated Stockholder Derivative Complaint under Federal Rule of Civil

Procedure 23.1 for failure to make a pre-litigation demand.  (Dkt. # 46.)

Defendants Elon Musk, Robyn Denholm, Kimbal Musk, Ira Ehrenpreis, James

Murdoch, Lawrence J. Ellison, Kathleen Wilson-Thompson, Hiromichi Mizuno,

Antonio J. Gracias, Stephen T. Jurvetson, Brad W. Buss, and Linda Johnson Rice

move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(6)

and 9(b) for the same reason.  (Id.)  Plaintiffs respond that a demand would have

been futile, and is therefore legally excused, because Plaintiffs have alleged

particularized facts that (1) at least half of the members of the Board at the time

litigation commenced face a substantial likelihood of liability, and (2) members of

the Board lack independence from Tesla director and officer Elon Musk.  (Dkt. #

57 at 9.)

Judge Howell issued a Report on July 21, 2023, recommending that

Defendants' Motion to Dismiss be granted.  (Dkt. # 67.)

## APPLICABLE LAW

I.    Standard of review for Magistrate Judge's conclusions

The Court must conduct a de novo review of any of the magistrate

judge's conclusions to which a party has specifically objected.  See 28 U.S.C.

§ 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which

objection is made.").  The objections must specifically identify those findings or

recommendations that the party wishes to have the district court consider.

Thomas v. Arn, 474 U.S. 140, 151 (1985).  A district court need not consider

"[f]rivolous, conclusive, or general objections."  Battle v. U.S. Parole Comm'n,

834 F.2d 419, 421 (5th Cir. 1987).  "A judge of the court may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the

magistrate judge."  28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de

novo review; the Court need only determine whether the Recommendation is

clearly erroneous or contrary to law.  United States v. Wilson, 864 F.2d 1219, 1221

(5th Cir. 1989).

II.    Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to

state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all

well pleaded facts as true, viewing them in the light most favorable to the

plaintiff.'"  United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d

343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d

191, 205 (5th Cir. 2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead

"enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

III.    Federal Rule of Civil Procedure 23.1(b)

In derivative actions, Rule 23.1(b) requires that the complaint be verified and:

> (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;
>
> (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack, and
>
> (3) state with particularity:
>
>> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
>>
>> (B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b). Because Rule 23.1 does not specify substantive standards, the particularity of a plaintiff's pleadings is determined by the standards in the state of the company's incorporation—here, Delaware. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 92–99, 108–09 (1991); (Dkt. # 33 ¶ 11).

Plaintiffs did not make a pre-suit demand in this case (Dkt. # 33 ¶ 307), so the question under Rule 23.1(b) is "whether demand is excused because there is a reasonable doubt that the directors could have properly responded to a demand." IBEW Loc. Union 481 Defined Contribution Plan & Tr. ex rel. GoDaddy, Inc. v. Winborne, No. 2022-0497-JTL, 2023 WL 5444317, at *12 (Del. Ch. Aug. 24, 2023) (citing United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg, 262 A.3d 1034, 1049 (Del. 2021)).

To determine whether demand would be futile, a court must ask, as to each claim and each director:

> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
>
> (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and
>
> (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.

Zuckerberg, 262 A.3d at 1059. "If the answer to any of the questions is 'yes' for at least half of the members of the demand board, then demand is excused as futile" for purposes of that claim. Id.

DISCUSSION

Judge Howell made the following findings in his Report: (1) Plaintiffs failed to establish that a majority of the Board faces a substantial likelihood of liability for the purposes of demand futility, and (2) Plaintiffs cannot show that a majority of the twelve-person Board is interested or lacks independence.  (Dkt. # 67.)

Plaintiff objects to Judge Howell's second finding, arguing that Judge Howell miscalculated the number of directors who were on Tesla's Board at the time the Complaint was filed.  (Dkt. # 68.)  According to Plaintiff, the relevant Board for purposes of assessing demand futility consisted of only eight directors: Elon Musk, Kimbal Musk, Robyn Denholm, Ira Ehrenpreis, Lawrence J. Ellison, Hiromichi Mizuno, James Murdoch, and Kathleen Wilson-Thompson.  (Id. at 5.) Plaintiff argues that the Complaint sufficiently alleged facts as to Elon Musk, Kimbal Musk, Lawrence J. Ellison, and Ira Ehrenpreis "to call into question their interestedness or independence for purposes of assessing a demand."  (Id. at 9.) But, because Judge Howell's Report "mistakenly describes a twelve-member Demand Board, the Report and Recommendation requires Plaintiff to allege demand futility for at least six directors" rather than four.  (Id. at 8.)

