**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| IN RE TESLA INC. STOCKHOLDER DERIVATIVE LITIGATION | Lead Case No.: 1:22-cv-00592-DAE<br><br>(Consolidated with Case No. 1:22-cv-00611-DAE)<br><br>**PUBLIC REDACTED** |
| This Document Relates To:<br><br>All Cases | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ………………………………………………………………….. 1

ARGUMENT ……………………………………………………………………… 2

  I.  PLAINTIFFS' THIRD COMPLAINT FAILS TO ADD ANY PARTICULARIZED FACTUAL ALLEGATIONS OF BAD FAITH …………………………………… 2

  II.  THE THIRD COMPLAINT CONCEDES SEVEN DIRECTORS ARE DISINTERESTED AND FAILS TO ALLEGE THAT MR. MUSK IS NOT ………..…..3

    A.  No Substantial Likelihood of Liability for Mr. Musk as a Director …………………. 4

    B.  No Substantial Likelihood of Liability for Mr. Musk as an Officer …………………. 9

    C.  No Substantial Likelihood of Liability for a Section 14(a) Claim …………………. 12

  III. NONE OF TESLA'S DIRECTORS LACKS INDEPENDENCE ……………………… 13

    A.  Mr. Musk Does Not Control Tesla ………………………………………………..14

    B. Tesla's Two New Directors Are Also Not Beholden to Musk ……………………… 15

CONCLUSION …………………………………………………………………….18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Affiliated Computer Servs. S'holders Litig.*,
  2009 Del. Ch. LEXIS 35 (Feb. 6, 2009) ................................................................. 14

*In re Am. Apparel, Inc.*,
  2015 U.S. Dist. LEXIS 191466 (C.D. Cal. Apr. 28, 2015) .................................... 16

*Arnold v. Soc'y for Sav. Bancorp, Inc.*,
  650 A.2d 1270 (Del. 1994) ...................................................................................... 9

*Bartlinski v. Sanchez*,
  39 F. Supp. 3d 862 (S.D. Tex. 2014) ....................................................................... 8

*Beam v. Stewart*,
  845 A.2d 1049 (Del. 2004) ..................................................................................... 15

*Beam v. Stewart*,
  833 A.2d 961 (Del. Ch. 2003) ................................................................................ 15

*Binning v. Gursahaney*,
  2016 Del. Ch. LEXIS 70 (May 6, 2016) ................................................................. 5

*Braddock v. Zimmerman*,
  906 A.2d 776 (Del. 2006) ...................................................................................... 14

*In re Browning-Ferris Indus., Inc. S'holder Deriv. Litig.*,
  830 F. Supp. 361 (S.D. Tex. 1993) ........................................................................ 13

*Buckley Fam. Tr. v. McCleary*,
  2020 Del. Ch. LEXIS 114 (Mar. 31, 2020) ........................................................... 10

*In re Citigroup Inc. S'holder Deriv. Litig.*,
  964 A.2d 106 (Del. Ch. 2009) ............................................................................ 4, 7

*Coates v. Heartland Wireless Commc'ns, Inc.*,
  100 F. Supp. 2d 417 (N.D. Tex. 2000) .................................................................. 12

*Cohen v. Ruckelshaus*,
  20 F.3d 465 (5th Cir. 1994) ................................................................................... 13

Page(s)

*Espinoza v. Dimon*,
   124 A.3d 33 (Del. 2015) .......................................................................................10

*Freuler v. Parker*,
   2012 U.S. Dist. LEXIS 34057 (S.D. Tex. Mar. 14, 2012),
   *aff'd*, 517 F. App'x 227 (5th Cir. 2013) ...............................................................3

*Freuler v. Parker*,
   803 F. Supp. 2d 630 (S.D. Tex. 2011) ..................................................................3

*Genworth Fin., Inc. Consol. Deriv. Litig.*,
   2021 Del. Ch. LEXIS 223 (Sept. 29, 2021) .........................................................11

*Goldfarb v. Barbier*,
   2012 U.S. Dist. LEXIS 200820 (W.D. Tex. Apr. 26, 2012) ..................................4

*In re Goldman Sachs Group, Inc. S'holder Litig.*,
   2011 Del. Ch. LEXIS 151 (Oct. 12, 2011) ...........................................................14

*Graybill v. Wells Fargo Bank, N.A.*,
   953 F. Supp. 2d 1091 (N.D. Cal. 2013) .................................................................3

*In re Intel Corp. Deriv. Litig.*,
   621 F. Supp. 2d 165 (D. Del. 2009) .......................................................................8

*J.P. Morgan Tr. Co. v. Fisher*,
   2021 Del. Ch. LEXIS 117 (June 14, 2021) ...........................................................10

*Kiger ex rel. Qualcomm Inc. v. Mollenkopf*,
   2021 U.S. Dist. LEXIS 220509 (D. Del. Nov. 15, 2021) ......................................3

*In re Kraft Heinz Co. Deriv. Litig.*,
   2021 Del. Ch. LEXIS 295 (Dec. 15, 2021) ...........................................................17

*In re Lendingclub Corp. Deriv. Litig.*,
   2019 Del. Ch. LEXIS 1347 (Oct. 31, 2019) .........................................................15

*Livermore v. Engles*,
   2011 U.S. Dist. LEXIS 8007 (N.D. Tex. Jan. 26, 2011) ........................................2

*In re Match Grp., Inc. Deriv. Litig.*,
   2022 Del. Ch. LEXIS 212 (Sept. 1, 2022) ...........................................................16

Page(s)

*In re McDonald's Corp. S'holder Derivative Litig.*,
    289 A.3d 343 (Del. Ch. 2023) ……......................................................................10

*McElrath v. Kalanick*,
    2019 Del. Ch. LEXIS 107 (Apr. 1, 2019) ...................................................... 15, 17

*Newman v. Kkr Phorm Invs., L.P.*,
    2023 Del. Ch. LEXIS 353 (Aug. 31, 2023) .......................................................... 16

