**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| IN RE TESLA INC. STOCKHOLDER DERIVATIVE LITIGATION | Lead Case No.: 1:22-cv-00592-DAE<br><br>(Consolidated with Case No. 1:22-cv-00611-DAE)<br><br>**PUBLIC REDACTED** |
| This Document Relates To:<br><br>All Cases | |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. MR. MUSK FACES NO SUBSTANTIAL LIKELIHOOD OF LIABILITY EITHER AS A DIRECTOR OR AS AN OFFICER .......... 2

A. Mr. Musk Faces No Substantial Likelihood of Liability as a Director .......... 2

B. Mr. Musk Faces No Substantial Likelihood of Liability as an Officer .......... 4

C. Mr. Musk Faces No Substantial Likelihood of Liability under Section 14(a) .......... 6

II. A MAJORITY OF THE BOARD IS INDEPENDENT .......... 7

A. Plaintiffs Plead No Particularized Facts that Mr. Musk Controls Tesla .......... 7

B. Plaintiffs Do Not Remedy Stale Independence Allegations .......... 8

1. Identical Allegations from Second Complaint Still Fail .......... 8

2. Plaintiffs' Only New Allegations Are Equally Deficient .......... 10

CONCLUSION .......... 10

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Arnold v. Soc'y for Sav. Bancorp, Inc.*,
650 A.2d 1270 (Del. 1994) ........................................ 4

*In re Baker Hughes Inc. Merger Litig.*,
2020 Del. Ch. LEXIS 321 (Oct. 27, 2020) ........................................ 4

*Beam v. Stewart*,
845 A.2d 1040 (Del. 2004) ........................................ 8

*Buckley Fam. Tr. v. McCleary*,
2020 Del. Ch. LEXIS 114 (Mar. 31, 2020) ........................................ 1, 4

*In re China Auto. Sys.*,
2013 Del. Ch. LEXIS 217 (Aug. 30, 2013) ........................................ 7

*In re Citigroup Inc. S'holder Deriv. Litig.*,
964 A.2d 106 (Del. Ch. 2009) ........................................ 1

*In re Facebook, Inc.*,
922 F. Supp. 2d 445 (S.D.N.Y. 2013) ........................................ 9

*Freuler v. Parker*,
2012 U.S. Dist. LEXIS 34057 (S.D. Tex. Mar. 14, 2012),
*aff'd*, 517 F. App'x 227 (5th Cir. 2013) ........................................ 2

*Goldfarb v. Barbier*,
2012 U.S. Dist. LEXIS 200820 (W.D. Tex. Apr. 26, 2012) ........................................ 10

*Harbor Fin. Partners v. Huizenga*,
751 A.2d 879 (Del. Ch. 1999) ........................................ 10

*Int'l Equity Cap. Growth Fund, L.P. v. Clegg*,
1997 Del. Ch. LEXIS 59 (Apr. 22, 1997) ........................................ 9

*J.P. Morgan Tr. Co. v. Fisher*,
2021 Del. Ch. LEXIS 117 (June 14, 2021) ........................................ 1, 2, 6

*Jones v. Jenkins*,
503 F. Supp. 2d 1325 (D. Ariz. 2007) ........................................ 5

*In re Facebook, Inc.*,
922 F. Supp. 2d 445 (S.D.N.Y. 2013) .......................................................... 9

*Freuler v. Parker*,
2012 U.S. Dist. LEXIS 34057 (S.D. Tex. Mar. 14, 2012),
*aff'd*, 517 F. App'x 227 (5th Cir. 2013) ..................................................2

*In re Kraft Heinz Co. Deriv. Litig.*,
2021 Del. Ch. LEXIS 295 (Dec. 15, 2021) ................................................ 9

*In re Massey Energy Co.*,
2011 Del. Ch. LEXIS 83 (May 31, 2011) .................................................. 3

*In re McDonald's Corp. S'holder Deriv. Litig.*,
289 A.3d 343 (Del. Ch. 2023) .....................................................................1

*In re McDonald's Corp. S'holder Deriv. Litig.*,
291 A.3d 652 (Del. Ch. 2023) ................................................................. 3, 4

*McElrath v. Kalanick*,
2019 Del. Ch. LEXIS 107 (April 1, 2019) ................................................11

