UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| IN RE TESLA INC. STOCKHOLDER DERIVATIVE LITIGATION | Lead Case No.: 1:22-cv-00592-DAE<br><br>(Consolidated with Case No.<br><br>1:22-cv-00611-LY)<br><br>**PUBLIC REDACTED** |
| This Document Relates To:<br><br>All Cases | |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED CONSOLIDATED COMPLAINT**

**TABLE OF CONTENTS**

**INTRODUCTION** ............................................................................................................... 1
**ARGUMENT** ....................................................................................................................... 2
    I. PLAINTIFF'S MISCHARACTERIZATION OF HIS OWN CLAIMS DOES NOT OVERRIDE DELAWARE LAW ............................................................................. 2
        A. Plaintiff Misconstrues His Allegations to Lower the Pleading Bar ................ 2
        B. Without Bad Faith, Plaintiff's Claims Are Legally Insufficient ...................... 4
    II. A MAJORITY OF THE BOARD IS INDEPENDENT ............................................ 5
        A. Mr. Musk Does Not Control Tesla .................................................................. 6
        B. Plaintiff's Attempt to Evade Particularized Pleading Does Not Save Independence Allegations ................................................................................ 7
    III. THIS COURT IS NOT BOUND TO PLAINTIFF'S FLAWED JURISDICTION ALLEGATIONS ..................................................................................................... 10
**CONCLUSION** ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page(s)**

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984) .................................................................................................. 6

*Beam v. Stewart*,
  845 A.2d 1040 (Del. 2004) ................................................................................................ 7

*In re BGC Partners, Inc. Deriv. Litig.*,
  2019 WL 4745121 (Del. Ch. Sept. 30, 2019) .................................................................... 9

*In re Cabot Oil & Gas Corp. Deriv. Litig.*,
  709 F.Supp.3d 305 (S.D. Tex. 2024) .............................................................................. 4, 5

*Carlton v. Freer Inv. Grp., Ltd.*,
  2017 WL 11046201 (W.D. Tex. Aug. 8, 2017) (Ezra, J.) .................................................. 7

*In re Chemed Corp., S'holder Deriv. Litig.*,
  2019 WL 3215852 (D. Del. Feb. 26, 2019) ....................................................................... 2

*DiBattista v. Greco*,
  2021 WL 327399 (D. Del. Jan. 31, 2021),
  *report and recommendation adopted*, 2021 WL 5061720 (D. Del. Feb. 1, 2021) .............. 2

*Exxon Mobil Corp. v. Starr Indem. & Liab. Ins. Co.*,
  181 F.Supp.3d 347 (S.D. Tex. 2015) ................................................................................. 5

*Franklin v. State of La.*,
  2001 WL 43547 (5th Cir. Jan. 8, 2001) ........................................................................... 10

*Grace Bros., Ltd. v. UniHolding Corp.*,
  2000 WL 982401 (Del. Ch. July 12, 2000) ....................................................................... 8

*Kaplan v. Wyatt*,
  484 A.2d 501 (Del. Ch. 1984) ......................................................................................... 10

*Kinnie Ma Individual Ret. Acct. v. Ascendant Cap., LLC*,
  2023 WL 5417142 (W.D. Tex. Aug. 21, 2023),
  *aff'd*, 2024 WL 1219238 (W.D. Tex. Mar. 21, 2024) ....................................................... 5

*In re Kraft Heinz Co. Deriv. Litig.*,
  2021 WL 6012632 (Del. Ch. Dec. 15, 2021) ............................................................ 7, 8, 9

*Lee Constr. & Maint. Co. v. Ingram Indep. Sch. Dist.*,
    2020 WL 8125523 (W.D. Tex. Jan. 8, 2020) (Ezra, J.) ...................................................... 10

*In re McDonald's Corp. S'holder Deriv. Litig.*,
    289 A.3d 343 (Del. Ch. 2023) ............................................................................. 2, 3, 4, 5

*MCG Capital Corp. v. Maginn*,
    2010 WL 1782271 (Del. Ch. May 5, 2010) ......................................................................... 9