Plaintiff further asserts that the Complaint adequately alleges that Elon Musk, in his role as a director and officer of Tesla, "faces a substantial likelihood of liability for (1) his role in fostering and permitting the widespread culture of racial and sexual harassment, discrimination, and retaliation against Tesla employees; and (2) approving and issuing the misleading Proxy statements." (Id. at 9.)  Plaintiff claims to have sufficiently alleged facts demonstrating that Kimbal Musk, Lawrence J. Ellison, and Ira Ehrenpreis "cannot independently assess a demand" against Elon Musk.  (Id. at 10.)  Finally, Plaintiff requests leave to amend the Complaint should this Court grant Defendants' Motion to Dismiss in whole or in part.  (Id. at 11–12.)

Defendants respond that Plaintiffs "fail to plead that [Elon] Musk faces any substantial likelihood of liability for breach of fiduciary duty under Delaware law or under Section 14(a)."  (Dkt. # 69 at 15.)  And because Elon Musk does not face a substantial likelihood of liability for any of the claims, the miscounting of directors constitutes harmless error, according to Defendants.  (Id. at 15.)

I.     Whether at least half of the Board faces a substantial likelihood of liability

Plaintiffs do not make any specific objections to Judge Howell's finding that a majority of the Board does not face a substantial likelihood of liability.  Judge Howell determined that Plaintiffs (1) failed to establish that Tesla's

Board faces a substantial likelihood of liability as to Plaintiffs' <u>Caremark</u> claim related to oversight of corporate activities, and (2) failed to adequately plead the existence of false or misleading statements in the Board's Proxy Statement for the purposes of Plaintiffs' Section 14(a) claim.  (Dkt. # 67 at 6–20.)  Upon review, the Court finds no error in these conclusions.

As Judge Howell correctly noted, a provision in Tesla's Certificate of Incorporation exculpates Tesla's directors from liability for all but breaches of the duty of loyalty and thus affects the demand-futility analysis in this case.  (Dkt. # 67 at 8); <u>see</u> <u>In re Cornerstone Therapeutics Inc, S'holder Litig.</u>, 115 A.3d 1173, 1179 (Del. 2015) ("[P]laintiffs must plead a non-exculpated claim for breach of fiduciary duty against an independent director protected by an exculpatory charter provision, or that director will be entitled to be dismissed from the suit.").

A.    <u>Plaintiffs' *Caremark* claim</u>

Plaintiffs' Complaint alleges that "a majority of the Board faces a substantial likelihood of liability for their misconduct" because "defendants E. Musk, K. Musk, Mizuno, Denholm, Ehrenpreis, Ellison, Murdoch, and Wilson-Thompson breached their fiduciary duties of loyalty by consciously permitting or otherwise failing to act, stop, and remedy the systemic discrimination, harassment, and retaliation at Tesla, despite numerous warnings and indicators."  (Dkt. # 67 at 6; Dkt. # 33 ¶ 308.)

As explained below—and as Judge Howell noted in his Report—with the exception of Elon Musk, Plaintiffs did not address the individual Board members' potential for liability. "Instead, [Plaintiffs] generally allege[d] that 'the Board reviewed and permitted the unlawful [workplace discrimination] practices to continue' and 'abdicated their responsibility to exercise proper oversight of Tesla.'"  (Dkt. # 67 at 12) (quoting Dkt. # 33 ¶ 273)).

The Supreme Court of Delaware has explained that, under Caremark and its progeny, "a director must make a good faith effort to oversee the company's operations."  Marchand v. Barnhill, 212 A.3d 805, 820 (Del. 2019) (citing In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959, 970 (Del. Ch. 1996)).  Caremark claims can take two forms: a "prong one" claim arises where "the directors utterly failed to implement any reporting or information system or controls," and a "prong two" claim arises where "having implemented such a system or controls, the directors consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention."  In re Cabot Oil & Gas Corp. Derivative Litig., 596 F. Supp. 3d 755, 774–75 (S.D. Tex. 2022) (cleaned up).  For a "prong two" claim, a plaintiff must "plead particularized facts that the board knew of evidence of corporate misconduct—the proverbial 'red flag'—yet acted in bad faith by consciously disregarding its duty to address that misconduct."  Id. (citing

10

Teamsters Loc. 443 Health Servs. & Ins. Plan v. Chou, No. CV 2019-0816-SG, 2020 WL 5028065, at *17 (Del. Ch. Aug. 24, 2020)).