*Norsworthy v. Houston Indep. Sch. Dist.*,
    2022 U.S. Dist. LEXIS 136820 (S.D. Tex. Aug. 2, 2022),
    *aff'd*, 70 F.4th 332 (5th Cir. 2023) ....................................................................13

*In re Oracle Corp. Deriv. Litig.*,
    2011 U.S. Dist. LEXIS 129765 (N.D. Cal. Nov. 9, 2011) …………………………… 13

*Owen v. Mayleben*,
    2020 Del. Ch. LEXIS 59 (Feb. 13, 2020) ...................................................... 16, 18

*Simons v. Brookfield Asset Mgmt.*,
    2022 Del. Ch. LEXIS 15 (Jan. 21, 2022) ..............................................................7

*Smith v. Carrillo*,
    2019 U.S. Dist. LEXIS 205836 (D. Del. Nov. 26, 2019) ................................. 12, 13

*Stream TV Networks, Inc. v. SeeCubic, Inc.*,
    250 A.3d 1016, 1032 (Del. Ch. 2020) ................................................................10

*UFCW & Participating Food Indus. Empls. Tri-State Pension Fund v. Zuckerberg*,
    250 A.3d 862 (Del. Ch. 2020) ...........................................................................16

*United Food & Commer. Workers Union v. Zuckerberg*,
    262 A.3d 1034 (Del. 2021) ................................................................ 11, 14, 18

*Vitellone v. Evans*,
    2013 U.S. Dist. LEXIS 179016 (S.D. Tex. Dec. 20, 2013) ................................. 13

*In re VMWare, Inc. S'holder Deriv. Litig.*,
    2023 U.S. Dist. LEXIS 47763 (N.D. Cal. Mar. 21, 2023) ................................... 15

*White v. Panic*,
    793 A.2d 356 (Del. Ch. 2000) ...........................................................................18

**Statutes**

8 Del. C. § 141(e) ..............................................................................................................7

**Other Authorities**

R. Franklin Balotti & Jesse A. Finkelstein, *Delaware Law of Corp. & Business Org.* § 4.19
    (Supp. 1992) ............................................................................................................9

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| ¶ __ | Declaration of Gary Ewell in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Consolidated Complaint |
| Ex. __ | Exhibits to the Declaration of Gary Ewell in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Consolidated Complaint |
| Individual Defendants | Defendants Elon Musk, Robyn Denholm, Kimbal Musk, Ira Ehrenpreis, James Murdoch, Lawrence J. Ellison, Kathleen Wilson-Thompson, Hiromichi Mizuno, Antonio J. Gracias, Stephen T. Jurvetson, Brad W. Buss, and Linda Johnson Rice |
| MTD | Defendants' Motion to Dismiss Plaintiffs' Verified Consolidated Stockholder Derivative Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. Nov. 7, 2022), ECF No. 45 |
| MTD Reply | Reply in Support of Defendants' Motion to Dismiss Plaintiffs' Verified Consolidated Stockholder Derivative Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. Feb. 17, 2023), ECF No. 62 |
| Order | Order Adopting in Part, Vacating in Part U.S. Magistrate Judge Howell's Report and Recommendation and Granting Defendants' Motion to Dismiss, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. Sept. 15, 2023), ECF No. 70 |
| R&R | Report and Recommendation of the United States Magistrate Judge, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. July 21, 2022), ECF No. 67 |
| SC ¶ __ or Second Complaint | Sealed copy of Verified Consolidated Stockholder Derivative Complaint for Breach of Fiduciary Duty, Unjust Enrichment, and Violation of Securities Law, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. Sept. 6, 2022), ECF No. 34 |

| | |
|---|---|
| TC ¶ __ or Third Complaint | Sealed copy of Verified Amended Consolidated Stockholder Derivative Complaint for Breach of Fiduciary Duty and Violation of Securities Law, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. Nov. 3, 2023), ECF No. 76 |
| Tesla or the Company | Tesla, Inc. |
| TSLA-Janklow __ | Bates-stamped documents in Tesla's books and records production to Plaintiffs pursuant to Section 220 of the Delaware General Corporation Law |

Nominal Defendant Tesla moves to dismiss Plaintiffs' Amended Consolidated Complaint pursuant to Federal Rules of Civil Procedure 23.1 for failure to make pre-litigation demand, and therefore lack of standing.  Defendant Elon Musk moves to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b) for failure to state a claim, for the same reasons.

## INTRODUCTION

Tesla's greatest asset is its people.  Without its employees designing, manufacturing, and delivering its innovative vehicles, Tesla would never meet its goal of building a greener, more sustainable future.  Everyday, more than 127,000 Tesla employees collaborate across six global factories to roll vehicles off the production line and onto customers' driveways.  In 2022 alone, those employees delivered more than 1.3 million EVs to customers and made the Tesla Model Y the best selling car in the world among *all* gas or electric models.  Ex. 1 at 7, 12; Ex. 2 at 20.

Tesla is committed to building a workplace that employees can be proud of.  That is why the Board and the Company have built internal controls to actively oversee the Company's efforts to stamp out harassment and discrimination.  MTD at 4-7, 9-11.  Plaintiffs concede this, dropping their claim that the Board's oversight mechanisms are inadequate.  They also concede that seven of eight directors face no substantial likelihood of liability under any of their theories, and that there is no basis for an unjust enrichment claim.

Nonetheless, Plaintiffs persist in this misguided lawsuit.  They reassert—with no new documents, no new witnesses, and no particularized factual allegations—that demand on the Board would be "futile."  They claim that the Board is somehow beholden to Elon Musk, and assert—without support, and against common sense—that Mr. Musk acted in bad faith against the best interest of Tesla by "permitting" acts of harassment or discrimination to take place at Tesla.