*In re Mindbody, Inc., S'holder Litig.*,
2023 Del. Ch. LEXIS 65 (Mar. 15, 2023) .................................................. 4

*Morrison v. Berry*,
2019 Del. Ch. LEXIS 1412 (Dec. 31, 2019) .............................................. 4

*In re New Valley Corp.*,
2001 Del. Ch. LEXIS 13 (Jan. 11, 2001) ...................................................10

*In re Oracle Derivative Litigation*,
2018 Del. Ch. LEXIS 92 (Mar. 19, 2018) .................................................. 8

*In re Pattern Energy Grp. Inc. S'holders Litig.*,
2021 Del. Ch. LEXIS 90 (May 6, 2021) ..................................................... 4

*In re PNB Holdings Co.*,
2006 Del. Ch. LEXIS 158 (Aug. 18, 2006) ............................................ 8, 10

*In re Primedia Inc., Deriv. Litig.*,
910 A.2d 248 (Del. Ch. Nov. 15, 2006) .....................................................10

*Shapiro v. UJB Fin. Corp.*,
964 F.2d 272 (3d Cir. 1992) ........................................................................6

*Smith v. Tartar*,
305 F.Supp. 3d 733 (E.D. Ky. 2018) ..........................................................10

*In re Tesla Motors, Inc. S'holder Litig.*,
2018 Del. Ch. LEXIS 102 (Mar. 28, 2018) ................................................... 8

*In re Tesla Motors, Inc. S'holder Litig.*,
2022 Del. Ch. LEXIS 94 (Apr. 27, 2022) ..................................................... 8

*Tornetta v. Musk*,
2024 Del. Ch. LEXIS 27 (Jan. 2024) ..................................................7, 8, 9

*United Food & Commer. Workers Union v. Zuckerberg*,
262 A.3d 1034 (Del. 2021) ....................................................................... 9, 11

*United States v. Causey*,
2005 U.S. Dist. LEXIS 48841 (S.D. Tex. Oct. 17, 2005) ...............................6

*In re Zhongpin Inc. Shareholders' Litigation*,
2014 Del. Ch. LEXIS 252 (Nov. 26, 2014) .................................................. 8

*Zucker v. Hassell*,
2016 Del. Ch. LEXIS 180 (Nov. 30, 2016),
*aff'd*, 165 A.3d 288 (Del. 2017) .................................................................. 4

**Statutes**

Securities Exchange Act Section 14(a) ................................................... 2, 6

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .............................................................................. 10

Fed. R. Civ. P. 23.1 .......................................................................................11

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| Ex. _ | Exhibit to the Declaration of Gary Ewell in Support of Defendants' Reply in Further Support of Motion to Dismiss Plaintiffs' Amended Consolidated Complaint |
| MTD | Defendants' Motion to Dismiss Plaintiffs' Amended Consolidated Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, (W.D. Tex. Dec. 18, 2023), ECF No. 78 |
| Reply | Reply in Support of Defendants' Motion to Dismiss Plaintiffs' Verified Consolidated Stockholder Derivative Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. Feb. 17, 2023), ECF No. 62 |
| Opp. | Opposition to Defendants' Motion to Dismiss Verified Consolidated Derivative Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. Feb. 15, 2024), ECF No. 86 |
| Order | Order Adopting in Part, Vacating in Part U.S. Magistrate Judge Howell's Report and Recommendation and Granting Defendants' Motion to Dismiss, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. Sept. 15, 2023), ECF No. 70 |
| R&R | Report and Recommendation of the United States Magistrate Judge, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. July 21, 2022), ECF No. 67 |
| Second Complaint | Sealed copy of Verified Consolidated Stockholder Derivative Complaint for Breach of Fiduciary Duty, Unjust Enrichment, and Violation of Securities Law, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. Sept. 6, 2022), ECF No. 34 |

| | |
|---|---|
| TC ¶ __ or Third Complaint | Sealed copy of Verified Amended Consolidated Stockholder Derivative Complaint for Breach of Fiduciary Duty and Violation of Securities Law, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. Nov. 3, 2023), ECF No. 76 |
| Tesla or the Company | Tesla, Inc. |
| *Tesla Motors I* | *In re Tesla Motors, Inc. S'holder Litig.*, 2018 Del. Ch. LEXIS 102 (Mar. 28, 2018) |