*Mizel v. Connelly*,
    1999 WL 550369 (Del. Ch. July 22, 1999) ......................................................................... 8

*Ontario Provincial Council of Carpenters' Pension Tr. Fund v. Walton*,
    2023 WL 3093500 (Del. Ch. Apr. 26, 2023) ....................................................................... 5

*In re Oracle Corp. Deriv. Litig.*,
    2018 WL 1381331 (Del. Ch. Mar. 19, 2018) ....................................................................... 9

*Orman v. Cullman*,
    794 A.2d 5 (Del. Ch. 2002) ............................................................................................... 9

*Owens v. Mayleben*,
    2020 WL 748023 (Del. Ch. Feb. 13, 2020) ........................................................................ 9

*Segway Inc. v. Cai*,
    2023 WL 8643017 (Del. Ch. Dec. 14, 2023) .................................................................. 4, 5

*Tornetta v. Musk*,
    310 A.3d 430 (Del. Ch. 2024) ................................................................................... 6, 8, 9

*United Food and Com. Workers Union and Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*,
    262 A.3d 1034 (Del. 2021) ................................................................................................ 6

*Voigt v. Metcalf*,
    2020 WL 614999 (Del. Ch. Feb. 10, 2020) ........................................................................ 9

*Zarnow v. City of Wichita Falls, Tex.*,
    614 F.3d 161 (5th Cir. 2010) ............................................................................................. 5

**Other Authorities**

Assaf Hamdani & Kobi Kastiel, *Superstar CEOs and Corporate Law*, 100 Wash. U. L. Rev. 1353 (2023) ............................................................................................................ 7

# TABLE OF ABBREVIATIONS[1]

| | |
|---|---|
| SAC ¶ __ or Complaint | Verified Second Amended Consolidated Stockholder Derivative Complaint for Breach of Fiduciary Duty, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. May 15, 2024), ECF No. 94 |
| CC ¶ __ | Verified Consolidated Stockholder Derivative Complaint for Breach of Fiduciary Duty, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. Sept. 6, 2022), ECF No. 33 |
| CC Order | Order Adopting in Part, Vacating in Part U.S. Magistrate Judge Howell's Report and Recommendation and Granting Defendants' Motion to Dismiss Plaintiff's Consolidated Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. Sept. 15, 2023), ECF No. 70 |
| Ex. __ | Exhibits to the Declaration of Gary Ewell in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Consolidated Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. July 1, 2024), ECF 100-1 |
| FAC ¶ __ | Verified Amended Consolidated Stockholder Derivative Complaint for Breach of Fiduciary Duty, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. Nov. 3, 2023), ECF No. 73 |
| MTD FAC | Defendants' Motion to Dismiss Plaintiff's Amended Consolidated Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. Dec. 18, 2023), ECF No. 78 |
| MTD SAC | Defendants' Motion to Dismiss Plaintiff's Second Amended Consolidated Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. July 1, 2024), ECF No. 100 |
| FAC Order | Sealed Order Granting Defendants' Motion to Dismiss Plaintiff's Amended Consolidated Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. Apr. 11, 2024), ECF No. 93 |

---

[1] In this brief, certain emphasis has been added and certain quotation marks, alteration marks, citations, footnotes, and emphases have been omitted.

| | |
|---|---|
| Opp. | Plaintiff's Opposition to Defendants' Motion to Dismiss Second Amended Consolidated Complaint, *In re Tesla Inc. S'holder Deriv. Litig.*, No. 1:22-cv-00592-DAE (W.D. Tex. Aug. 22, 2024), ECF No. 106 |
| *Tesla Motors I* | *In re Tesla Motors, Inc. S'holder Litig.*, 2018 Del. Ch. LEXIS 102 (Del. Ch. Mar. 28, 2018) |
| *Tornetta* | *Tornetta v. Musk*, 310 A.3d 430 (Del. Ch. 2024) |
| *Zuckerberg* | *United Food and Commer. Workers Union and Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034 (Del. 2021) |

**INTRODUCTION**

Plaintiff failed to follow the law and make a litigation demand on Tesla's Board. He instead tried to usurp the Board's prerogative and substitute his judgment for that of Tesla's elected directors. The rare circumstances for such an extraordinary step are absent. Dismissal is warranted.