      Here, Plaintiffs assert a prong two claim, arguing that Tesla's Board, despite regular reports about the toxic workplace culture, "utterly failed to take meaningful action to institute change, to hold management accountable, or to ensure proper oversight." (Dkt. # 57 at 15.) As Judge Howell noted, "Plaintiffs' pleadings as to sufficient notice and failure to remediate are based almost entirely on information received by the Board from Tesla's Employee Relations and Legal departments through regular presentations on employee relations complaints and regulatory investigations." (Dkt. # 67 at 13.) The Court agrees with Judge Howell that Plaintiffs' allegations do not support a pleading-stage inference that the Board acted in bad faith.

      First, Delaware law provides that directors are "fully protected in relying in good faith" on "information, opinions, reports or statements presented to the corporation by any of the corporation's officers or employees." (Id. at 14) (citing 8 Del. C. § 141(e)). Second, the Court agrees with Defendants that Plaintiffs' characterization of the measures taken by the Board as "shallow" does not suffice—Plaintiffs must plead "particularized facts" showing that the Board acted in bad faith by consciously disregarding its duty to address misconduct, or, in other words, that the directors "acted in such an egregious manner that they would

11

face a substantial likelihood of liability for breaching their fiduciary duty of loyalty so as to disqualify them from applying disinterested and independent consideration to a stockholder demand." Reiter ex rel. Cap. One Fin. Corp. v. Fairbank, No. CV 11693-CB, 2016 WL 6081823, at *14 (Del. Ch. Oct. 18, 2016). Plaintiffs have not done so here.[2]

B.   Plaintiffs' Section 14(a) claim

The Court next reviews Judge Howell's determination that Plaintiffs have not adequately pleaded their claim under Section 14(a) of the Exchange Act and thus have not met their burden of establishing demand futility.

Section 14(a) prohibits the solicitation of proxies "in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest and for the protection of investors." 15 U.S.C. § 78n(a)(1). Rule 14a–9, in turn, makes it unlawful to issue any proxy statement "which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any

---

[2] Delaware law considers claims for unjust enrichment to be duplicative of claims for breach of fiduciary duty. See, e.g., Friedman v. Khosrowshahi, No. 9161-CB, 2014 WL 3519188, at *13 (Del. Ch. July 16, 2014) (not excusing demand for unjust enrichment claim because it "is derivative of the fiduciary duty claim"), aff'd, No. 442, 2015 WL 1001009 (Del. Mar. 6, 2015). Thus, Plaintiffs' claim for unjust enrichment will also be dismissed.

material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a–9.

A Section 14(a) claim requires Plaintiffs to show that: "(1) defendants misrepresented or omitted a material fact in a proxy statement; (2) defendants acted at least negligently in distributing the proxy statement; and (3) the false or misleading proxy statement was an essential link in causing the corporate actions." In re Browning-Ferris Indus., Inc. S'holder Deriv. Litig., 830 F. Supp. 361, 365 (S.D. Tex. 1993) (internal citations omitted).

Plaintiffs allege that "the Board put forth false and misleading statements in the 2021 Proxy and omitted material information necessary to make certain statements not misleading" while recommending "voting against two stockholder proposals meant to protect against and address workplace misconduct at Tesla." (Dkt. # 33 ¶ 286.) The Proxy Statement, which was filed with the U.S. Securities and Exchange Commission on August 26, 2021, stated that "[i]mplicit in [Tesla's] mission is a mandate to not only follow the law, but to do the right thing," and that Tesla "has designed [its] workplace and policies to provide all employees with a respectful and safe working environment by not tolerating any discrimination, harassment, retaliation, or any other mistreatment at work, whether based on a legally protected status or otherwise." (Id. ¶ 288.) Plaintiffs argue that these statements "misrepresented the true state of affairs at [Tesla] and omitted

13

material facts concerning the rampant and ongoing discrimination and retaliation at
Tesla."  (Dkt. # 57 at 33.)  Plaintiffs also contend that the statements in the Proxy
regarding Tesla's independent Board committees—the Compensation Committee
and the Audit Committee, which the Proxy said had "oversight over the [human
capital] issues identified" (Dkt. # 33 ¶ 292)—"were misleading given that they
spoke to the adequacy of the Board's existing responsibilities."  (Dkt. # 57 at 34.)