This latest theory is absurd: why would Tesla's largest shareholder want to hurt the Company

he has worked tirelessly to build?  Plaintiffs have no answer.  Instead they point to Mr. Musk's

personal leadership—including sleeping on the production floor and personally bringing production

machines back online—as reasons why he "should have known" about and presumably prevented

the incidents alleged in the complaint.  Mr. Musk's personal involvement in operations is laudable

and a model for many executives; it does not make him responsible for every action occurring over a

period of years in a factory of 5.3 million square feet with 22,000 employees.  These allegations are

even weaker than those this Court has already found deficient as a matter of law.  In sum, Plaintiffs'

Third Complaint adds nothing of substance.  Dismissal with prejudice is appropriate.

## ARGUMENT

**I.    PLAINTIFFS' THIRD COMPLAINT FAILS TO ADD ANY PARTICULARIZED FACTUAL ALLEGATIONS OF BAD FAITH**

Plaintiffs had an opportunity to amend their complaint, add new factual allegations, and

remedy their defective claims.  Instead, they simply repeated their existing pleadings, with the

additional conclusory "gloss" that "E. Musk and other members of the Board were put on notice" of

purported red flags of misconduct, and ignored those red flags in bad faith.  TC ¶ 84.[1]  But it is not

sufficient to "point[] to specific paragraphs in the new pleading that supposedly contain 'a plethora

of particularized facts' establishing demand futility," particularly where "a close examination of

those paragraphs reveals that [Plaintiffs] merely reallege[]" the same allegations.  *Livermore v.

Engles*, 2011 U.S. Dist. LEXIS 8007, at *8 (N.D. Tex. Jan. 26, 2011).

A redline of the Second and Third Complaints shows that Plaintiffs have merely removed,

rearranged, and repeated already rejected allegations.  *See* Ex. 3.  They have added no new

documents, no new confidential witnesses, and no new particularized facts showing bad faith.

---

[1] To conserve the Court's time, Defendants do not repeat the factual background of this case, with which the Court is familiar from prior pleadings.  *See* MTD at 2-7.

Where "[t]he factual allegations are unchanged" and "there is no new basis for [Plaintiffs'] claim," a court may "dismiss[] it again for the same reasons."  *Graybill v. Wells Fargo Bank, N.A.*, 953 F. Supp. 2d 1091, 1108 (N.D. Cal. 2013) (dismissing fraud allegations in amended complaint).

As with the Second Complaint, Plaintiffs' derivative claims "must meet stringent requirements of factual particularity" imposed by Delaware law and Federal Rule of Civil Procedure 23.1.  *Freuler v. Parker*, 803 F. Supp. 2d 630, 638 (S.D. Tex. 2011); MTD at 8.  Plaintiffs must establish standing for their claims by showing that "demand [on the Board] is excused because the directors are incapable of making an impartial decision regarding such litigation."  *Freuler*, 803 F. Supp. 2d at 636.  Plaintiffs can do so only by showing that a majority of directors either (1) are self-interested because they "face[] a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand" or (2) "lack[] independence from" an interested party. *Kiger ex rel. Qualcomm Inc. v. Mollenkopf*, 2021 U.S. Dist. LEXIS 220509, at *14-15 (D. Del. Nov. 15, 2021).  Plaintiffs' allegations fail to meet their burden.

## II.    THE THIRD COMPLAINT CONCEDES SEVEN DIRECTORS ARE DISINTERESTED AND FAILS TO ALLEGE THAT MR. MUSK IS NOT

The Third Complaint concedes that Plaintiffs' allegations are insufficient to establish a substantial likelihood of liability against seven of Tesla's eight directors, leaving only allegations against Elon Musk.  TC ¶ 14.  Even after narrowing its focus, the Third Complaint adds no new particularized factual allegations.  Instead, Plaintiffs "reiterate[] [the] same, insufficient, conclusory or erroneous allegations" against Mr. Musk alone.  *Freuler v. Parker*, 2012 U.S. Dist. LEXIS 34057, at *8-9 (S.D. Tex. Mar. 14, 2012), *aff'd*, 517 F. App'x 227 (5th Cir. 2013) (dismissing amended complaint where allegations were the same in substance as original complaint).  This Court has already concluded that Plaintiffs' allegations did not "rise to the level of a 'substantial' likelihood of liability."  Order at 18.  None of Plaintiffs' new or repeated allegations against Mr. Musk meet the

high bar of particularized factual allegations showing a substantial likelihood of liability.  Because Tesla's Certificate of Incorporation exculpates its directors from liability for all but breaches of the duty of loyalty (Ex. 4 at 242), Plaintiffs must "allege[] with particularity that [Mr. Musk] *knowingly* violated a fiduciary duty or failed to act in violation of a *known* duty to act, demonstrating a *conscious* disregard for [his] duties."  *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 125 (Del. Ch. 2009); MTD at 9.  As Judge Howell correctly observed, this requires Plaintiffs to allege that Mr. Musk had "'actual or constructive knowledge' that [his] conduct was legally improper." R&R at 9 (quoting *Citigroup*, 964 A.2d at 125).  They fail to do so.

Having limited its claims to Mr. Musk alone, the Third Complaint further abandons another key allegation: Plaintiffs admit that Tesla had proper internal controls.[2]  The remaining allegations merely repeat against Mr. Musk alone the same claims that had previously failed when alleged against the entire Board: (a) that Mr. Musk allegedly abandoned his oversight obligations, *i.e.*, a *Caremark* claim, and (b) that he violated Section 14(a) of the Exchange Act by signing a purportedly false proxy.  As this Court has already concluded, Plaintiffs' allegations fail to "plead 'particularized facts' showing that [Mr. Musk] acted in bad faith by consciously disregarding [his] duty to address misconduct[.]"  Order at 11.  Since no new factual allegations are pleaded, these claims fail again.