## INTRODUCTION

Plaintiffs' Third Complaint drops all claims against seven of eight directors and abandons the claim that Tesla failed to establish proper internal controls. Despite their shift in litigation strategy, Plaintiffs still failed to address deficiencies identified in the R&R and Order. Instead, it simply repackages Plaintiffs' previously rejected allegations concerning Mr. Musk and claims they are enough to survive dismissal. MTD 2–3. But Plaintiff does not distinguish between Mr. Musk in his capacity as director and Mr. Musk in his capacity as an officer. That is a key deficiency in Plaintiffs' standing to bring this lawsuit in Tesla's name.

First, most of the allegations concerning Mr. Musk concern his activity as a director. But as Judge Howell and this Court have already recognized, under Tesla's charter, Plaintiffs' claims against a director fail unless they can "allege[] with particularity that [Mr. Musk] *knowingly* violated a fiduciary duty or failed to act in violation of a *known* duty to act, demonstrating a *conscious* disregard for [his] duties." *In re Citigroup Inc. S'holder Deriv. Litig*., 964 A.2d 106, 125 (Del. Ch. 2009); R&R 7–14. Plaintiffs know their allegations fail to clear this standard, which is why they abandoned them with respect to the rest of Tesla's Board. It is unclear why the exact same allegations would fail against the rest of the Board but somehow survive just against Mr. Musk. That would be a most unusual result, for which Plaintiffs provide no support.

Second, even if Plaintiffs were somehow able to plead particularized facts concerning Mr. Musk's actions as an officer, they too would fail to state a claim for breach of fiduciary duty, much less show the *substantial likelihood of liability* required under Delaware law. *Infra* 2. For officer conduct to be actionable, it must rise to the standard of gross negligence. *See Buckley Fam. Tr. v. McCleary*, 2020 Del. Ch. LEXIS 114, at *25 (Mar. 31, 2020). Under Delaware law, that "requir[es] a greater showing for liability than what is required in other areas of civil law, as well as an even

greater showing than what is required to obtain a conviction for criminal negligence." *In re McDonald's Corp. S'holder Deriv. Litig.*, 289 A.3d 343, 372 (Del. Ch. 2023); *J.P. Morgan Tr. Co. v. Fisher*, 2021 Del. Ch. LEXIS 117, at *42 n.5 (June 14, 2021) (gross negligence "involves a devil-may-care attitude or indifference to duty amounting to recklessness."). The only actions Plaintiffs attribute to Mr. Musk in his capacity as an officer are banal, innocent activities highlighting Mr. Musk's hard work on behalf of Tesla. *Infra* 5. For example, it is illogical to claim that, because Mr. Musk spent time on the floor of a 5.3 million square foot factory with 22,000 workers, he *must* have first-hand knowledge of incidents of individual misconduct simply because they are alleged to have occurred in the factory. *Id.* The notion that Mr. Musk, a significant Tesla shareholder himself, would knowingly hurt the Company he has worked tirelessly to build is implausible on its face.

This Court need not take Plaintiffs' "same, insufficient, conclusory or erroneous allegations" as true. *Freuler v. Parker*, 2012 U.S. Dist. LEXIS 34057, at *8–9 (S.D. Tex. Mar. 14, 2012), *aff'd*, 517 F. App'x 227 (5th Cir. 2013). Plaintiffs had three opportunities to plead their case. They failed to follow this Court's instruction to remedy their deficient pleadings. There is no reason to think that a fourth would be more successful. The Third Complaint should be dismissed with prejudice.

## ARGUMENT

### I. MR. MUSK FACES NO SUBSTANTIAL LIKELIHOOD OF LIABILITY EITHER AS A DIRECTOR OR AS AN OFFICER

None of Plaintiffs' three theories of liability survives scrutiny. The Third Complaint adds no particularized factual allegations that Mr. Musk faces any substantial likelihood of liability in his capacity as *either* a director or an officer. Nor does it remedy its deficient claim that he signed a false proxy in violation of Section 14(a) of the Exchange Act.