Plaintiff admits that the Board is not disqualified by some risk of liability. He tried to plead such liability and failed. Plaintiff is left to hypothesize that Elon Musk faces personal liability, and that the Board lacks independence from Mr. Musk. This theory fails for two reasons.

First, Plaintiff fails to plead that Mr. Musk faces a substantial likelihood of liability. Plaintiff claims that Mr. Musk should have prevented all instances of discrimination or harassment among Tesla's tens of thousands of employees. Set aside that task's impossibility or that it is not Mr. Musk's responsibility as CEO. The law is clear that, for an oversight claim to be sustained against a fiduciary—regardless of whether they are an officer or a director—a plaintiff must plead with particularity that the fiduciary acted knowingly in bad faith against the company's interests.

Plaintiff concedes that Mr. Musk faces no liability as a director. Instead, Plaintiff incorrectly claims that the standard is lower for an officer. Not true. For an oversight claim, bad faith is required even for officers. MTD SAC at 5. Plaintiff tries to color his claim as a breach of the duty of care, premised on negligence. But courts have explained that plaintiff characterizations are not dispositive and the duty of care is not implicated in an oversight claim. If Plaintiff were challenging some other conduct, subject to the duty of care, that may be different. Examples in the case law include incorrectly prepared financial statements. That is not what Plaintiff is alleging.

Second, Plaintiff's theory fails because he again is unable to plead that the Board is incapable of an independent business determination. The law requires that the bond between Mr. Musk and a majority of the Board is strong enough to sterilize the directors' business judgment. Plaintiff pleads

-1-

no such particularized facts. Plaintiff's Opposition argues that the fact Mr. Musk recently won, with 84% of shareholder votes excluding himself, a proposal to reincorporate Tesla from Delaware to Texas is evidence of his control. Opp. at 10–11. But that does not show that Mr. Musk controls Tesla—it shows that, like any minority shareholder, he needed his fellow shareholders' vote, which they gave. The Court should not permit Plaintiff to supplant the will of Tesla's shareholders. If Plaintiff wants, he should make demand on the Board, as required by law.

## ARGUMENT

### I. PLAINTIFF'S MISCHARACTERIZATION OF HIS OWN CLAIMS DOES NOT OVERRIDE DELAWARE LAW

Plaintiff's one remaining theory of liability does not survive scrutiny. Under Delaware law, "oversight liability for officers requires a showing of bad faith." *In re McDonald's Corp. S'holder Deriv. Litig.*, 289 A.3d 343, 375 (Del. Ch. 2023). But Plaintiff insists that this Court overlook the substance of his allegations and abdicate its ability to decide a properly raised question of law. Opp. at 4–7. Neither request is proper, and none of Plaintiff's allegations is sufficient to raise a substantial likelihood of liability for a breach of fiduciary duty in Mr. Musk's capacity as an officer.[2]

#### A. Plaintiff Misconstrues His Allegations to Lower the Pleading Bar

Unable to plead bad faith with particularity, Plaintiff labels his remaining claim as a breach of the duty of care. But Plaintiff's nomenclature is not determinative of his claim: courts look at pleadings' contents, not how counsel characterizes them. *See, e.g.*, *In re Chemed Corp., S'holder Deriv. Litig.*, 2019 WL 3215852, at *10 (D. Del. Feb. 26, 2019) (monitoring and oversight deficiencies fall under *Caremark* "[a]lthough [plaintiff] does not cite" it); *DiBattista v. Greco*, 2021 WL 327399, at *9 (D. Del. Jan. 31, 2021), *report and recommendation adopted*, 2021 WL 5061720

---

[2] Plaintiff does not dispute that he has failed to plead a non-exculpated breach of the duty of loyalty against Mr. Musk in his capacity as a director. *See* Opp. at 4–7 (addressing only Defendants' arguments as to officer liability).