　　　　The Court finds no error in Judge Howell's determination that
Plaintiffs' claims regarding the 2021 Proxy Statement do not adequately plead the
existence of actionable false or misleading statements.  (Dkt. # 67 at 18.)  First,
multiple courts have held that statements about a Board's goals are "inactionable
puffery."  Kiger v. Mollenkopf, No. 21-409-RGA, 2021 WL 5299581, at *3 (D.
Del. Nov. 15, 2021) (collecting cases).  Second, "Plaintiffs' arguments concerning
the false or misleading nature of the statements [are] based on Plaintiffs'
assessment that the Board's management of Tesla's human capital and employee
relations issues was 'inadequate'; that the Board was not truly integrating DEI
principles and that the Board was 'failing to meaningfully' address the issues
before it."  (Dkt. # 67 at 18–19.)  But, as Judge Howell noted, Plaintiffs do not
provide authority supporting their position that disagreement with the Board's
business judgment adequately pleads false or misleading statements for a Section
14(a) claim.

14

For these reasons, the Court adopts Judge Howell's recommendation that Plaintiffs have not met their burden of establishing that a majority (or at least half) of the Board faces a substantial likelihood of liability for the purposes of demand futility.

II.     Whether certain members of the Board are interested or lack independence

The Court next reviews de novo Judge Howell's conclusion that Plaintiffs have not adequately pled that a majority of the Board is interested or lacks independence.  (Dkt. # 67 at 20.)  Again, when assessing demand futility, a court reviews whether a plaintiff has alleged particularized facts sufficient to raise a "reasonable doubt that a majority of the Board would be disinterested or independent in making a decision on a demand."  Rales v. Blasband, 634 A.2d 927, 930 (Del. 1993).  "In an even-numbered board, a plaintiff must show that at least half of the board was interested or not independent."  Klein v. Cook, No. 14-CV-03634-EJD, 2023 WL 3726500, at *8 (N.D. Cal. May 30, 2023) (citing In re Goldman Sachs Grp., Inc. S'holder Litig., 2011 WL 4826104, at *7 n.75 (Del. Ch. Oct. 12, 2011)).  Because Tesla's Board is even-numbered, Plaintiffs must allege particularized facts for at least half of the Board.

Plaintiff complains that Judge Howell's Report erroneously stated that the Board totaled twelve individuals at the time of the filing of the Complaint. (Dkt. # 68 at 7.)  According to Plaintiff, Defendants Antonio J. Gracias, Stephen T.

15

Jurvetson, Brad W. Buss, and Linda Johnson Rice left the Board before this lawsuit
and are therefore irrelevant to the Court's assessment of demand futility under
Delaware law.  (Id. at 7–8.)  "[D]emand is made against the board of directors at
the time of filing of the complaint.  It is that board, and no other, that has the right
and responsibility to consider a demand by a shareholder to initiate a lawsuit to
redress his grievances."  In re INFOUSA, Inc. S'holders Litig., 953 A.2d 963,
985–86 (Del. Ch. 2007) (citation omitted).

      Plaintiffs contend that they have adequately alleged demand futility as
to four members—Elon Musk, Kimbal Musk, Lawrence J. Ellison, and Ira
Ehrenpreis—of the eight-member Board.  (Dkt. # 68 at 9.)  According to Plaintiffs,
the Complaint sufficiently alleges that Elon Musk, as a director and officer of
Tesla, "faces a substantial likelihood of liability for (1) his role in fostering and
permitting the widespread culture of racial and sexual harassment, discrimination,
and retaliation against Tesla employees; and (2) approving and issuing the
misleading Proxy statements."  (Dkt. # 68 at 9.)  And Plaintiffs argue that because
of the "close personal, professional, and financial ties" of Kimbal Musk, Lawrence
J. Ellison, and Ira Ehrenpreis to Elon Musk, along with Elon Musk's "dominance
and control" of Tesla's Board, the three directors could not independently assess a
demand against Elon Musk.  (Id. at 10.)

16

Defendants concede that Judge Howell miscounted the number of directors on the Board for the purpose of assessing demand futility.  Defendants argue, however, that the miscounting of directors is a "harmless error" because Plaintiffs fail to allege that Elon Musk faces a substantial likelihood of liability for any claim, and thus arguments about directorial independence from him are irrelevant.  (Dkt. # 69 at 15.)