A.   **No Substantial Likelihood of Liability for Mr. Musk as a Director**

Plaintiffs reprise their failed *Caremark* claim against Mr. Musk, repeating that he purportedly "abdicated his responsibility as a director to exercise proper oversight of Tesla" by failing to respond to red flags of misconduct.  *Compare* TC ¶ 79, *with* SC ¶ 273.  This Court has already dismissed

---

[2] Plaintiffs' Third Complaint abandons the allegation that "the Board fail[ed] to maintain proper internal controls to ensure the Company's compliance with the law[.]"  SC ¶ 273; *see* Ex. 3 at 185. This concedes that they have no grounds for a *Caremark* violation on the basis of "an utter failure to attempt to assure a reasonable information and reporting system exists[.]"  *Goldfarb v. Barbier*, 2012 U.S. Dist. LEXIS 200820, at *17 (W.D. Tex. Apr. 26, 2012).  Plaintiffs also abandon their claim for unjust enrichment.  SC ¶¶ 343-46; *see* Ex. 3 at 226.

these allegations for failure to "plead 'particularized facts' showing that the Board," including Mr. Musk, "acted in bad faith by consciously disregarding its duty to address misconduct[.]"  Order at 11; *see* MTD at 11-15.  "[T]o the extent that [Plaintiffs'] allegations and arguments overlap with those addressed by this Court" in dismissing Plaintiffs' prior allegations against Mr. Musk and the rest of the Individual Defendants, this Court may "reject them as bases on which demand would have been futile."  *Binning v. Gursahaney*, 2016 Del. Ch. LEXIS 70, at *8-9 (May 6, 2016) (dismissing allegations where previous action alleging exactly the same facts had already been dismissed).  As for Plaintiffs' new and recast allegations, each fails to establish bad faith.

*Committee Meetings that Mr. Musk Did Not Attend.*  Based on information presented in meetings *that Mr. Musk did not even attend*, Plaintiffs theorize that Mr. Musk must have known about (and presumably overlooked in bad faith) a systemic culture of discrimination. For example, Plaintiffs allege that the Board—including Mr. Musk—received Investigations Updates throughout 2021.  TC ¶ 85.  But these updates were given to the *Audit Committee*, of which Mr. Musk is not a member.  The Audit Committee received ███████████████████ which included ████████ ████████████████████████ TSLA-Janklow 220_000798 (July 23, 2021, Audit Committee meeting minutes); TSLA-Janklow 220_000999 (Q2 2021 Investigations Update); TSLA-Janklow 220_000805 (October 19, 2021, Audit Committee meeting minutes noting ████ ██████████); TSLA-Janklow 220_001004 (Q3 2021 Investigations Update); TSLA-Janklow 220_001039 (January 25, 2022, Audit Committee meeting minutes noting ██████████); TSLA-Janklow 220_001009 (Q4 2021 Investigations Update).[3]  Even if Mr. Musk had attended those meetings and reviewed those updates, all that he would have seen is that Tesla's Legal and Employee Relations Departments actively investigated employee complaints, and—rather than

---

[3] Nowhere do Plaintiffs point to Board minutes or other evidence showing that these updates were otherwise presented to the full Board or to Mr. Musk specifically.

sweeping those complaints under the rug—substantiated them where warranted and reported to the Audit Committee on the outcomes.

      ***Board Materials Showing Remedial Efforts.***  Where Plaintiffs *do* identify Board meetings that Mr. Musk attended, they selectively quote Board materials, trying to give the incorrect impression that Mr. Musk overlooked "red flags."  The full documents readily show the opposite:

- Plaintiffs cite from *one half* of an Employee Relations Update slide (TC ¶ 80) and *ignore the other half*, which explains ███████████████████████████████ ████████ including informing the Board that ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ████████ TSLA-Janklow 220_000351; MTD at 14-15.

- Plaintiffs fail to mention a detailed explanation of the Company's ████████████████ ████████████████████████████████████████ ██████████████████████████████ TSLA-Janklow 220_000353; MTD at 10.

- Plaintiffs denigrate as "shallow" (TC ¶ 84) the efforts of the Company's Employee Relations Team, which included ████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████

TSLA-Janklow 220_000488; MTD at 12.[4]

- Plaintiffs also ignore that the Employee Relations team ███████████████████ ███████████████████████████████████████████████████████████████

TSLA-Janklow 220_000728; TC ¶ 86.

As Judge Howell correctly observed, "regular reports to the Board are not red flags that might give rise to a bad faith inference." R&R at 13. And, as this Court already noted in dismissing these same allegations[5] from Plaintiffs' Second Complaint, "Delaware law provides that directors are 'fully protected in relying in good faith' on 'information, opinions, reports or statements presented to the corporation by any of the corporation's officers or employees.'" Order at 11 (citing 8 Del. C. § 141(e)); *see* MTD at 12-13. Tesla's Board—including Mr. Musk— "rel[ied] in good faith on the opinions and statements" of Tesla's Employee Relations team describing efforts to address harassment and discrimination and requested further reporting from that team. *Citigroup*, 964 A.2d at 135. The Third Complaint does not demonstrate otherwise.

***Proxy Voting Recommendation.*** Plaintiffs unsuccessfully attempt to allege that Mr. Musk's and the Board's recommendation against certain shareholder proposals was an act of such bad faith that their business judgment must be set aside. TC ¶ 87. Instead of particularized allegations of knowing misconduct, Plaintiffs simply quote from the proposals and conclude that the shareholders must be right and the Board, of which Mr. Musk was just one member, must be wrong. *Id.* But Plaintiffs' disagreement with the Board does not nothing to establish directorial bad faith. *See Simons v. Brookfield Asset Mgmt.*, 2022 Del. Ch. LEXIS 15, at *30 (Jan. 21, 2022) ("mere disagreement" with a stock repurchase "does not give rise to a substantial likelihood of liability for

---

[4] Plaintiffs mistakenly cite to a version of this presentation given to the Nominating & Corporate Governance Committee, again a committee on which Mr. Musk does not sit. TC ¶ 83 ███████ ████████████████████.

[5] *Compare* SC ¶¶ 273-80, 282-85 *with* TC ¶¶ 79-88.

disloyalty or bad faith").