#### A. Mr. Musk Faces No Substantial Likelihood of Liability as a Director

***Plaintiffs Cannot Plead Bad Faith.*** As this Court recognized, Tesla's charter exempts its

directors from all but violations of the duty of loyalty. Order 9; R&R 6–7. Plaintiffs nevertheless offer a perfunctory footnote asserting that their duty of loyalty allegations are sufficient and two sentences observing that Mr. Musk attended Board presentations concerning employee relations. Opp. 12 n.19, 13. One would imagine that attending those meetings shows the very opposite of bad faith. MTD at 6–7. They do not explain how these allegations show bad faith, or how this Court erred by stating that, as a director, Mr. Musk is "'fully protected in relying in good faith' on 'information, opinions, reports or statements presented to the corporation by any of the corporation's officers or employees.'" Order 11 (citing 8 Del. C. § 141(e)); MTD 7. More fundamentally, Plaintiffs also fail to explain why identical allegations should succeed against Mr. Musk, but are so deficient that Plaintiffs abandoned them against every other director. MTD 3.

***Plaintiffs Continue to Misconstrue the Record.*** Plaintiffs insist that Mr. Musk had "personal knowledge" of red flags based on Audit Committee meetings *that he did not attend*. Opp. 13. They also do not address their selective reading of Board materials, or justify excluding the many remedial efforts detailed therein. *Compare* MTD 6–7 *with* Opp. 13–14. [REDACTED]. MTD 6–7; R&R 18 ("Plaintiffs don't refute that . . . Board-level committees were performing duties related to the oversight of human capital management issues.").[1] Even if they had been presented with red flags, "[t]he pleading-stage record shows that the Director Defendants responded to the red flags[.]" *In re*

[1] This is nothing like *Massey*, where "[t]he objective facts [were] that Massey had pled guilty to criminal charges, had suffered other serious judgments and settlements as a result of violations of law, had been caught trying to hide violations of law and suppress material evidence, and had miners suffer death and serious injuries at its facilities." *In re Massey Energy Co.*, 2011 Del. Ch. LEXIS 83, at *75 (May 31, 2011).

*McDonald's Corp. S'holder Derivative Litig*., 291 A.3d 652, 684 (Del. Ch. 2023). "Because of the effort they made, it is not possible to infer that the Director Defendants acted in bad faith." *Id.*

### B. Mr. Musk Faces No Substantial Likelihood of Liability as an Officer

***Plaintiffs Allege No Conduct Solely in Mr. Musk's Capacity as an Officer.*** Ignoring Delaware law, the Third Complaint fails to allege any conduct that Mr. Musk undertook "solely in [his] capacity as an officer." *Arnold v. Soc'y for Sav. Bancorp, Inc*., 650 A.2d 1270, 1288 (Del. 1994); MTD 9. Plaintiffs' authority explains that "when a defendant acted in both exculpated and unexculpated capacities, the court must distinguish in which capacity the defendants acted to resolve the claim for liability." *In re Mindbody, Inc., S'holder Litig*., 2023 Del. Ch. LEXIS 65, at *79 n.493 (Mar. 15, 2023). Plaintiffs now argue that Mr. Musk took actions "as Tesla's CEO." Opp. 9, 11. But that does not remedy their "fail[ure] to highlight any specific actions [Mr. Musk] undertook as an officer (as distinct from actions as a director)[.]" *Arnold*, 650 A.2d at 1288; MTD 9–10.[2]

***Plaintiffs' Speculative Pleadings Do Not Establish Gross Negligence.*** Gross negligence is a high bar. It requires Plaintiffs to plead "reckless indifference or actions that are without the bounds of reason." *Buckley Fam. Tr. v. McCleary*, 2020 Del. Ch. LEXIS 114, at *25 (Mar. 31, 2020). Plaintiffs' theories come nowhere close. Instead, they allege, without support and particularization,