(D. Del. Feb. 17, 2021) ("[I]n the Court's view, Plaintiff's breach of fiduciary duty claim . . . is a so-called *Caremark* claim"). If it were otherwise, plaintiffs would be able to avoid the stringent requirements for pleading an oversight claim simply by calling it something else. Here, Plaintiff's allegations describe an oversight claim. *See, e.g.*, SAC ¶ 284 (alleging that Mr. Musk ignored "numerous warnings and indicators" of misconduct); SAC ¶ 285 (alleging that Mr. Musk "directly oversaw operations" and knew of alleged discrimination); SAC ¶ 286 (alleging that Mr. Musk "failed to undertake the necessary changes" after seeing report that Tesla "failed to enact an anti-discrimination policy"). Like *McDonald's*, Plaintiff's attempt to "frame [his] oversight claim explicitly as a breach of the duty of care" does not lower the pleading standard. 289 A.3d at 375 (analyzing officer oversight claim as requiring bad faith, despite claim for duty of care breach).

*McDonald's* is instructive. There, the court analyzed plaintiff's allegations as an oversight claim requiring bad faith when the plaintiff alleged the defendant officer had personally "promoted a party atmosphere at the Company[,]" run a department that "ignored complaints about [executive] conduct" and created an atmosphere where "[e]mployees feared retaliation for reporting complaints[.]" *Id.* at 377. Those allegations—personally promoting a toxic culture, discouraging reporting, and overlooking known complaints—mirror Plaintiff's argument that Mr. Musk "caused, fostered, and encouraged" a culture of harassment and discrimination at Tesla by purportedly overlooking known misconduct and discouraging reporting. Opp. at 5; SAC ¶¶ 6–7, 50, 69, 72. The difference, however, is that the *McDonald's* plaintiff pleaded bad faith *with particularity*, alleging that the defendant officer had turned a "blind eye" to multi-city walkouts, an employee strike, and *by engaging in sexual harassment himself*. 289 A.3d at 350, 379; MTD SAC at 7. In contrast, Plaintiff's argument that Mr. Musk "caused, fostered, and encouraged" a toxic culture is premised on allegations that Mr. Musk learned of certain instances of misconduct. Opp. at 8–9. But the mere fact

that a senior officer is informed of purported misconduct does not mean he is acting in bad faith. *See Segway Inc. v. Cai*, 2023 WL 8643017, at *4 (Del. Ch. Dec. 14, 2023) (that officer "was aware of serious issues with customers" insufficient to plead bad faith).

Otherwise, everytime an executive is informed of employee misconduct, he becomes liable for a breach of duty. That outcome lacks any supporting statute or case law. Delaware law does not impute employee misconduct to the CEO. Nor does Plaintiff allege why Tesla's response to these events would constitute bad faith. Speculation that Mr. Musk's public statements negatively influenced certain individuals is not particularized pleading of bad faith. MTD SAC at 8–9. As a Texas federal court recently held, such allegations are insufficient to plead bad faith with particularity. *See In re Cabot Oil & Gas Corp. Deriv. Litig.*, 709 F.Supp.3d 305, 313, 315 (S.D. Tex. 2024) (awareness of "hundreds" of notice violations, grand jury indictment, and "fifteen criminal charges" insufficient to show bad faith). Simply put, Plaintiff's argument that he is not asserting an oversight claim is revealed for what it is: an attempt to avoid the requirement of pleading bad faith. *See* MTD SAC at 7–9; *see also McDonald's*, 289 A.3d at 349–50.

### B. Without Bad Faith, Plaintiff's Claims Are Legally Insufficient

Delaware law is unequivocal: "oversight liability for officers requires a showing of bad faith. The officer must consciously fail to make a good faith effort to establish information systems, or the officer must consciously ignore red flags." *McDonald's*, 289 A.3d at 375. Plaintiff admits that he "did not amend his complaint with respect to the alleged wrongdoing[,]" nor has he argued in his Opposition that any allegations are sufficient to plead bad faith. Opp. at 4–7. ███████████ ███████████████████████████████████████████████████████ *See* CC Order at 11–12; FAC Order at 8–9. Absent particularized allegations of bad faith, Delaware law requires dismissal. *See* MTD SAC at 6–9.