The Court agrees with Defendants that Plaintiff's arguments do not succeed because the Complaint fails to adequately allege that Elon Musk faces a substantial likelihood of liability for any claim.  "In the absence of a showing that one or more board members is disqualified as interested, there is no reason to evaluate whether any remaining board member would be so beholden to that person or persons as to be unable to exercise independent judgment."  In re Oracle Corp. Derivative Litig., No. C 10-3392 RS, 2011 WL 5444262, at *6 (N.D. Cal. Nov. 9, 2011) (citing Rales, 634 A.2d at 936)).  As already discussed, the Court agrees with Judge Howell that Plaintiffs did not adequately plead actionable false and misleading statements with respect to the 2021 Proxy Statement.  And as to Elon Musk's "role in fostering and permitting the widespread culture of racial and sexual harassment, discrimination, and retaliation against Tesla employees," Judge Howell's Report provides a helpful summary of Plaintiffs' allegations:

> Plaintiffs characterize Musk as deeply involved with the day-to-day
> operations of Tesla's factories and state that he personally reviewed a

17

Freemont factory employee's case [] file related to his action against
Tesla for racial and sexual harassment.  After reviewing the file, Musk
reportedly stated that "change [was] needed."  Plaintiffs state that
Musk, however, "reinforce[d] the status quo" and wrote to employees
advising them: "in fairness, if someone is a jerk to you, but sincerely
apologizes, it is important to be thick skinned and accept that apology."
Musk is also alleged to have "made multiple public statements that
female complainants cite as [a] direct influence on the culture of sexual
harassment that persisted at Tesla."  These public statements consist of
Twitter posts containing sexual innuendo such as Musk's explanation
that "Tesla's line of vehicles, the models S, 3, X, and Y, together spell
out the word 'SEXY.'"  Complainants stated that these communications
did not set a good example for factory workers who would repeat their
contents.  Plaintiffs state that Musk "was well aware of the DFEH's
investigation" and that he and other members of the Board signed a
form disclosing that the DFEH had notified Tesla that "based upon its
investigation it believed it had grounds to file a civil complaint."

(Dkt. # 67 at 11) (internal citations omitted).  Because Plaintiffs did not address the

remaining Board members' potential for liability, Judge Howell did not determine

whether Elon Musk faces a substantial likelihood of liability for any claim.

          This Court finds that Plaintiffs do not adequately allege that he does.

See generally In re Am. Int'l Grp., Inc., 965 A.2d 763 (Del. Ch. 2009)

(demonstrating the stringent requirements for such claims).  The case law cited by

Plaintiffs is readily distinguishable, and, without more, the Court cannot say that

Plaintiffs' allegations that Elon Musk did not set a good example and had

knowledge of DFEH's investigation rise to the level of a "substantial" likelihood of

liability.  As discussed below, Plaintiffs will be granted the opportunity to replead

their claim.

III.   <u>Leave to Amend</u>

"When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice" unless it is clear the defects are incurable.  <u>Freuler v. Parker</u>, 803 F. Supp. 2d 630, 635 (S.D. Tex. 2011) (citing <u>Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 329 (5th Cir. 2002)); <u>see also</u> <u>King v. Terwilliger</u>, No. H-12-2182, 2013 WL 708495, at *7 (S.D. Tex. Feb. 26, 2013) (granting a plaintiff leave to amend to comply with Rule 23.1(b)'s pleading standards in a shareholder derivative suit).  The Court finds that Plaintiffs should have the opportunity to amend their Complaint with the benefit of a dispositive ruling from the Court.  There are no allegations of undue delay, bad faith, or a dilatory motive, no previous failure to cure deficiencies, and no claim that amendment would cause undue prejudice to Defendants.  Defendants argue that amendment would be futile because "Plaintiffs have not received any additional corporate books and records from Tesla, and none of the legal proceedings they rely on have drawn the missing connection between Plaintiffs' allegations of wrongdoing and purported bad faith on the part of Tesla's directors." (Dkt. # 69 at 17.)  But Plaintiff "believes he will be able to provide further factual support and additional particularized allegations that address any perceived

19

deficiencies identified by the Court." (Dkt. # 68 at 12.)  The Court will grant

Plaintiffs the opportunity to do so.

CONCLUSION

For the reasons stated above, the Court **ADOPTS IN PART** and

**VACATES IN PART** U.S. Magistrate Judge Howell's Report and

Recommendation and **GRANTS** Defendants' Motion to Dismiss.  (Dkts. ## 67,

46.)  Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**.  Plaintiffs are

granted leave to file an amended complaint within **thirty (30) days** of the date of

this Order.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, September 15, 2023.

David Alan Ezra
Senior United States District Judge