Tellingly, while faulting Mr. Musk for this recommendation (TC ¶ 278), Plaintiffs have abandoned the same claims against the other Board members (Ex. 3 at 191), highlighting the weakness of their claims. Such conclusory allegations do not "plead with particularity how [Plaintiffs] can overcome the presumption that in making the decision to send out the proxy, the directors 'acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Bartlinski v. Sanchez*, 39 F. Supp. 3d 862, 868 (S.D. Tex. 2014) (dismissing derivative claims where plaintiffs' "complaint does not create a reasonable doubt that the Board's actions were a valid exercise of business judgment").

**Employee Accounts of Misconduct.** The Third Complaint details employee accounts of harassment and discrimination, pasted from other publicly-filed complaints and news articles. TC ¶¶ 89-277. These accounts allege unacceptable behavior by and against Tesla employees and contractors—behavior that Mr. Musk and the Board have actively worked to address. *Supra* at 7. Plaintiffs' allegations do not establish that Mr. Musk willfully ignored systemic discrimination. MTD at 13-14. In 188 paragraphs, Plaintiffs mention Mr. Musk only twice: once to complain of what *others* said about his tweets (TC ¶¶ 249, 275) and once to allege that Mr. Musk acknowledged a former employee's lawsuit. TC ¶ 148. It is not enough to "catalog the . . . alleged wrongdoing, and then assert that the thickness of the catalog demonstrates that [the] conduct was so egregious and widespread that [Mr. Musk] certainly now must face at least a 'substantial likelihood' of personal liability for having ignored the 'red flags.'" *In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165, 175 (D. Del. 2009).

Having added no new particularized factual allegations of bad faith, Plaintiffs have given this Court no reason to conclude that Mr. Musk faces a substantial likelihood of liability, where the exact

same allegations failed against the entire Board of which Mr. Musk is just one member.

### B.    No Substantial Likelihood of Liability for Mr. Musk as an Officer

In addition to their inadequate claim that Mr. Musk breached his fiduciary duties as a

director, Plaintiffs also allege he faces a substantial likelihood of liability for purportedly breaching

his duties of loyalty and care as an officer.  Here too, Plaintiffs fall woefully short.

***Plaintiffs fail to allege a non-exculpated breach of the duty of loyalty against Mr. Musk.***

Under its Charter and Delaware law, Tesla exculpates Mr. Musk from all but violations of the duty of

loyalty *unless* Plaintiffs can make particularized allegations about actions he took "solely in [his]

capacity as an officer."  *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1288 (Del. 1994)

(citing R. Franklin Balotti & Jesse A. Finkelstein, *Delaware Law of Corp. & Business Org.* § 4.19, at

4-335 (Supp. 1992) ("where a defendant is a director and officer, only those actions taken solely in

the defendant's capacity as an officer are outside the purview of Section 102(b)(7)"); MTD Reply at

7.  Instead of delineating the distinction between his two roles, Plaintiffs simply assert that Mr. Musk

acted in both capacities.  *See* TC ¶¶ 6, 60, 62-64, 306.  But lacking any particularized factual

allegations, Plaintiffs cannot expect the Court to guess when Mr. Musk was acting as an officer and

when he was acting as a director.  Because Plaintiffs have "failed to highlight any specific actions

[Mr. Musk] undertook as an officer (as distinct from actions as a director) that fall within the two

pertinent exceptions to Section 102(b)(7)," Tesla's exculpation provision applies.  *Arnold*, 650 A.2d

at 1288.  Thus, Plaintiffs' allegations of Mr. Musk's bad faith conduct as an officer fail for the same

reasons as those about his conduct as a director.  *See supra* at 5-8.

Indeed, many of the allegations that Plaintiffs make against Mr. Musk concern conduct

squarely within his duties as a director: attending Board meetings (¶¶ 79-86), hearing management

updates (¶¶ 84-86), making recommendations regarding shareholder proposals (¶ 87), and signing

the Company's proxy (¶ 278). These actions are quintessentially those of a director of a corporation. *See, e.g.*, *Stream TV Networks, Inc. v. SeeCubic, Inc.*, 250 A.3d 1016, 1032 (Del. Ch. 2020) (individuals act as directors by attending board meetings "during which they receive[] privileged legal advice and confidential information" and "vote on corporate actions").

### *Plaintiffs also fail to allege a breach of the duty of care by Mr. Musk acting as an officer.*

"Under Delaware law, the standard of care applicable to the fiduciary duty of care of . . . a[n] officer is gross negligence." *Buckley Fam. Tr. v. McCleary*, 2020 Del. Ch. LEXIS 114, at *25 (Mar. 31, 2020). Delaware courts "ha[ve] defined gross negligence as 'conduct that constitutes reckless indifference or actions that are without the bounds of reason.'" *Id.* It "involves a devil-may-care attitude or indifference to duty amounting to recklessness." *J.P. Morgan Tr. Co. v. Fisher*, 2021 Del. Ch. LEXIS 117, at *42 n.5 (June 14, 2021). This standard "requir[es] a greater showing for liability than what is required in other areas of civil law, as well as an even greater showing than what is required to obtain a conviction for criminal negligence." *In re McDonald's Corp. S'holder Deriv. Litig.*, 289 A.3d 343, 372 (Del. Ch. 2023). Unsurprisingly given this high bar, Delaware Chief Justice Strine has observed that "[t]he burden to plead gross negligence is a difficult one[.]" *Espinoza v. Dimon*, 124 A.3d 33, 36 (Del. 2015). Plaintiffs do not meet their burden here.

Far short of supplying particularized factual allegations of extreme recklessness, Plaintiffs describe a CEO deeply invested in the success of Tesla and its employees. According to Plaintiffs, Mr. Musk "involves himself in the low-level details" and works hands-on to solve production-line problems. TC ¶ 66. They allege that as the CEO, he strives to "lead from the front lines," "move[s] . . . to wherever the biggest problem is in Tesla," and "look[s] for inefficiencies that could be stomped out." TC ¶¶ 68-69. Mr. Musk also uses his role to speak out against harassment and discrimination, communicating company-wide that employees must never "intentionally allow

someone to feel excluded, uncomfortable or unfairly treated" and must "consider[] how someone might feel who is part of a historically less represented group." Ex. 5 at 245.