---

[2] Plaintiffs' other authorities do not support their argument. In *Morrison*, the court found that the plaintiffs had pleaded a duty of care violation against a CEO where they "allege[d] that '[i]n his role as CEO,' [he] participated in 'drafting and disseminating'" a misleading filing. *Morrison v. Berry*, 2019 Del. Ch. LEXIS 1412, at *69 (Dec. 31, 2019). *Zucker v. Hassell* did not discuss whether the defendant company (like Tesla) exculpated its director from breaches of the duty of care. 2016 Del. Ch. LEXIS 180 (Nov. 30, 2016), *aff'd*, 165 A.3d 288 (Del. 2017). *Baker Hughes* dismissed fiduciary duty claims against officers because the allegations concerned decisions they had made *as directors*. *In re Baker Hughes Inc. Merger Litig.*, 2020 Del. Ch. LEXIS 321, at *44 (Oct. 27, 2020). In *Pattern Energy*, the court held that the plaintiffs had pleaded a "breach of the duty of loyalty" by a director/officer, not a breach of the duty of care. *In re Pattern Energy Grp. Inc. S'holders Litig*., 2021 Del. Ch. LEXIS 90, at *174 (May 6, 2021). The court observed that, in the alternative, "the facts pled give rise to the reasonable inference that" certain *other* officers "were at least recklessly indifferent or grossly negligent," but did not address the director/officer in that analysis. *Id.*

that Mr. Musk *must* have "frequented the same common areas, [seen] the same racist images in the common areas . . . worked with some of the same employees and managers that were harassing factory workers, and heard some of the racist and sexual remarks alleged in the Complaint." Opp. 9. This stretches the bounds of logic. Plaintiffs admit that Tesla's Fremont factory is *5.3 million square feet* and employs *22,000 people*. ¶ 16. Yet, they ask this Court to infer that Mr. Musk *must* have frequented areas that, at some unspecified time, for some unspecified period, allegedly contained discriminatory graffiti, or that of 22,000 employees, Mr. Musk *must* have worked with those engaged in misconduct, known it, and abdicated his duties. MTD 10–11. This is implausible. Tesla is a global manufacturer that produces one vehicle every 17 seconds. Ex. 1 at 13. Though Plaintiffs disclaim a theory of omniscience, Opp. 11, it is difficult to interpret their arguments otherwise.

***None of Plaintiffs' Remaining Allegations Shows Gross Negligence.*** Plaintiffs recycle conclusory allegations from their Second Complaint, none of which satisfy Delaware law:

- Plaintiffs allege Mr. Musk "failed to take any meaningful action to stop and remedy" misconduct concerns, but ignore the Board's remedial actions. *Supra* 3; MTD 6–7; Order 11 (holding that "Plaintiffs' characterization of the measures taken by the Board as 'shallow' does not suffice").

- Plaintiffs ignore that Mr. Musk told employees to not "ever intentionally allow someone to feel excluded, uncomfortable or unfairly treated" and must "consider[ ] how someone might feel who is part of a historically less represented group." ECF 78-6 at 245; MTD 10–11.

- Plaintiffs provide no authority to justify their attempt to muzzle Mr. Musk's personal speech and hold him personally liable for how *other people* allegedly interpreted his words. *Cf. Jones v. Jenkins*, 503 F. Supp. 2d 1325, 1337 (D. Ariz. 2007) ("It would be difficult to find a more general or conclusory pleading than director liability based on failing to set a proper 'tone at the top.'") (applying Delaware law).

- Although Plaintiffs attempt to plead a violation of Mr. Musk's oversight obligations in his role as an officer, they base their claims on alleged red flags that he addressed in his role as a director. *See, e.g.*, TC ¶ 78 (signing a Form 10-K acknowledging DFEH complaint); Opp. 13 (listing Board presentations he purportedly attended).

Plaintiffs' illogical and conclusory allegations fail to show the "devil-may-care attitude or indifference to duty amounting to recklessness" required to plead gross negligence. *J.P. Morgan Tr. Co.*, 2021 Del. Ch. LEXIS 117, at *42 n.5. Plaintiffs do not allege even simple negligence and fail to show Mr. Musk faces *any* likelihood of liability—let alone a substantial likelihood—as either director or officer. *See* Order at 17–18. These claims should be dismissed.

### C. Mr. Musk Faces No Substantial Likelihood of Liability under Section 14(a)

Plaintiffs fail to remedy their deficient Section 14(a) claim, which is simply a jurisdictional hook. MTD 12–13; Order 12–14. They repeat rejected allegations, ignoring this Court's ruling that: (1) "statements about a Board's goals are 'inactionable puffery'" and (2) "Plaintiffs do not provide authority supporting the[] position that disagreement with the Board's business judgment adequately pleads false or misleading statements for a Section 14(a) claim." Order 14; R&R 18–19.