Plaintiff's attempts to distinguish Delaware law fail. *See* Opp. at 7 & n.13. In *Segway*, the court observed in dicta that the plaintiff might have been successful alleging a duty of care breach for failing to "adequately compile, review, and report [ ] financial information[,]" a far cry from Plaintiff's allegations that Mr. Musk personally failed to remediate harassment and discrimination. 2023 WL 8643017, at *3. Likewise, Plaintiff's attempt to distinguish *McDonald's* for setting out the duty of care standard ignores that the court analyzed the same type of allegations pleaded here as oversight claims requiring bad faith. *See supra* at 3, Opp. at 7. And in both *Walton* and *Cabot*, the plaintiffs did not themselves characterize the claims as breaches of the duty of care *or* loyalty; the plaintiffs alleged breaches of officers' fiduciary duties and the courts looked at the substance to determine the applicable standard. *See Ontario Provincial Council of Carpenters' Pension Tr. Fund v. Walton*, 2023 WL 3093500, at *30 (Del. Ch. Apr. 26, 2023) (setting out claims concerning unspecified "breache[s] [of] fiduciary duties"); *Cabot*, 709 F.Supp.3d at 316–17 (same).

Finally, Plaintiff misstates the law-of-the-case doctrine. Federal courts apply the federal law-of-the-case doctrine, even when construing state law claims. *See, e.g.*, *Kinnie Ma Individual Ret. Acct. v. Ascendant Cap., LLC*, 2023 WL 5417142, at *4 (W.D. Tex. Aug. 21, 2023), *aff'd*, 2024 WL 1219238 (W.D. Tex. Mar. 21, 2024) (applying federal law-of-the-case to Delaware law claims). This doctrine does not apply when there are no governing appellate rulings or when a case has not been transferred to another judge. *Exxon Mobil Corp. v. Starr Indem. & Liab. Ins. Co.*, 181 F.Supp.3d 347, 355 (S.D. Tex. 2015). "A court has the power to revisit prior decisions of its own . . . in any circumstance." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010).

## II. A MAJORITY OF THE BOARD IS INDEPENDENT

████████████████████████████████████████. *See* FAC Order at 15–20. Plaintiff's assertion that he must only "allege facts that create reason to doubt" whether three directors are

independent (Opp. at 8) overlooks the ***particularized facts*** needed to raise that reasonable doubt—facts he still fails to plead. See *Zuckerberg*, at 1048.

### A. Mr. Musk Does Not Control Tesla

████████████████████████████████████████████████

████████████████ See FAC Order at 17. Plaintiff now contends that he pleads "stock ownership plus other facts evidencing control." Opp. at 9 (citing *Aronson v. Lewis*, 473 A.2d 805, 810 (Del. 1984)).[3] But *Aronson* clarifies that "even proof of majority ownership" must be coupled with "particularize[d] [] circumstances of control and domination to overcome the presumption of board independence." *Id.* at 815, 817 (47% ownership plus personal selection of directors who approved contested compensation failed to plead control). Plaintiff expects the Court to (1) go beyond *Tornetta* to adopt the "CEO Superstardom" theory that Mr. Musk exerts general control over Tesla; and (2) overlook the *fact* that Mr. Musk owns just 13% of Tesla outstanding stock.