Instead of alleging facts showing recklessness, Plaintiffs appear to fault Mr. Musk for lacking omniscience. MTD Reply at 7-8. But "Delaware courts routinely reject the conclusory allegation that because illegal behavior occurred, . . . [defendants] must have known so." *Genworth Fin., Inc. Consol. Deriv. Litig*., 2021 Del. Ch. LEXIS 223, at *35 (Sept. 29, 2021). Relying on the exact same allegations as this Court has already dismissed, Plaintiffs state that because Mr. Musk "was frequently on the floor of Tesla's Fremont factory" and even "sle[pt] on the factory floor," he must have been aware of discriminatory behavior. *Compare* TC ¶¶ 66-67, *with* SC ¶ 262. Yet Plaintiffs admit that 22,000 people work across the Fremont factory's *5.3 million* square feet. TC ¶ 16. How Mr. Musk had his eyes on all corners of the factory floor goes unexplained. They also fail to allege that Mr. Musk was aware of or involved in any of the accounts of harassment or discrimination that they recite. *See* TC ¶¶ 89-277. The closest they come is an allegation that Mr. Musk spoke with an employee (Plaintiffs does not allege about what) who was later fired. TC ¶ 148. Tesla takes discrimination and harassment seriously—as the Board's oversight demonstrates, *see supra* at 5-7—but it is not enough to list events and allege Mr. Musk must have known and should be personally liable for failing to stop them. *See supra* at 8.

Plaintiffs' theory would punish CEOs who involve themselves in the day-to-day operations of their companies. That turns American corporate law on its head. Officers should not be exposed to spurious claims of liability for going down to the factory floor, interacting with employees, and getting their hands dirty. That Mr. Musk operates from the production floor instead of the corner office is no reason to deviate from the "'cardinal precept' of Delaware law" that "directors, rather than shareholders, manage the business and affairs of the corporation." *United Food & Commer.*

*Workers Union v. Zuckerberg*, 262 A.3d 1034, 1047 (Del. 2021).

      **C.**      **No Substantial Likelihood of Liability for a Section 14(a) Claim**

Plaintiffs' Section 14(a) claim contains even fewer deviations from the Second Complaint than their *Caremark* claims, "mak[ing] it pretty clear," yet again, "that the Section 14(a) claims are asserted merely as a thinly-pled basis for bringing the case in federal court." *Smith v. Carrillo*, 2019 U.S. Dist. LEXIS 205836, at *2 n.1 (D. Del. Nov. 26, 2019) (dismissing claim); *see* Ex. 3 at 191-201. Other than deleting the other directors' names and changing the verb tenses, Plaintiffs' only amendments are to allege that Mr. Musk was "repeatedly apprised" of "worsening employee relations issues" and "employee complaints" through Board presentations, "directly managed production-level employees at the Fremont factory," and purportedly "personally addressed and dismissed the concerns of Tesla employees who chose to speak up about harassment, discrimination, and retaliation." TC ¶ 281; *see also* TC ¶¶ 285-87. Plaintiffs are correct on only one front, which—ironically—cuts *against* their claim: Mr. Musk *did* personally address concerns about harassment and discrimination when he reminded all Tesla personnel—in his own words—that employees must never "intentionally allow someone to feel excluded, uncomfortable or unfairly treated" and must "consider[] how someone might feel who is part of a historically less represented group." Ex. 5 at 245.

As to Plaintiffs' failure to plead the elements of a Section 14(a) claim, "[t]he pertinent allegations in the amended complaint are virtually unchanged from the [previous] complaint." *Coates v. Heartland Wireless Commc'ns, Inc.*, 100 F. Supp. 2d 417, 431 (N.D. Tex. 2000) ("adher[ing]" to its prior reasoning and "reject[ing]" plaintiff's new pleadings); *see* MTD at 15-19. Plaintiffs have provided no new particularized factual allegations that Mr. Musk "misrepresented or omitted a material fact in a proxy statement[;]" "acted at least negligently in distributing the proxy

statement[;]" or that "the false or misleading proxy statement was an essential link in causing the corporate actions[.]"  *In re Browning-Ferris Indus., Inc. S'holder Deriv. Litig.*, 830 F. Supp. 361, 365 (S.D. Tex. 1993), *aff'd*, *Cohen v. Ruckelshaus*, 20 F.3d 465 (5th Cir. 1994).  Nor do they provide any new allegations that Mr. Musk acted in bad faith, as required by Tesla's Certificate of Incorporation.  *Vitellone v. Evans*, 2013 U.S. Dist. LEXIS 179016, at *28-29 (S.D. Tex. Dec. 20, 2013) (plaintiff must plead "particularized factual allegations that 'support the inference that the [alleged] disclosure violation was made in bad faith, *knowingly or intentionally*'"); *see Carrillo*, 2019 U.S. Dist. LEXIS 205836, at *21-23 (requiring scienter for Section 14(a) claim).  As a result, this Court's conclusion that "Plaintiffs' claims regarding the 2021 Proxy Statement do not adequately plead the existence of actionable false or misleading statements" remains unchallenged.  Order at 14.

Even if this Court accepted Plaintiffs' allegations about what Mr. Musk supposedly knew, they have no bearing on this Court's existing conclusion "that statements about a Board's goals are 'inactionable puffery'" and that "Plaintiffs do not provide authority supporting the[] position that disagreement with the Board's business judgment adequately pleads false or misleading statements for a Section 14(a) claim."  Order at 14.  Because Plaintiffs "ha[ve] not added any allegations that cure the previously identified deficiencies," their Section 14(a) claim fails once more.  *Norsworthy v. Houston Indep. Sch. Dist.*, 2022 U.S. Dist. LEXIS 136820, at *9 (S.D. Tex. Aug. 2, 2022), *aff'd*, 70 F.4th 332 (5th Cir. 2023).