Plaintiffs rely on the same inapplicable cases to replead their flawed theory. Despite challenging the Board's *subjective* statements of Tesla's values, Plaintiffs continue to cite the same case law concerning *objectively* verifiable statements about corporations' loan loss reserves. Opp. 15 n.23; *see United States v. Causey*, 2005 U.S. Dist. LEXIS 48841, at *15–29 (S.D. Tex. Oct. 17, 2005) (describing loss allowances as "adequate" was actionable where defendants knew they had understated possible losses by $750 million); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 281 (3d Cir. 1992) ("[A] reasonable investor would be influenced significantly by knowledge that a bank has knowingly or recklessly hidden its true financial status by deliberately misstating its level of non-performing loans[.]"). Even worse, Plaintiffs provide *no* support for their conclusory assertion that their pleadings "easily satisf[y] the 'essential link element.'" Opp. 5. They only speculate that shareholders would not have voted against the shareholder proposals had the Board made different

disclosures. *Id.* These allegations already were insufficient to plead a substantial likelihood of liability—repetition has not improved them. *See* Order 14. This claim should also be dismissed.

## II. A MAJORITY OF THE BOARD IS INDEPENDENT

Because Mr. Musk does not face a substantial likelihood of liability, the Court's inquiry as to whether demand was excused can stop there. Order 17. Still, Plaintiffs fail to plead *particularized* facts that a majority of the Board lacks independence from Mr. Musk. *See* Opp. 15–20. Attempting to bypass this failure, Plaintiffs assert they "must only show . . . 'a reasonable belief' that the board lacks independence." *Id.* at 15. But they ignore that the Court need not "accept conclusory allegations unsupported by particularized facts." *In re China Auto. Sys.*, 2013 Del. Ch. LEXIS 217, at *15 (Aug. 30, 2013) (dismissing for failure to plead demand futility). Plaintiffs have pleaded no non-conclusory allegations here.

### A. Plaintiffs Plead No Particularized Facts that Mr. Musk Controls Tesla

Plaintiffs copy verbatim their stale, conclusory allegations alleging Mr. Musk controls Tesla. MTD 14. They now expect the Court to follow blindly a non-binding ruling by a Delaware judge examining, under different circumstances, a specific and unrelated transaction. Opp. 1–2; 17–18; *see also Tornetta v. Musk*, 2024 Del. Ch. LEXIS 27 (Jan. 30, 2024). *Tornetta* is inapposite. First, judgment in *Tornetta* has not been entered and will be appealed. Second, as Plaintiffs concede, Opp. 18, that ruling was limited to a *single, specific transaction* from seven years ago: Mr. Musk's compensation plan. *Tornetta* at *3, 95 (declining to hold that Mr. Musk held "general control" over Tesla, only that he exerted control "*as to this transaction*"). There is no connection between Mr. Musk's compensation and this case: whether the Board can impartially consider demand concerning alleged workplace misconduct in Tesla factories.

Without *Tornetta*, Plaintiffs' allegations are revealed as nothing but naked assertion. Even if "Mr. Musk is the face of Tesla," Opp. 16, that "fact alone . . . is not dispositive of the controller question."[3] *See Tesla Motors I*, at *37. Moreover, Defendants already debunked Plaintiffs' incorrect assertion that Mr. Musk retains an "effective block position" at Tesla. Opp. 21; *see* Reply 13. In any event, Mr. Musk's less than twenty percent stock ownership is insufficient absent "particularized allegations . . . demonstrating that the directors are beholden to the [controlling] stockholder." *Beam v. Stewart*, 845 A.2d 1040, 1054 (Del. 2004) (affirming dismissal despite director owning 94.4% of voting shares).[4] Finally, Mr. Musk's purported "willingness to oust[] senior management"—which Plaintiffs infer from much-needed corporate reform *seventeen years ago*, ECF 21—is irrelevant because he is not empowered by the Board to do so. *See* Reply 13.