***Tornetta* and "CEO Superstardom" Theory.** ████████████████████████

████████████████████████████████████████ FAC Order at 17; see *Tornetta*, at 501 (declining to hold that Mr. Musk has general control). Plaintiff now wants this Court to reverse itself and go further by holding that demand is futile whenever "[Mr.] Musk's personal liability is at-issue." Opp. at 12. Plaintiff argues that Mr. Musk's supposed "CEO Superstardom" renders independent directors "unduly deferential" to him. Opp. at 9. Plaintiff's only authorities are *Tornetta* and *Tesla Motors I*.[4] See *id.* *Tornetta* lifts the "CEO Superstardom" theory from a single law review article. See *Tornetta*, at 507 (acknowledging theory as the "creat[ion]" of "one set of scholars"). That article's authors (1) explicitly caution that a "Superstar

---

[3] Plaintiff's *Aronson* citation is misleading: the court never adopted "[stock] ownership plus other facts" as the standard to plead control. See Opp. at 9 (citing *Aronson*, 473 A.2d at 810).
[4] Even *Tornetta* acknowledged that the "Vice Chancellor's dismissal decision [in *Tesla Motors I*] did not constitute a finding that Musk was a controller." *Tornetta*, at 501.

CEO" is *not* synonymous with a controller under Delaware law, (2) endorse evaluating "control" by voting power alone, and (3) state that "shareholders with significantly less than 50% of the votes have generally not been treated as controllers."[5] This is not particularized pleading.

Plaintiff also condemns the recent Tesla shareholder vote endorsing Mr. Musk's leadership as another example of his alleged "coercion." Opp. at 10–11. That claim ignores all counterevidence, including: (1) the existence of an independent Special Committee; (2) that Mr. Musk recused himself from the process; and (3) that his votes were *excluded* from the threshold. See MTD SAC at 10–11.

***Plaintiff Inflates Mr. Musk's Stock Holdings.*** Plaintiff does not dispute that 7.5% of Mr. Musk's stock is the "subject of active litigation[,]" such that he does *not* currently own 20% of Tesla stock. *See* Opp. at 9 n.17; MTD SAC at 11. Yet Plaintiff insists the Court disregard this judicially noticeable fact. *See* Opp. at 9 n.17; *see Carlton v. Freer Inv. Grp., Ltd.*, 2017 WL 11046201, at *10 n.7 (W.D. Tex. Aug. 8, 2017) (Ezra, J.) (noticing fact "not subject to reasonable dispute"). Plaintiff's "conclusory allegations of fact or law not supported by the allegations of specific fact may not be taken as true." *In re Kraft Heinz Co. Deriv. Litig.*, 2021 WL 6012632, at *4 (Del. Ch. Dec. 15, 2021).[6]

Viewed holistically, including Mr. Musk's purported "CEO Superstardom" and stock holdings, the Complaint pleads no particularized facts that Mr. Musk controls Tesla.

### B. Plaintiff's Attempt to Evade Particularized Pleading Does Not Save Independence Allegations

Even if Mr. Musk controlled Tesla (he does not), ███████████████████████████

---

[5] Assaf Hamdani & Kobi Kastiel, *Superstar CEOs and Corporate Law*, 100 Wash. U. L. Rev. 1353 (2023).
[6] Plaintiff ignores that Mr. Musk would not be a controller even if he did own 20% of Tesla stock. *See* MTD SAC at 11 (citing *Beam v. Stewart*, 845 A.2d 1040, 1054 (Del. 2004) (affirming dismissal despite 94.4% stock holdings)).

██████████████ *See* FAC Order at 15–20.[7]

**Mr. Kimbal Musk.** ████████████████████████████████████

████████████████████████████████ FAC Order at 18.[8] *Tornetta* changes nothing because that court never analyzed Kimbal's independence. *See Tornetta*, at 508 n.636 (independence not disputed). Even if it had, Plaintiff addresses *none* of Defendants' authorities or explains *why* this Court should hold otherwise. *See* MTD SAC at 14–15. Plaintiff has no retort to Mr. Kimbal Musk's recent reelection to Tesla's Board by 79% of voting shareholders. *See id.* at 14; Opp. at 12–13.

**Mr. Murdoch.** Plaintiff applies the same tactic to Mr. Murdoch, who also was just reelected to the Board. MTD SAC at 17. ████████████████████████████████ ███████████████████████████████████████████████ FAC Order at 20; *see also* MTD SAC at 17. Plaintiff expects this Court to simply cede to another court's flawed reasoning, without alleging particularized facts of his own.