## III.     NONE OF TESLA'S DIRECTORS LACKS INDEPENDENCE

Because the Third Complaint fails to plead substantial likelihood of liability on the part of Mr. Musk, or any other director, the Court can stop its analysis here.  *In re Oracle Corp. Deriv. Litig.*, 2011 U.S. Dist. LEXIS 129765, at *19 (N.D. Cal. Nov. 9, 2011) ("there is no reason to evaluate" independence if plaintiffs fail to plead a substantial likelihood of liability for any director);

Order at 17.  As the Court noted in dismissing the Second Complaint, Plaintiffs' claims "do not succeed because the Complaint fails to adequately allege that Elon Musk faces a substantial likelihood of liability for any claim."  Order at 17.

But even if Plaintiffs *had* adequately alleged that Mr. Musk faces a substantial likelihood of liability, they still fail to plead that demand was futile.  They fail to plead particularized facts that any member of Tesla's Board—let alone the requisite three directors[6]—is "so beholden to [Mr. Musk] . . . that [their] discretion would be sterilized" in considering a demand.  *Zuckerberg*, 262 A.3d at 1060 (affirming dismissal).  The Third Complaint should be dismissed for this additional and separate reason.

### A.    Mr. Musk Does Not Control Tesla

The Second Complaint copies verbatim Plaintiffs' compilation of dated, conclusory allegations that attempt to portray Mr. Musk as controlling Tesla and, accordingly, its Board. *Compare* SC ¶¶ 321-24, *with* TC ¶¶ 307-10.  As before, "the mere allegation that a director is dominated and controlled [by Mr. Musk] does not raise a reasonable doubt as to his or her independence." *In re Affiliated Computer Servs. S'holders Litig.*, 2009 Del. Ch. LEXIS 35, at *31 (Feb. 6, 2009) (dismissing with prejudice).  Because nothing has changed, these allegations may be summarily dismissed.  MTD at 20-21.

---

[6] "The Rule 23.1 demand inquiry must be assessed by reference to the board in place at the time when the amended complaint is filed." *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006). For an even-numbered board, a plaintiff must show that at least half of its members were either interested or not independent.  *In re Goldman Sachs Group, Inc. S'holder Litig.*, 2011 Del. Ch. LEXIS 151, at *24 n.75 (Oct. 12, 2011) (dismissing with prejudice for failure to plead demand futility).  As of November 3, 2023, Tesla's Board comprised Elon Musk, Robyn Denholm, Ira Ehrenpreis, Joe Gebbia, James Murdoch, Kimbal Musk, JB Straubel, and Kathleen Wilson-Thompson.  Plaintiffs must plead that three of those directors are beholden to Mr. Musk.

### B.    Tesla's Two New Directors Are Also Not Beholden to Musk

Even if Mr. Musk somehow controlled Tesla, Plaintiffs must plead that a majority of Board members is beholden to him to render demand futile. *Beam v. Stewart*, 845 A.2d 1049, 1050 (Del. 2004) (affirming dismissal). Plaintiffs "fail[] to assert argument" against Mr. Murdoch and Ms. Wilson-Thompson, and thus concede their independence. *See In re Lendingclub Corp. Deriv. Litig.*, 2019 Del. Ch. LEXIS 1347, at *38 (Oct. 31, 2019) (dismissing complaint). Plaintiffs do not add a single new allegation against Mr. Kimbal Musk, Ms. Denholm, or Mr. Ehrenpreis. *Compare* SC ¶¶ 325, 326-29, 332, *with* TC ¶¶ 311, 312-15, 320. Those identical, flawed allegations are deficient for the reasons set forth in Defendants' first Motion to Dismiss. *See* MTD at 22-24. Accordingly, the Court can dispense with them outright. See *In re VMWare, Inc. S'holder Deriv. Litig.*, 2023 U.S. Dist. LEXIS 47763, at *17 (N.D. Cal. Mar. 21, 2023) (dismissing with prejudice; "[t]he SAC includes no new allegations regarding the interestedness or independence of these four defendants.").

The only new allegations in the Third Complaint target Tesla's two new directors, Mr. Gebbia and Mr. Straubel. These allegations contain "precious little investigation beyond perusal of the morning newspapers." *Beam v. Stewart*, 833 A.2d 961, 982 (Del. Ch. 2003) (dismissing complaint that "results in a waste of the resources" of the court). They try to elevate commonplace business activities as nefarious examples of impermissible collusion. Plaintiffs' overreaching highlights the weakness of their claims.

***Mr. Gebbia.*** Plaintiffs' failure to allege that Mr. Gebbia lacks independence from Mr. Musk is clear from the weakness of their assertions. First, they point to a Columbia University professor's social media speculation that Mr. Gebbia and Mr. Musk are "bros." TC ¶ 322. That conclusory assertion—besides being mere opinion and a vague one at that—says nothing about Mr. Gebbia's ability to impartially consider a demand. *McElrath v. Kalanick*, 2019 Del. Ch. LEXIS 107, at *49

(Apr. 1, 2019) (rejecting description "by parties unknown" that director was controlling stockholder's "confidant"); *In re Am. Apparel, Inc.* 2015 U.S. Dist. LEXIS 191466, at *68 (C.D. Cal. Apr. 28, 2015) (rejecting claim by Businessweek that directors were "confidants on the Board").