**B. Plaintiffs Do Not Remedy Stale Independence Allegations**

**1. Identical Allegations from Second Complaint Still Fail**

Plaintiffs ignore *all* of Defendants' authorities regarding Board independence. They concede that Ms. Wilson-Thompson and Mr. Murdoch are independent. MTD 15; *see* R&R 22. Plaintiffs' *promise* to "amend [the] operative pleading to include [] additional facts relevant to" Ms. Denholm's

---

[3] Plaintiffs again misleadingly cite *Tesla Motors I* to support its flawed theory that Mr. Musk controls Tesla. Opp. 16–17. There, the court ultimately "ruled in favor of Tesla's directors, finding that the Board, which included Ms. Denholm, Mr. K. Musk, and Mr. Ehrenpreis, 'meaningfully vetted the [SolarCity] Acquisition, and Elon did not stand in its way.'" *See* Reply 12 (citing *In re Tesla Motors, Inc. S'holder Litig.*, 2022 Del. Ch. LEXIS 94, at *6 (Apr. 27, 2022). The court further held: '*The Tesla Board was Not 'Dominated' By Elon.*'" *Id* at *66–67.

[4] *In re PNB Holdings Co. Shareholders Litigation* supports Defendants' position. There, the court held that 33.5% voting power was "relatively low" and "at that level of ownership, a single stockholder would not be deemed a controller without additional facts supplementing his clout." 2006 Del. Ch. LEXIS 158, at *32 (Aug. 18, 2006). In *In re Zhongpin Inc. Shareholders' Litigation*, the court's control analysis turned on the company's disclosure that its director's stock holdings were a "possible impediment to a potential acquirers' submission of a competing bid for the Company." 2014 Del. Ch. LEXIS 252, at *26–27 (Nov. 26, 2014). In *In re Oracle Derivative Litigation*, the court explicitly stated that whether the co-founder "qualif[ied] as a controller [was] a question I need not decide here." 2018 Del. Ch. LEXIS 92, at *48 (Del. Ch. Mar. 19, 2018).

independence does not render their *present* allegations sufficient. Opp. 18, n.28. Plaintiffs add no new allegations regarding her (or Mr. Ehrenpreis's or Mr. Kimbal Musk's) independence; they fail for the reasons set forth in Defendants' first motion to dismiss. MTD 15 (citing ECF 45 at 22–24).

***Mr. Ehrenpreis.*** Plaintiffs cite a twenty-seven year old unrelated case involving a self-interested transaction by an 80% shareholder to assert that Mr. Ehrenpreis lacks independence. Opp. 20 (citing *Int'l Equity Cap. Growth Fund, L.P. v. Clegg*, 1997 Del. Ch. LEXIS 59, at *13–22 (Apr. 21, 1997)). But without allegations that Tesla's contract with Mapbox "was material to [Mapbox's] business interests," *United Food & Commer. Workers Union v. Zuckerberg*, 262 A.3d 1034, 1062 (Del. 2021), or that Mr. Ehrenpreis "would risk [his] reputation[ ] and career[] to protect [Mapbox's] relationship with [Tesla]," *In re Facebook, Inc.*, 922 F. Supp. 2d 445, 472 (S.D.N.Y. 2013), it is irrelevant that Mr. Musk controlled whether Tesla hired Mapbox. ECF 45 at 22.[5] Even given Mr. Ehrenpreis's admiration for Mr. Musk, Opp. at 20, the allegations are "insufficient to overcome his presumed independence, even when viewed holistically." *In re Kraft Heinz Co. Deriv. Litig.*, 2021 Del. Ch. LEXIS 295, at *25 (Dec. 15, 2021) (finding director independent despite that half of his income came from business with controller and he was "not independent" under Nasdaq).

***Mr. Kimbal Musk.*** It is incorrect that Defendants do not "meaningfully dispute" Mr. K. Musk's independence. Opp. 18. Plaintiffs plead no particularized facts suggesting that "the familial relationship . . . is so thick that the stockholders should be treated as essentially a voting group." *PNB Holdings*, 2006 Del. Ch. LEXIS 158, at *38 (rejecting notion that directors "necessarily vote as those who share their surname suggest"); *Smith v. Tartar*, 305 F.Supp. 3d 733, 741–42 (E.D. Ky.