**Mr. Ehrenpreis.** █████████████████████████████████████ ████████████████████████████████ *See* FAC Order at 18. But the law is not whether "one could debate" Mr. Ehrenpreis's independence from Mr. Musk (*see* Opp. at 14 (citing *Tornetta*, at 509))[9]— that would destroy Rule 23.1's "stringent requirements of factual particularity." *Kraft Heinz*, 2021 WL 6012632, at *4. Plaintiff continues to plead no "particularized allegations

---

[7] ████████████████████████████████████████. FAC Order at 18; MTD SAC at 14.
[8] Plaintiff's twenty-year old cases involve highly particularized allegations that surpass the bare familial relationship pleaded here. *See Grace Bros., Ltd. v. UniHolding Corp.*, 2000 WL 982401, at *10 (Del. Ch. July 12, 2000) (controller's brother-in-law could not independently consider demand concerning a company's reorganization because he was CEO of the company's subsidiary); *see also Mizel v. Connelly*, 1999 WL 550369, at *3–4 (Del. Ch. July 22, 1999) (familial relationship was just one "further fact" supporting beholdenness, where controller was director's "boss" and his "principal employment and means of earning a living").
[9] Plaintiff mischaracterizes *Tornetta*. The court never conceded that "one could debate" whether Mr. Ehrenpreis was independent from Mr. Musk in general. *See* Opp. at 14; *Tornetta*, at 509 ("*Even if* one could debate whether these ties rendered Ehrenpreis beholden to Musk in general. . .").

supporting a conclusion that [Mr. Ehrenpreis] felt subject to [Mr. Musk's] dominion or beholden to [him] based on those investments." *Id.* at *9 (holding that a $25 billion co-investment history is insufficient without allegations that directors "relie[d] on 3G to gain access to investments").

**Ms. Denholm.**  Plaintiff seeks to replace Delaware law with his *opinion* that Ms. Denholm's independence is "debatable."  Opp. at 15.  But it is not for Plaintiff to decide what "is a material amount" (*id.* at n.20) absent "particulars from which it could reasonably be inferred that [Ms. Denholm's] objective judgment would be impaired by the threat of losing [her] director compensation."  *MCG Capital Corp. v. Maginn*, 2010 WL 1782271, at *20 (Del. Ch. May 5, 2010) ("complaint alleges nothing . . . to suggest that [compensation] is, in fact, personally material"). *Tornetta's* observation that Ms. Denholm's compensation was "life-changing" adds nothing: that court never even ruled that Ms. Denholm lacked independence.  *See Tornetta*, at 509–10.

Plaintiff's reasoning that $280 million was "much more than the material amount in *Orman*" defies logic.  *See* Opp. at 15 n.2 (citing *Orman v. Cullman*, 794 A.2d 5, 25 n.50 (Del. Ch. 2002)). Materiality is not a threshold inquiry.  Otherwise, any director with stock options would lose their independence if the company is successful enough.  Delaware law does not punish directors for success: it is "a desirable alignment of incentives between fiduciaries and beneficiaries."  *Owens v. Mayleben*, 2020 WL 748023, at *10 (Del. Ch. Feb. 13, 2020); *see also* MTD SAC at 17–18.[10]

**Mr. Straubel.**  Even Plaintiff admits that the allegations concerning Mr. Straubel and Mr. Gebbia are "less facially compelling" than the rest of his claims.[11]  Opp. at 16.  His only new

---

[10] *Voigt v. Metcalf*, 2020 WL 614999, at *15 (Del. Ch. Feb. 10, 2020) is inapposite.  *See* Opp. 15 n.21.  Unlike the *Voigt* director, Ms. Denholm had never worked for Mr. Musk prior and was not unilaterally appointed by him.  Ex. 1 at 25, 128.  Mr. Ehrenpreis also had never worked for Mr. Musk nor served on another board with him.  *Id.* at 26.