The same is true of Plaintiffs' claim that Mr. Musk congratulated Mr. Gebbia on his retirement *in a tweet*, two months before his appointment to Tesla's Board. TC ¶ 322. "It is both expected and customary for a chair and CEO to comment favorably on a new director who is joining the board. Nothing about the [tweet] suggests a relationship of a bias-producing nature." *UFCW & Participating Food Indus. Empls Tri-State Pension Fund v. Zuckerberg*, 250 A.3d 862, 894 (Del.Ch. 2020) (holding it was a "logical leap and not a reasonable inference" that Zuckerberg's Facebook post praising a new director indicated she was beholden to him). Even if Mr. Musk did play a role in Mr. Gebbia's decision to join Tesla's Board, "[t]he fact that a founder invited a director to join the company's board of directors, without more, does not support an inference that the director cannot exercise independent judgment in matters involving the founder." *Owen v. Mayleben*, 2020 Del. Ch. LEXIS 59, at *24 (Feb. 13, 2020); *see also Newman v. Kkr Phorm Invs., L.P.*, 2023 Del. Ch. LEXIS 353, at *12 (Aug. 31, 2023) (same; dismissing complaint).

Moreover, that Mr. Gebbia was a director of Airbnb *six years ago* when Mr. Musk was a director at SolarCity, and those two companies happened to do business together, fails to render Mr. Gebbia incapable of considering demand. TC ¶ 321. Nowhere do Plaintiffs "plead sufficient . . . facts" that this "attenuated business relationship threatens [Mr. Gebbia's] independence from [Mr. Musk]." *See In re Match Grp., Inc. Deriv. Litig.*, 2022 Del. Ch. LEXIS 212, at *42 (Sept. 1, 2022) (director was independent despite that her husband was employed at a law firm that was outside counsel for defendant company); *see infra* at 17-18.

Finally, even if unnamed "media reports" are correct that Mr. Musk and Mr. Gebbia text each other about Tesla business (TC ¶ 323), that suggests only their "good faith effort to oversee the Company's operations," as required by Delaware law, and as expected by shareholders.  Order at 10.  It is absurd to suggest that directors' independence is "sterilized" because they text each other about company business.  Indeed, one hopes they would.

**Mr. Straubel.**  Plaintiffs' allegations about Mr. Straubel are equally deficient.  That Mr. Straubel co-founded Tesla in 2004 (TC ¶ 317) does not "by itself raise a reasonable doubt of [his] independence." *Kalanick*, 2019 Del. Ch. LEXIS 107, at *52-53 (finding allegation that directors are "co-founders" and "close personal friend[s]" insufficient to plead demand futility).  Nor does Mr. Musk's gratitude for the key role Mr. Straubel played in building Tesla (TC ¶ 316) or that the two traveled to Japan together on Tesla business (TC ¶ 317) undercut Mr. Straubel's independence.  Those facts are simply "not 'suggestive of the type of very close personal relationship that . . . one would expect to heavily influence a human's ability to exercise impartial judgment.'" *See In re Kraft Heinz Co. Deriv. Litig.*, 2021 Del. Ch. LEXIS 295, at *20-21 (Dec. 15, 2021) (dismissing with prejudice; attending professional workshops together and "view[ing one] favorably as a business partner" failed to plead lack of independence).  To the contrary, Plaintiffs' allegations suggest Mr. Straubel is the type of respected, diligent businessperson who *should* have a place on Tesla's Board. *See supra* at 16-17.  Once again, what can be more quintessentially good faith than traveling together to represent the Company when doing business in a foreign nation?  If that somehow eviscerated the independent judgment of executives, then there would be nobody left to run American companies.

Plaintiffs last pin their hopes on allegations that Mr. Musk gifted Mr. Straubel $10,000 *twenty years ago* to "support his research into lithium-ion batteries" (TC ¶ 316), and that Tesla has contracted with Mr. Straubel's company Redwood Materials.  TC ¶ 319.  But nowhere have

Plaintiffs "alleged particular facts indicating that [either benefit is] so material as to taint [Mr. Straubel's] judgment as a director." *White v. Panic*, 793 A.2d 356, 366 (Del. Ch. 2000) (dismissing complaint; consulting fees ranging from $33,000 to $75,000 insufficient to plead lack of independence); *Zuckerberg*, 262 A.3d at 1062 ("Even if Netflix purchased advertisements from Facebook, the complaint does not allege that those purchases were material to Netflix."). Instead, these allegations are "precisely the kind of 'naked assertion[s] of a previous business relationship' that this court routinely deems insufficient to meeting Rule 23.1's particularity standard." *Mayleben*, 2020 Del. Ch. LEXIS 59, at *25 (rejecting allegation that director felt a "sense of owingness" to CEO for earning a "windfall" after predecessor company sold).

These banal examples of everyday corporate life show a well-functioning and hard-working Board, not one whose independence has been gutted.

## CONCLUSION

The Court should dismiss Plaintiffs' lawsuit for failure to make demand with prejudice.

Dated: December 18, 2023                Respectfully submitted,

                                        */s/Boris Feldman*
                                        Boris Feldman (*pro hac vice*)
                                        Doru Gavril (*pro hac vice*)
                                        Jennifer Loeb (*pro hac vice*)
                                        Rebecca Lockert (*pro hac vice*)
                                        Olivia Rosen (*pro hac vice*)

                                        FRESHFIELDS BRUCKHAUS
                                        DERINGER US LLP
                                        855 Main Street
                                        Redwood City, California 94063
                                        Telephone: (650) 421-8200
                                        Facsimile: (212) 277-4001
                                        E-mail: boris.feldman@freshfields.com
                                                doru.gavril@freshfields.com

jennifer.loeb@freshfields.com
rebecca.lockert@freshfields.com
olivia.rosen@freshfields.com

Gary Ewell (SBN: 06752800)
Alithea Z. Sullivan (SBN: 24072376)
EWELL, BROWN, BLANKE & KNIGHT LLP
111 Congress Avenue, Suite 2800
Austin, Texas 78701
Telephone: (512) 770-4000
Facsimile: (877) 851-6384
E-mail:  gewell@ebbklaw.com
          asullivan@ebbklaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a true and correct copy of this motion upon each attorney of record and the original upon the Clerk of Court on this the 18th day of December, 2023.

*/s/* Boris Feldman\
Boris Feldman (*pro hac vice*)