---

[5] Nor can Plaintiffs mask their flawed pleadings by citing *Tornetta*. Opp. 20, n.32. The *Tornetta* court explicitly declined to hold that Mr. Ehrenpreis was "beholden to Musk in general," finding only that "given the critical role he played as chair of the Compensation Committee," he was beholden to Mr. Musk "*for [the] purpose*" of the compensation package alone. *Tornetta*, 2024 Del. Ch. LEXIS 27, at *108.

2018) (sibling relationship insufficient to plead control).[6] This "Court gives little weight to [] allegation[s] that [Tesla] admitted, in its proxy statement, that [Mr. K. Musk] lacked independence." *Goldfarb v. Barbier*, 2012 U.S. Dist. LEXIS 200820, at *20 (W.D. Tex. Apr. 26, 2012).

### 2. Plaintiffs' Only New Allegations Are Equally Deficient

***Mr. Gebbia.*** Plaintiffs parrot their claims disputing Mr. Gebbia's independence, addressing none of Defendants' arguments. *See* Opp. 19; MTD 15–16. That Mr. Musk congratulated Mr. Gebbia before he joined Tesla's Board does not demonstrate the "close [*sic*] business relationship[] [to] warrant a pleading stage inference that a director lacks independence." Opp. 19. It hardly demonstrates any relationship at all. *In re Primedia Inc., Derivative Litigation* is irrelevant because, there, the court applied the "deferential Rule 12(b)(6) standard to the question of independence," not Rule 23.1's heightened standard.[7] 910 A.2d 248, 261 n.45 (Del. Ch. Nov. 15, 2006).

***Mr. Straubel.*** That Mr. Straubel was one of four Tesla co-founders does not suggest that—twenty years later—he is so beholden to Mr. Musk as to "sterilize" his business judgment. *See Zuckerberg*, 262 A.3d at 1048–49; MTD 17. Indeed, Plaintiffs have no answer to *McElrath v. Kalanick*, in which the court held that allegations that directors were "co-founders" and "close personal friend[s]" did "not by itself raise a reasonable doubt of [a director's] independence." 2019 Del. Ch. LEXIS 107, at *52–53 (April 1, 2019) (dismissing complaint).

## CONCLUSION

The Court should dismiss Plaintiffs' lawsuit with prejudice.

---

[6] *Harbor Fin. Partners v. Huizenga* is distinguishable because it involved a "self-interested transaction effected for the benefit of [] directors who owned a substantial block of [the target's] shares[.]" 751 A.2d 879, 881 (Del. Ch. 1999).

[7] Even if the *Primedia* court had ruled under Rule 23.1, that case involved allegations of "substantial past or current relationships" of both a "business and [] personal nature" to infer that the directors "felt a sense of 'owingness'" to each other. 910 A.2d at 261 n.45. *In re New Valley Corp.* is inapposite because it concerned a conflicted transaction wherein the target company's controlling shareholder was the CEO of the acquirer. *See* 2001 Del. Ch. LEXIS 13, at *19 (Jan. 11, 2001).

Dated: March 21, 2024  Respectfully submitted,

*/s/ Gary Ewell*
Boris Feldman (*pro hac vice*)
Doru Gavril (*pro hac vice*)
Jennifer Loeb (*pro hac vice*)
Rebecca Lockert (*pro hac vice*)
Olivia Rosen (*pro hac vice*)

FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, California 94063
Telephone: (650) 421-8200
Facsimile: (212) 277-4001
E-mail: boris.feldman@freshfields.com
  doru.gavril@freshfields.com
  jennifer.loeb@freshfields.com
  rebecca.lockert@freshfields.com
  olivia.rosen@freshfields.com

Gary Ewell (SBN: 06752800)
Alithea Z. Sullivan (SBN: 24072376)
EWELL, BROWN, BLANKE & KNIGHT LLP
111 Congress Avenue, Suite 2800
Austin, Texas 78701
Telephone: (512) 770-4000
Facsimile: (877) 851-6384
E-mail: gewell@ebbklaw.com
  asullivan@ebbklaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a true and correct copy of this motion upon each attorney of record and the original upon the Clerk of Court on this the 21st day of March, 2024.

*/s/ Gary Ewell*
Gary Ewell