[11] In *In re Oracle Corporation Derivative Litigation*, plaintiff *did* plead "particularized facts[,]" including "multiple layers of business connections."  Opp. at 16 n.22 (citing 2018 WL 1381331, at *17 (Del. Ch. Mar. 19, 2018)).  In *In re BGC Partners, Inc. Derivative Litigation*, plaintiff pleaded "several specific facts[,]" including that the director "use[d] his influence to set up a private

allegation—that Mr. Straubel and Mr. Musk share an unspecified "long and close history" — ▇

▇.[12]  See SAC ¶ 329; FAC Order at 20.

*Mr. Gebbia.*  Plaintiff mischaracterizes Mr. Gebbia's removal from the Special Committee tasked with evaluating Mr. Musk's compensation as a smoking gun that he lacks independence. Opp. at 16.  But Mr. Gebbia stepped down due to "**unfair attacks** . . . **not because of any concern by the Special Committee regarding his independence**."  See MTD SAC at 17.

### III. THIS COURT IS NOT BOUND TO PLAINTIFF'S FLAWED JURISDICTION ALLEGATIONS

"[F]ederal courts must be assured of their jurisdiction and may question it *sua sponte* at any stage of a proceeding."  *Franklin v. State of La.*, 2001 WL 43547, at *1 (5th Cir. Jan. 8, 2001). Plaintiff now relies exclusively on diversity jurisdiction.  *Compare* SAC ¶ 8 *with* FAC ¶ 8 *and* CC ¶ 7.  He disputes neither the citizenship of the parties nor the fact that the Board has retained its right to litigate his claims.  *See* Opp. at 17–20; MTD SAC at 18 & n.7.[13]  Instead, he argues that because he alleges Mr. Musk controls Tesla and its Board, Tesla is in "antagonis[tic]" hands and therefore should not be properly aligned as a plaintiff.  Opp. at 18.  ▇▇  *See supra* at 6–10; FAC Order at 15–20.  "The failure to adequately allege the basis for diversity jurisdiction mandates dismissal."  *Lee Constr. & Maint. Co. v. Ingram Indep. Sch. Dist.*, 2020 WL 8125523, at *2 (W.D. Tex. Jan. 8, 2020) (Ezra, J.).

### CONCLUSION

The Court should dismiss Plaintiff's lawsuit for failure to make demand with prejudice.

---

[museum] tour" when the contested transaction was under consideration.  2019 WL 4745121, at *11 (Del. Ch. Sept. 30, 2019).  No such facts are pleaded here.

[12] Mr. Gebbia's "apparent close ties" and "personal relationship" are equally inadequate.  Opp. at 16.
[13] Plaintiff's authority admits that the Board could choose to take up these claims, if it decides that it is in Tesla's best interests.  *See Kaplan v. Wyatt*, 484 A.2d 501, 506 (Del. Ch. 1984); Opp. at 19.

Dated: September 27, 2024

Respectfully submitted,

*/s/ Boris Feldman*
Boris Feldman (*pro hac vice*)
Doru Gavril (*pro hac vice*)
Jennifer Loeb (*pro hac vice*)
Rebecca Lockert (*pro hac vice*)
Olivia Rosen (*pro hac vice*)

FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, California 94063
Telephone: (650) 421-8200
Facsimile: (212) 277-4001
E-mail: boris.feldman@freshfields.com
doru.gavril@freshfields.com
jennifer.loeb@freshfields.com
rebecca.lockert@freshfields.com
olivia.rosen@freshfields.com

Gary Ewell (SBN: 06752800)
EWELL, BROWN, BLANKE & KNIGHT LLP
111 Congress Avenue, Suite 2800
Austin, Texas 78701
Telephone: (512) 770-4000
Facsimile: (877) 851-6384
E-mail: gewell@ebbklaw.com

*Attorneys for Defendants*

-12-

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a true and correct copy of this motion upon each attorney of record and the original upon the Clerk of Court on this 27th day of September, 2024.

*/s/* Boris Feldman
Boris Feldman (*pro hac vice*)
